No. 15-1656

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

R B & F COAL, INC. and
OLD REPUBLIC INSURANCE CO.,

*Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR

and

DELORIS MULLINS,

*Respondents.*

ON PETITION FOR REVIEW OF A DECISION
AND ORDER OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

## PETITIONERS' BRIEF

Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2361

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  15-1656        Caption: RB&F Coal, Inc., et al.  v. Deloris Mullins, et al..

Pursuant to FRAP 26.1 and Local Rule 26.1,

RB&F Coal, Inc. and Old Republic Insurance Co.
(name of party/amicus)

_____

 who is _____petitioner_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2.      Does party/amicus have any parent corporations?                    ☑YES ☐NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
        Old Republic Insurance Company is a wholly-owned subsidiary of Old Republic International Corp.

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☑YES ☐NO
        If yes, identify all such owners:
        See above.

10/28/2013 SCC

i

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _s/Laura Metcoff Klaus_____    Date: _____June 26, 2015_____

Counsel for: _RB&F Coal and Old Republic Ins.._

## CERTIFICATE OF SERVICE
**************************

I certify that on _June 26, 2015_, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Mr. Jerry Murphree
Stone Mountain Health Services
P. O. Drawer S
St. Charles, Virginia  24282

_s/Laura Metcoff Klaus_____                    _____June 26, 2015_____
(signature)                                                              (date)

ii

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ....................................................i

CERTIFICATE OF SERVICE................................................................iii

TABLE OF AUTHORITIES ................................................................iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES....................................................................2

STATEMENT OF THE CASE...............................................................2

    A.    Statement of the Facts ...........................................................2

    B.    The Proceedings Below...........................................................3

SUMMARY OF ARGUMENT ...............................................................5

ARGUMENT ..................................................................................6

    A.    Standard of Review .............................................................6

    B.    The Statute and Regulations Relating to Insurance for Federal Black Lung Claims ...........................................................7

    C.    The ALJ Erred in Relieving Wilder and its Insurers of Their Liability Under the Act and in Imposing that Liability on RB&F......10

    D.    If There Is Tension Between the State and Federal Requirements, the State Law Must Give Way...........................................21

    E.    Shifting the Burden of Proof from DOL to RB&F Violates the Administrative Procedure Act ...............................................25

CONCLUSION..................................................................................30

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. Reliance Ins. Co. v. Mitchell,
238 Va. 543, 385 S.E.2d 583 (1989) ................................................................. 19

Barnett Bank of Marion Cty, NA v. Nelson,
517 U.S. 25 (1996) ........................................................................... 22, 23

Bill Branch Coal Corp. v. Sparks,
213 F.3d 186 (4th Cir. 2000) ................................................................. 6

Boyd & Stevenson Coal v. Office of Workers' Comp. Programs,
407 F.3d 663 (4th Cir. 2005) .......................................... 15, 16, 19, 20

Connecticut Nat'l Bank v. Germain,
503 U.S. 249 (1992) ........................................................................... 22

DelVecchio v. Bowers,
296 U.S. 280 (1935) ........................................................................... 28

Director, OWCP v. Greenwich Collieries,
512 U.S. 267 (1994) ......................................................... 2,26 27,28

Director, OWCP v. Trace Fork Coal Co.,
67 F.3d 503 (4th Cir. 1995) ....................................................... 2,26,29

Lester v. Mack Coal Co.,
21 Black Lung Reporter (Juris) 1-126 (Ben. Review Bd. 1999) ....................... 26

Lovilia Coal Co. v. Williams,
143 F.3d 317 (7th Cir. 1998) .................................................... *passim*

Milburn Colliery Co. v. Hicks,
138 F.3d 524 (4th Cir. 1998) ................................................................. 7

Miller v. Potomac Hosp. Found.,
50 Va. App. 674, 653 S.E.2d 592, 2007 Va. App. LEXIS 437
(2007) ............................................................................................... 17

iv

National Mining Ass'n v. Dep't of Labor,
    292 F.3d 849 (D.C. Cir. 2002)................................................27, 28

NAACP v. Am. Family Mut. Ins. Co.,
    978 F.2d 287 (7th Cir. 1992), cert. denied, 508 U.S. 907 (1993)......................22

National Mines Corp. v. Carroll,
    64 F.3d 135 (3d Cir. 1995) ................................................15

Tazco, Inc. v. Dir., Office of Workers' Comp. Programs,
    895 F.2d 949 (4th Cir. 1990) ................................................13,14

Uninsured Employer's Fund v. Mounts,
    24 Va.App. 550, 484 S.E.2d 140 (1997) ................................................20, 21

United States Dep't of Treasury v. Fabe,
    508 U.S. 491 (1993)................................................22, 23, 24

Warner Coal Co. v. Dir., Office of Workers' Comp. Programs,
    804 F.2d 346 (6th Cir. 1986) ................................................13

**Constitutions and Treaties:**

U.S. Const., art. VI, cl. 2................................................21

**Statutes and Regulations:**

Administrative Procedure Act, 5 U.S.C. §§ 551-559 ................................................ 6
    5 U.S.C. § 556................................................ 28
    5 U.S.C. § 556(d) ................................................ 26

McCarran-Ferguson Act, 15 U.S.C. §§ 1101 et seq. ................................................ 21,23,24
    15 U.S.C. § 1012................................................ 22

Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901-945
    30 U.S.C. § 901(a)................................................ 10
    30 U.S.C. § 931................................................ 20
    30 U.S.C. § 932(a)................................................ 1
    30 U.S.C. § 932(f)................................................ 19
    30 U.S.C. § 933................................................ 24
    30 U.S.C. § 933(a) (2000) ................................................ 7,8,14
    30 U.S.C. § 933(b)................................................ 15

30 U.S.C. § 933(d)(1) ................................................................. 8

Longshore and Harbor Workers' Compensation Act,
    33 U.S.C. §§ 901-952 ......................................................... 28
    33 U.S.C. § 921(b) .............................................................. 1
    33 U.S.C. § 921(c) .............................................................. 1
    33 U.S.C. § 933(b)(1) ....................................................13, 22

Federal Coal Mine Health and Safety Act of 1969,
    Pub. L. No. 91-173, 83 Stat. 792, as amended.................... 1

Black Lung Benefits Act of 1972, Pub. L. No. 92-303,
    86 Stat. 150 (1972).............................................................. 1

Black Lung Benefits Revenue Act of 1977,
    Pub. L. No. 95-227, 92 Stat. 11 (1978)............................... 1

Black Lung Benefits Reform Act of 1977,
    Pub. L. No. 95-239, 92 Stat. 95 (1978)............................... 1

Black Lung Benefits Revenue Act of 1981 and
    Black Lung Benefits Amendments of 1981,
    Pub. L. No. 97-119, 95 Stat. 1635 (1981)........................... 1

Consolidated Omnibus Budget Reconciliation
    Act of 1985, Pub. L. No. 99-272, 100 Stat. 312, 313 (1986) ...................... 1

Omnibus Budget Reconciliation Act of 1987,
    Pub. L. No. 100-203, 101 Stat. 1330 (1987).................... 1

Patient Protection and Affordable Care Act,
    Pub. L. No. 111-148, § 1556 (March 23, 2010) .................. 1

Black Lung Program Regulations:
    20 C.F.R. Part 722 ...........................................................20
    20 C.F.R. § 725.203 ..........................................................13
    20 C.F.R. § 725.407 (2014) ..............................................26
    20 C.F.R. § 725.410(b) .....................................................25
    20 C.F.R. § 725.412 (1999) ..............................................25
    20 C.F.R. § 725.492...........................................................16

20 C.F.R. § 725.493 ................................................................16
20 C.F.R. § 725.493(a)(1) .......................................................10
20 C.F.R. § 725.495 (2014) ......................................................3
20 C.F.R. Part 726 ..................................................................8
20 C.F.R. § 726.1 ...................................................................7
20 C.F.R. § 726.201 ..............................................................7,8
20 C.F.R. § 726.202 ............................................................7,8,9
20 C.F.R. § 726.203(c) ...........................................................17
20 C.F.R. §§ 726.203(c)(6) .......................................................8
20 C.F.R. § 726.204 ................................................................8
20 C.F.R. § 726.207 ..............................................................10
20 C.F.R. § 726.210 .....................................................8,10,13,15
20 C.F.R. § 726.404 ................................................................9

Virginia Code Ann.
  Va. Code Ann. §§ 38.2-1600 ................................................11
  Va. Code Ann. §§ 38.2-1604 to 1606 ....................................12
  Va. Code Ann. § , 38.2-1604 ...............................................11
  Va. Code Ann. § 38.2-1606 ...................................................4
  Va. Code Ann. § 38.2-1606(A)(1) .........................................11
  Va. Code Ann. § 38-2-1606(A)(1)(b) ....................................11
  Va. Code § 38-1606(A)(3) ...................................................17

# I.  JURISDICTIONAL STATEMENT

R B & F Coal, Inc. and Old Republic Insurance Company (collectively "RB&F") seek relief from an award of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 ("Act" or "BLBA").[1]  The decision of the administrative law judge ("ALJ") was issued on February 10, 2014.  Joint Appendix ("J.A.") 24.  RB&F filed an appeal to the Benefits Review Board, U.S. Department of Labor, within thirty days, giving the Board jurisdiction under 33 U.S.C. § 921(b), incorporated by reference into 30 U.S.C. §932(a).  The Board issued a Decision and Order on February 26, 2015, affirming the ALJ's decision.  J.A. 11.  On April 15, 2015, in response to a timely motion for reconsideration, the Board issued an Order on Reconsideration, affirming that decision.  J.A. 9.  That order was a final decision within the meaning of 33 U.S.C. § 921(c).

On June 12, 2015, within sixty days of the Board's final decision, this Court received RB&F's petition for review.  J.A. 1.  This Court has jurisdiction over the appeal under 33 U.S.C. § 921(c), incorporated by reference into 30 U.S.C. § 932(a), because RB&F's appeal was timely.  Finally, Turl Mullins, the miner involved, last

---

[1]     Part C of Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 86 Stat. 150, and as further amended by the Black Lung Benefits Reform Act of 1977, 92 Stat. 95, the Black Lung Benefits Revenue Act of 1977, 92 Stat. 11, the Black Lung Benefits Revenue Act of 1981, and the Black Lung Benefits Amendments of 1981, 95 Stat. 1635, Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 312, 313 (1986), and Omnibus Reconciliation Act of 1987, Pub. L. No. 100-203, 101 Stat. 1330 (1987), and Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (March 23, 2010).

worked in the Commonwealth of Virginia.  J.A. 67-68.  These facts establish this

Court's appellate and subject matter jurisdiction.

## II.  STATEMENT OF THE ISSUES

A.    Does the BLBA require a state guaranty fund to stand in the shoes of insolvent members and cover their liabilities, whatever they may be?

B.    Does the Department's reliance on a burden-of-proof shift to impose liability on RB&F violate the Supreme Court's decision in Director, OWCP v. Greenwich Collieries, 512 U.S. 267 (1994), and this Court's decision in Director, OWCP v. Trace Fork Coal Co., 67 F.3d 503 (4th Cir. 1995)?

## III.  STATEMENT OF THE CASE

This appeal does not challenge Mr. or Mrs. Mullins's entitlement to benefits

under the Act.  RB&F challenges only the decision by the Department of Labor to

impose liability on RB&F and its insurance carrier when Mr. Mullins did not last

work for RB&F for at least one year and when the company for whom Mr. Mullins

last worked purchased insurance to cover its liability under the Act, but the

Department did not make a reasonable effort to impose liability on that insurer or

its reinsurer or even allow RB&F to litigate the liability or identity of the liable

party.

### A.    Statement of Facts

Turl Mullins worked as a miner for many years, mostly on the surface.  J.A.

67-68.  His employment history and Social Security earnings records identify

twelve to fifteen different coal companies as employers.  J.A. 67-76.  After working at Deblin Coal Company from 1977 to 1979, between 1985 and 1986, he worked for RB&F Coal, Inc.  J.A. 67, 74-75.  From 1969 to 1971, in 1974, 1976, and 1977, and again, from 1986 to 1988, Mullins worked for Wilder Coal Company ("Wilder").  J.A. 73-75, 108 (Mullins Tr. at 6).  He then claimed self-employment (work at a strip mine running a dozer) as well as employment with three other companies in 1989.  J.A. 74-76, 107 (Mullins Tr. at 5).  Mullins retired in 1989, because he had cancer and was overweight.  J.A. 109 (Mullins Tr. at 7).  He did not learn both that he had black lung disease and was totally disabled for work because of it until around the time he filed his claim in 2009.  J.A. 11-13 (Mullins Tr. at 9-11), J.A. 63.

B.    The Proceedings Below.

Mullins applied for benefits in May 2009.  J.A. 63.  The Department of Labor collected his work history and medical evidence and notified RB&F of the existence of the claim.[2]  Director's Exhibit No. ("Dx.") 18.  The Department did not name Wilder even though Mullins worked there most recently for at least one year.  The Department's regulations impose liability, if any, on the financially responsible mine operator that last exposed the miner to the occupational hazard for at least one year.  20 C.F.R. § 725.495 (2014).  According to the Department,

---

[2]  DOL also notified a second company, Deblin Coal Company, of the existence of the claim, but later dismissed it as a responsible party.  J.A. 81.

that company, Wilder, was out of business and was "not a viable operator." J.A. 79. And, although Wilder was insured by Rockwood Insurance Company ("Rockwood"), the Department still declined to name Wilder "due to Rockwood's bankruptcy." J.A. 79. Although the Virginia Property and Casualty Insurance Guaranty Association ("VPCIGA") assumed Rockwood's insurance obligations under both the state and federal workmen's compensation laws, despite repeated requests by RB&F to notify VPCIGA of the claim and include it as a party, J.A. 101,135, the Department refused, stating that the claim was filed after August 1992, the "bar date" established under Va. Code Ann. § 38.2-1606 for filing claims against an insolvent insurer. J.A. 79, 148. In other words, the Department decided for itself that VPCIGA would challenge its designation, so it asserted a defense for VPCIGA without even giving VPCIGA an opportunity to accept or reject the claim or address and litigate RB&F's arguments. On the merits, DOL decided that Mullins was entitled to benefits, and, following Mullins's death in May 2011, that Mrs. Mullins also was entitled to benefits. J.A. 138-39, 155-56. At RB&F's request, the case proceeded to the Department's Office of Administrative Law Judges for a hearing. J.A. 151, Dx. 41.

The hearing in this matter took place on May 9, 2013, before ALJ Linda Chapman. In a decision and order awarding benefits, ALJ Chapman recognized that RB&F was not Mullins's most recent employer for at least one year. J.A. 27:

- 4 -

ALJ Decision and Order ("D&O") at 4.  But, she too decided that Wilder, the company that employed Mullins most recently, was out of business and its insurer, Rockwood, could not be held liable because it had been liquidated.  Finally, she too decided that VPCIGA could not be held liable for Wilder's—or Rockwood's obligations under the BLBA because the claim was filed beyond the date for filing claims against Rockwood.  J.A. 34: ALJ D&O at 11.  Rather than shift liability to the Black Lung Disability Trust Fund, however, the ALJ held that DOL properly turned to the insurance carrier for the company that employed Mullins before he started working for Wilder.  Id.  In a decision and order issued February 26, 2015, affirmed without opinion on April 15, 2015, the Board affirmed the ALJ's decision.  J.A. 13-16: BRB D&O at 3-6; J.A. 9.

This appeal followed.

## V.  SUMMARY OF ARGUMENT

The BLBA requires employers either to buy and keep insurance for their federal black lung liability or to self-insure that liability.  When insurance is purchased, the BLBA requires coverage for federal claims no matter what state law provides.  DOL's rules make clear that this coverage cannot be compromised.  In this case, the ALJ relieved the last employer and its insurer of their liability without reference to these provisions in the BLBA and the Department's regulations.  The Board affirmed.  The ALJ, deferring to the Director, relied on a

- 5 -

provision of state law to find that the proper insurers could limit their liability under federal law to claims filed before August 26, 1992. That decision cannot be reconciled with the BLBA, DOL's regulations or case law from the Seventh Circuit that addressed precisely this issue and at the Director's urging, held that state law cannot be relied upon by insurance carriers to limit their responsibility under federal law. There is no justification for imposing liability on RB&F in this case other than DOL's desire to avoid placing responsibility for the claim where it belongs--either on VPCIGA or on the Black Lung Disability Trust Fund.

The Department of Labor refused to name VPCIGA as a party. The ALJ found nothing wrong with this approach on the theory that the burden was not on the Department to identify all potentially responsible parties so that their liability could be determined. Instead, the ALJ held that the burden of proof or persuasion shifted to RB&F to identify and prove another party was responsible. That decision cannot be reconciled with the Supreme Court's decision in <u>Greeenwich Collieries</u> or this Court's <u>Trace Fork</u> decision. DOL has no authority to shift the burden of proof under the Administrative Procedure Act.

## VI.  <u>ARGUMENT</u>

A      <u>Standard of Review</u>

The Court reviews an order of the Benefits Review Board to determine whether it is rational and consistent with applicable law. <u>Bill Branch Coal Corp. v.</u>

- 6 -

Sparks, 213 F.3d 186, 190 (4th Cir. 2000). This Court reviews the legal conclusions of the Board and the ALJ *de novo*. Milburn Colliery Co. v. Hicks, 138 F.3d 524 (4th Cir. 1998). This case presents a question of law only.

      B.     The Statute and Regulations Relating to Insurance for Federal Black Lung Claims

The BLBA obligates employers to secure their liability for the payment of benefits under the Act. The Act provides:

> [E]ach operator of a coal mine . . . shall secure the payment of benefits for which he is liable under section 932 of this title by (1) qualifying as a self-insurer in accordance with regulations prescribed by the Secretary, or (2) insuring and keeping insured the payment of such benefits with any stock company or mutual company or association, or with any other person or fund, including any State fund, which such company, association, person or fund is authorized under the laws of any State to insure workmen's compensation.

30 U.S.C. § 933(a) (2000); see also 20 C.F.R. §§ 726.1, 726.201, 725.202. Section 932 of the Act requires that:

> every policy or contract of insurance must contain --
>
>     (1)    a provision to pay benefits required under section 932 of this title, notwithstanding the provisions of the State workmen's compensation law which may provide for lesser payments;
>
>     (2)    a provision that insolvency or bankruptcy of the operator or discharge therein (or both) shall not relieve the carrier from liability for such payments; and
>
>     (3)    such other provisions as the Secretary, by regulation, may require.

Id. § 933(b); see also 20 C.F.R. § 726.204.  DOL's regulations provide that any such policy shall be construed to conform with the requirements of the BLBA and that every carrier who writes insurance under the BLBA shall be deemed to have agreed to be bound "to the full liability for the obligations under this Act of the operator named in said report."  20 C.F.R. §§ 726.203(c)(6), 726.210.  If an employer fails to comply with the requirements of section 933(a), it is subject to a penalty of $1,000 per day for every day of non-compliance.  See also 30 U.S.C. § 933(d)(1) (imposing joint and several liability on an employer's president, secretary, and treasurer for the failure of a corporation to secure the payment of benefits).

DOL's regulations implement these requirements.  20 C.F.R. Part 726.  The regulations relating to the insurance requirements for coal mine operators provide that if not approved by DOL to self-insure its liabilities under the BLBA, a company must purchase commercial or state fund insurance to cover those liabilities.  20 C.F.R. § 726.201.  The regulations spell out what this means:

> Each coal mine operator who is not authorized to self-insure shall insure and keep insured the payment of benefits as required by the Act with any stock company or mutual company or association, or with any other person, or fund, including any State fund while such company, association, person, or fund is authorized under the law of any State to insure workmen's compensation.

20 C.F.R. § 726.202.  The regulation then states:

- 8 -

> The failure of any such business entity to self-insure or obtain a policy or contract of insurance shall in no way relieve such business entity of its obligation to pay pneumoconiosis benefits in respect of any case in which such business entity's responsibility for such payments has been properly adjudicated.

Id. DOL's regulations also specify the extent of the coverage required under the BLBA:

> (c) …
>
> (6) … the endorsement provisions contained in paragraph (a) of this section shall, to the fullest extent possible, be construed to bring any policy or contract of insurance entered into by an operator for the purpose of insuring such operator's liability under part C of title IV of the Act into conformity with the legal requirements placed upon such operator by section 415 and part C of title IV of the Act and parts 720 and 725 of this subchapter.
>
> (d). Nothing in this section shall relieve any operator or carrier of the duty to comply with any State workmen's compensation law, except insofar as such State law is in conflict with the provisions of this section.

The regulations implement the requirements of the BLBA by providing:

> Pursuant to section 423(b) of part C of title IV of the Act each policy or contract of insurance obtained to comply with the requirements of section 423(a) of the Act must contain or shall be construed to contain—
>
> **(a)** A provision to pay benefits required under section 422 of the Act, notwithstanding the provisions of the State workmen's compensation law which may provide for lesser payments; and,
> **(b)** A provision that insolvency or bankruptcy of the operator or discharge therein (or both) shall not relieve the carrier from liability for such payments.

20 C.F.R. § 726.404.

Finally, the regulations specify that the obligations of the employer under the Act are the obligations of the insurer:

> Every obligation and duty in respect of payment of benefits, the providing of medical and other treatment and care, the payment or furnishing of any other benefit required by the Act and in respect of the carrying out of the administrative procedure required or imposed by the Act or the regulations in this part or part 725 of this subchapter upon an operator shall be discharged and carried out by the carrier as appropriate…. Any requirement under any benefits order, finding, or decision shall be binding upon such carrier in the same manner and to the same extent as upon the operator.

20 C.F.R. § 726.207. <u>See</u> <u>also</u> 20 C.F.R. § 726.210 ("Every carrier seeking to write insurance under the provisions of the Act shall be deemed to have agreed that the acceptance by the Office of a report of the issuance or renewal of a policy of insurance, … shall bind the carrier to full liability for the obligations under the Act of the operator named in said report.").

C.    The ALJ Erred in Relieving Wilder and its Insurers of Their <u>Liability under the Act and in Imposing that Liability on RB&F</u>

This appeal does not challenge whether Mr. or Mrs. Mullins should receive benefits under the BLBA; it challenges the ALJ's decision only with respect to who should pay those benefits. The BLBA and its implementing regulations impose liability for total disability or death due to pneumoconiosis on the company that last employed the miner for at least one year. 30 U.S.C. § 901(a); 20 C.F.R. § 725.493(a)(1). For claims filed after January 1, 1974, the date of last exposure

- 10 -

triggers an insurance carrier's liability for either a miner's or survivor's claims.  Id. § 726.203(a).

In Mullins's case, there is no dispute that Wilder was the company that last employed him for at least one year.  Nor is there any dispute that Rockwood was the carrier responsible for payment of any claims filed under the Act, either by Mr. or Mrs. Mullins.  Under the BLBA, Wilder and its insurer were liable for the payment of those benefits notwithstanding Wilder's exit from the market and notwithstanding Rockwood's insolvency and later dissolution.  VPCIGA assumed Rockwood's liability as provided by Virginia law.  Va. Code Ann. §§ 38.2-1600, 38.2-1604.  And, in Mullins's case, VPCIGA did not refuse to pay.  Instead, DOL decided that VPCIGA's obligation to reinsure Rockwood's liabilities was limited to those claims filed within one year of the date Rockwood was declared to be insolvent.  Id.; Va. Code Ann. § 38.2-1606(A)(1), 38-2-1606(A)(1)(b) (limiting VPCIGA's obligation to pay "to covered claims that existed prior to the determination of insolvency" and which arose before either ninety-one days after the determination of insolvency, the expiration date of the policy or the date the insured replaces or cancels the policy, whichever is earlier, but defining a "covered claim" to include only claims filed before the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer).  In other words, according to DOL, VPCIGA's obligation to reinsure Rockwood's full

liability under the BLBA was limited by state law so it was not even obligated to give VPCIGA notice of the existence of the claim. The ALJ accepted that representation.

VPCIGA is a state chartered non-profit association whose members include all insurers licensed to do business in Virginia. The Board of Directors and managers are appointed by the member carriers. The purpose of the association is to step in as a surrogate in the case of an insurer's insolvency and to administer and pay claims in the same way that the insolvent carrier would do so. Va. Code Ann. §§ 38.2-1604 to 1606. VPCIGA is funded solely by the member carriers through contributions and other private funding vehicles. Id. §§ 38.201606, 38.2-1619 to 1622. A guaranty fund is an important feature of any state insurance regulatory regime and is intended to protect the public and the insurance industry from the uncertainty that may arise in the case of insurer insolvency. The federal black lung coverage endorsement is part of a broader state sanctioned workers' compensation insurance policy. There is no other form of workers' compensation insurance available for employers who must fully insure their federal black lung risks and do not qualify for or develop a self-insurance program.

The ALJ's decision is at odds with the BLBA, DOL's regulations and the case law. The BLBA is explicit in imposing responsibility on an insurer or its reinsurer for a policy holder's entire liability no matter what a state's law may

- 12 -

direct.  33 U.S.C. § 933(b)(1), 20 C.F.R. §§ 725.203, 726.210; <u>Lovilia Coal Co. v.</u> <u>Williams</u>, 143 F.3d 317 (7th Cir. 1998).  And DOL's regulations, as well as the case law interpreting DOL's obligations, require notice to the employer's insurer so that it can decide whether to appear or default, acquiesce or contest a claim. <u>Tazco, Inc. v. Dir., Office of Workers' Comp. Programs</u>, 895 F.2d 949 (4th Cir. 1990); <u>Warner Coal Co. v. Dir., Office of Workers' Comp. Programs</u>, 804 F.2d 346 (6th Cir. 1986).

In <u>Tazco</u>, as here, DOL did not notify the insurer of the claimant's last employer that a claim had been filed.  There, DOL defended that failure by stating that it assumed that the employer would notify its carrier.  This Court rejected that excuse, holding that DOL could not avoid responsibility by assuming that some other party would do its job for it.  <u>Tazco</u>, 895 F.2d at 951.  Here, DOL defended its failure to notify VPCIGA by assuming that it would have tendered a defense to any potential liability.  As in <u>Tazco</u>, DOL cannot avoid its responsibility to identify VPCIGA by assuming what VPCIGA would do.

Moreover, DOL's assumption that VPCIGA could avoid liability by relying on the state bar date provision lacks support.  In <u>Williams</u>, at the Director's urging, the Seventh Circuit held:

> The BLBA and its regulations require that every coal operator's contract of insurance contain provisions agreeing to cover fully all of the coal operator's liabilities under the BLBA.... § 933 of the BLBA requires coal operators to insure payments of

benefits. "[E]ach such operator shall be liable for and shall secure the payment of benefits, as provided in this section and § 933 of this title. 30 U.S.C. § 932(b). According to section 933, "each operator of a coal mine ... shall secure the payment of benefits for which he is liable under § 932 of this title by (1) qualifying as a self-insurer ..., or (2) insuring and keeping insured the payment of such benefits...." Id. at § 933(a). Insurance providers implicitly agree to pay all benefits required under the BLBA; that is, benefits must be paid to eligible miners and their survivors. See id. at §§ 933(b)(1), 922(a).

Williams, 143 F.3d at 322. The Williams Court reviewed the applicable

regulations and concluded that

insurers are held to be as responsible as coal mine operators in assuring that black lung benefits policies conform to federal law. See id. § 726.207.... Most important, the regulations also provide:

Every carrier seeking to write insurance under the provisions of [the BLBA] shall be deemed to have agreed that the acceptance by the Office of a report of the issuance or renewal of a policy of insurance, as provided for by § 726.208 shall bind the carrier to full liability for the obligations under this Act of the operator named in said report. It shall be no defense to this agreement that the carrier failed or delayed to issue, cancel or renew the policy to the operator covered by this report.

Id. at § 726.210 (emphasis added.). Several courts have interpreted the meaning of the language of section 726.210, and have held that such language obligates insurers to assume a coal mine operator's entire liability; insurers are not permitted to provide partial liability, even at the request of the coal mine operator.

Williams, 143 F.3d at 322-23, citing Tazco, Inc. v. Director, OWCP, 895 F.2d at

951 (recognizing that the insurer steps into the shoes of the employer and is fully

- 14 -

liable for the employer's obligations); <u>National Mines Corp. v. Carroll</u>, 64 F.3d 135, 140 (3d Cir. 1995) (holding "the [BLBA] and regulations do not contemplate limiting the carrier's exposure to indemnifying an operator found liable for payment of benefits."). As the Act itself provides (and the Court in <u>Williams</u> held as well), state law does not overcome the BLBA in these respects. 30 U.S.C. § 933(b); 20 C.F.R. § 726.210; <u>Williams</u>, 143 F.3d at 325.[3]

The ALJ also overlooked this Court's decision in <u>Boyd & Stevenson Coal v. Office of Workers' Comp. Programs</u>, 407 F.3d 663 (4th Cir. 2005). There, the Court considered whether VPCIGA or DOL could offload liability for a survivor's claim that was filed after the cut-off date set out in the Virginia Code. Although the court did not determine whether federal law preempted state law, it held based on general principles of insurance law, that where the law establishes a condition of insurance that is impossible for a claimant to perform, it is ineffectual and void. It rejected DOL's and VPCIGA's argument that VPCIGA could lawfully escape liability for Mrs. Slone's late-filed claim, explaining:

---

[3]     The facts that gave rise to the appeal in <u>Williams</u> involved an insurer's denial of responsibility for a claim for benefits under the BLBA filed by Billie Williams, an owner of Lovilia Coal Company. Although Lovilia insured its BLBA liability, Mr. Williams refused coverage for himself which Illinois law permitted, but the federal law prohibited. He nevertheless filed a claim under the BLBA and after his death, Mrs. Williams filed for survivor's benefits. Old Republic Insurance Company, the carrier in that case as in this case, argued that it could not be held liable for those claims because under state law, Mr. Williams could decline coverage for himself and Old Republic could not force him to purchase it. Nor could Williams be required to pay for this coverage. DOL argued that Old Republic could not rely on state law to limit its coverage under federal law and the Court agreed.

- 15 -

> A principal problem with the DOL and VPCIGA's argument is that it creates a condition impossible for Mrs. Slone to perform. Mrs. Slone's husband did not die until March 25, 1999, and therefore, the position advanced by the DOL and VPCIGA would have required Mrs. Slone to file a claim for survivor benefits in 1992, prior to her husband's death and before her derivative right to benefits as a survivor of Ezra Slone had accrued. Thus, filing a claim for benefits prior to 1992 was a condition impossible for Mrs. Slone to fulfill. The general rule of insurance law dictates that conditions precedent which are impossible of performance are ineffectual and void. *Insurance Law and Practice,* Appleman, 1981, § 7005; *Couch on Insurance 3d,* § 83:26; see generally <u>Daburlos v. Commercial Ins. Co.</u>, 381 F.Supp. 393, 400 (E.D. Pa. 1974); <u>Strauther v. Gen. Am. Life Ins. Co.</u>, 141 S.W.2d 128, 130 (Mo.Ct.App. 1940). Accordingly, we reject DOL and VPCIGA's argument that either an insurance contract or a court order created a duty impossible for Mrs. Slone to perform.

<u>Slone</u>, 407 F.3d at 667.

The ALJ found that neither Wilder nor Rockwood nor VPCIGA were liable without reference to any of these principles of insurance law. The ALJ simply held that the Director had fulfilled its obligation to designate an operator that met the requirements of 20 C.F.R. §§ 725.492 and 725.493. Then, according to the ALJ, it was the named employer's burden to prove that some subsequent employer possessed sufficient assets to secure the payment of benefits. J.A. 28: ALJ D&O at 5. She dismissed the provisions of the BLBA and regulations that require an insurer to cover a policyholder's entire liability as "hav[ing] no relevance whatsoever to the issue at hand …." J.A. 29: ALJ D&O at 6.

The Board's opinion does not mention the statutory requirements of the BLBA either. The Board refused to apply the holding in <u>Williams</u> based on its mistaken belief that "state-run insurance guaranty associations are not covered by 20 C.F.R. § 726.203(c), which prohibits private insurance carriers from limiting their liability for black lung claims." J.A. 15: BRB D&O at 5. And, according to the Board, RB&F's reliance on <u>Slone</u> was "misplaced," because "the facts presented in this case differ materially from the facts that were presented in <u>Slone</u>." <u>Id.</u>

The courts' decisions cannot be so easily cast aside. <u>Williams</u> should be controlling because there is no basis for treating a state fund differently than a private reinsurer. Here, though, neither Rockwood nor VPCIGA were funded by the state. VPCIGA is not funded with taxpayer dollars and performs no governmental functions; it is funded by premiums collected from private insurers. <u>See</u> Va. Code § 38-1606(A)(3). And, VPCIGA is subject to sanctions like any other private insurer. "It has all the rights, duties, and obligations of the insolvent insurer and no principled reason exists why it should not be subject to the same penalties as an insurer." <u>Miller v. Potomac Hosp. Found.</u>, 50 Va. App. 674, 653 S.E.2d 592, 2007 Va. App. LEXIS 437 (2007). Although RB&F brought this fact to the Board's attention in its motion for reconsideration, the Board denied that motion without opinion. J.A. 9: BRB Order dated April 15, 2015.

- 17 -

Similarly, both Slone and Williams are instructive notwithstanding their different facts; the principles of insurance and statutory language interpreted in Slone and Williams apply across the board and the issue presented here is the same as the issues presented there: whether an insurer may rely on state law—or an impossible condition precedent—to limit its liability to something less than the full liability imposed by the BLBA. Indeed, the facts are more compelling here than in Williams because VPCIGA collected a portion of Rockwood's premium to pay the Mullins's claims, if ones were filed, while the carrier in Williams was prohibited from charging for the coverage that Mr. Williams refused to purchase. And, here, as in Slone, the defense that DOL attempted to bestow on VPCIGA is one that is not permitted under Virginia law. As the Court explained in Slone:

> It is a general principle of contract law that exclusionary language in a contract will be construed against an insurer. In American Reliance, the Supreme Court of Virginia summarized the law of exclusionary insurance provisions as follows:
>
>> Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies. Johnson v. Insurance Co. of North America, 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986). Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous. State Farm Mutual Ins. Co. v. Gandy, 238 Va. 257, 261, 383 S.E.2d 717, 719 (1989). An ambiguity, if one exists, must be found on the face of the policy. Nationwide Mutual Ins. Co. v. Wenger, 222 Va. 263, 268, 278 S.E.2d 874, 877 (1981). And, language is ambiguous when it

- 18 -

> may be understood in more than one way or when it refers to two or more things at the same time. <u>Lincoln National Life Ins. Co. v. Commonwealth Container Corp.,</u> 229 Va. 132, 136-37, 327 S.E.2d 98, 101 (1985). Finally, doubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it. <u>St. Paul Ins. v. Nusbaum & Co.,</u> 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984).

> <u>Am. Reliance Ins. Co. v. Mitchell</u>, 238 Va. 543, 385 S.E.2d 583, 585 (1989).

<u>Slone</u>, 407 F.3d at 667-68. In <u>Slone</u>, the Court decided that the notice provision sent to Rockwood claimants was subject to two interpretations. The Court decided that "[g]iven the Virginia Supreme Court's <u>Mitchell</u> directive that exclusionary language is to be construed in favor of granting coverage," it could not adopt the DOL and VPCIGA's narrow and exclusionary interpretation of her claim. <u>Id.</u> at 668.

Here, Mr. Mullins did not receive any notice from Rockwood or VPCIGA or DOL that he needed to file a claim by a date certain. Even if he had, such a claim would have been premature given that he had not been told by a doctor that he had totally disabling black lung disease. The only statute of limitations under the BLBA is the three-year statute of limitations triggered by such a finding. 30 U.S.C. § 932(f). The limitations period sought to be imposed on him under Virginia law both conflicts with the BLBA and creates an ambiguity that must be resolved against VPCIGA.

- 19 -

The Board's attempt to distinguish this case from <u>Williams</u> is at odds with the facts. Its effort to distinguish this case from <u>Slone</u> is devoid of logic. It was no more possible for Mr. Mullins to file a claim before one accrued than it was for Mrs. Slone to file a claim before Mr. Slone's death. In both this case and <u>Slone</u>, the Board relied on <u>Uninsured Employer's Fund v. Mounts</u>, 24 Va.App. 550, 484 S.E.2d 140 (1997), to claim that the cut-off applied to bar the claims. In <u>Slone</u>, however, it was not necessary for the Court to apply <u>Mounts</u> because her husband had filed a claim before the cut-off date. Her claim was derivative of her husband's claim which was timely filed, so hers should have been deemed timely as well. <u>Slone</u>, 407 F.3d at 669. Nevertheless, the Court cautioned:

> [W]e are mindful of the Virginia General Assembly's directive that the Act creating VPCIGA "be liberally construed" to "provide prompt payment of covered claims [in order] to reduce financial loss to claimants or policyholders resulting from the insolvency of an insurer." Va.Code Ann. §§ 38.2-1602, -1604. We do not believe that the General Assembly intended for VPCIGA to deny payment of survivor's claims based on conditions impossible for the surviving spouse to perform.

<u>Slone</u>, 407 F.3d at 669.

The same holds true for Mr. and Mrs. Mullins. DOL, on behalf of VPCIGA, was imposing a condition that was impossible for him to perform. Perhaps VPCIGA, pursuant to <u>Mounts</u>, would have been able to avoid liability if Mullins had filed a state claim, but the BLBA was intended to provide benefits to claimants where, as here, coverage under state law is not adequate. 30 U.S.C. § 931; 20

C.F.R. Part 722.  And, even if <u>Mounts</u> applied to bar Mr. or Mrs. Mullins from filing a state claim, it does not provide a vehicle for VPCIGA to escape liability under the BLBA for any federal claim.

    D.   If There Is Tension Between the State and Federal <u>Requirements, the State Law Must Give Way</u>

In <u>Williams</u>, the Court held that federal law preempts state law in this area of insurance.  That is what the Supremacy Clause generally requires.  U.S. Const., art. VI, cl. 2.  The same applies here.  DOL asserted a denial of coverage for VPCIGA based upon a provision of a state statute creating a technical defense.  As in <u>Williams</u>, however, the provision is superceded by the federal law which contemplates no such defense.  The only difference is that the carrier in <u>Williams</u>, at least, had an equitable argument in its favor.  It had never been paid for the coverage it was compelled to provide for free.  VPCIGA has no such defense because it probably was paid to cover these claims when Rockwood ceded premium for the year of Mr. Mullins's last employment.

The "inverse preemption" in the McCarran-Ferguson Act, 15 U.S.C. §§ 1101 <u>et</u> <u>seq</u>., does not apply to uphold the state limitation.  In <u>Williams</u>, DOL argued that the McCarran-Ferguson Act did not apply in matters of black lung insurance and the Court in <u>Williams</u> agreed.  <u>Williams</u>, 143 F.3d at 325. The McCarran-Ferguson Act provides:

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance:

15 U.S.C. § 1012. The McCarran-Ferguson Act's "primary objective" is to grant "the states broad regulatory authority over the business of insurance." United States Dep't of Treasury v. Fabe, 508 U.S. 491, 505 (1993). It accomplishes this goal by reversing the ordinary rule that federal law preempts state law. Instead, it lets state laws prevail over general federal laws that do not "specifically relate[] to the business of insurance." NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 293 (7th Cir. 1992), cert. denied, 508 U.S. 907 (1993). Where the federal and state laws do not conflict, there is no issue, but where, as here, federal laws are inconsistent with state laws, McCarran would require that the state law applies—unless Congress has said otherwise or the federal statute "specifically relates to the business of insurance." Id. at 295. See also Barnett Bank of Marion Cty, NA v. Nelson, 517 U.S. 25 (1996).

Here, Congress has spoken and directed that state provisions must give way. It is impossible to read the "notwithstanding the provisions of State workmen's compensation law which may provide for lesser payments" in 30 U.S.C. § 933(b)(1) any other way. A plain language analysis should end the inquiry. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)

("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete.") (citations omitted).

An analysis of the three-part test adopted by the Supreme Court in <u>Fabe</u> yields the same conclusion. Under this test, the state law preempts if: (1) the federal statute at issue does not "specifically relate[] to the business of insurance"; (2) the state statute at issue was "enacted for the purpose of regulating the business of insurance"; and (3) the application of the federal statute would "invalidate, impair, or supersede" the state statute. <u>Fabe</u>, 508 U.S. at 500-01 (internal quotations omitted). The term "relates to" is to be read broadly. As the Supreme Court has instructed:

> The word "relates" is highly general, and this Court has interpreted it broadly in other pre-emption contexts. <u>See</u>, <u>e. g.</u>, <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U. S. 41, 47 (1987) (words "`relate to' " have "`broad common-sense meaning, such that a state law "relate[s] to" a benefit plan ". . . if it has a connection with or reference to such a plan"` ") (quoting <u>Metropolitan Life Ins. Co. v. Massachusetts</u> , 471 U. S. 724, 739 (1985), in turn quoting <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U. S. 85, 97 (1983)).

<u>Barnett Bank</u>, 517 U.S. at 38.

In <u>Williams</u>, the court held that Congress intended to bypass the McCarran Act in the BLBA. It decided, first, that the BLBA specifically relates to the business of insurance because the BLBA (1) effectively transfers or spreads a

- 23 -

policyholder's risk—otherwise coal companies would bear individual liability for all medical costs of their employees; (2) is an integral part of the policy relationship—requiring companies to provide workmen's compensation insurance for all employees that complies with federal law; and (3) is aimed solely at entities within the insurance industry, namely employees and employers and carriers.  Williams, 143 F.3d at 325.  The court in Williams recognized that the BLBA, 30 U.S.C. § 933, specifically directed how carriers must structure their contracts with coal mine operators and therefore "specifically relates to the business of insurance," so the McCarran Act did not apply to preempt federal law.  Having determined that the first prong of the Fabe test could not be satisfied, it was not necessary for the court to reach the other two prongs.

If McCarran does not apply then neither DOL nor VPCIGA can look to state law to limit the scope of its federal coverage.  This is precisely what DOL has suggested that VPCIGA may do.   VPCIGA reinsured Rockwood's liabilities including those arising under federal law.  Neither Wilder nor Rockwood nor VPCIGA had any authority to impose a non-federal limit on claims filings any more than they could refuse to pay 100% of the benefits due.  Rockwood could not have been discharged from its bankruptcy reorganization without a plan to fully cover the workers' compensation claims for which it was liable and no bankruptcy judge would have accepted the proposition that Rockwood accounted for these liabilities by relying on a prior carrier and employer like Old Republic and RB&F.

DOL is willing to excuse VPCIGA from proper liability and seek payments from Old Republic, because it to refused to name VPCIGA as a party, leaving no party to pay except Old Republic or the Black Lung Disability Trust Fund. When faced with this charge, DOL always denies the liability of the Trust Fund and pursues a path of least resistance which in this case is the path leading to Old Republic's door.

E.    Shifting the Burden of Proof from DOL to RB&F Violates the
        Administrative Procedure Act

VPCIGA should have been deemed to be the responsible party for this case and DOL's failure to pursue it gives it no right to drop down to RB&F or its insurer. Neither Old Republic nor RB&F can be held responsible for the Mullins's claims in accordance with the clear language of the BLBA and DOL's rules no matter who bore the burden of proof. In fact, since DOL refused to allow VPCIGA into the case, despite RB&F's request, no one can know whether VPCIGA would have accepted its responsibility for the reasons argued here. DOL, the ALJ and the Board foreclosed that possibility by refusing to allow RB&F's reasonable request to allow the litigation of an undeniable issue in this case.

Here, though, the ALJ erred in imposing liability on RB&F by transferring the burden of proof from DOL to RB&F. Whether under the pre-2000 or post-2000 regulations, the Director is obligated in the first instance to identify, notify and develop evidence regarding the potential responsible operators. 20 C.F.R. §

725.410(b), 725.412 (1999); 20 C.F.R. § 725.407 (2014); Director, OWCP v. Trace Fork Coal Co., 67 F.3d 503, 507 (4th Cir. 1995).  As in Trace Fork, the Director's initial effort to identify the proper parties was deficient.  In Trace Fork, Department alleged that two of the companies for whom the claimant last worked could not be named as responsible operators because they were out of business.  According to DOL, one company, Vernon, had its corporate charter dissolved and its insurance coverage lapsed before the claimant last worked there and the other, Arizona, was out of business and had been uninsured on the claimant's last day of employment.  The ALJ held (and the Board affirmed) that the Department had failed to provide sufficient evidence to establish Vernon's or Arizona's inability to pay.  This Court agreed that the mere fact of bankruptcy or dissolution was not sufficient to establish an operator's financial inability to pay benefits and affirmed the Board's decision.  Trace Fork, 67 F.3d at 507.  That decision is controlling here.  See also Lester v. Mack Coal Co., 21 Black Lung Rep. (Juris) 1-126, 1-133 (Ben. Rev. Bd. 1999).

This decision is both unfair and unlawful for two additional reasons.  First, it violates the Supreme Court's decision in Greenwich Collieries, 512 U.S. at 280.  There, the Supreme Court held that the Department of Labor is not free to shift the burden of persuasion to an employer in a black lung claim.  It concluded that the Administrative Procedure Act, 5 U.S.C. § 556(d) prohibits any such shift by

plainly assigning the burden of proof to the party seeking to prove a fact.   In matters relating to the identity of the responsible party in a black lung claim, that burden might lie with a claimant, but the Department stepped in to relieve the claimant of that burden and took it upon itself to identify the responsible parties. There should be no objection to that shift in burden.  But here, the Department, the ALJ and the Board went beyond what the Supreme Court allows.  The decision relieved DOL of its initial burden and not only placed the burden of production and persuasion on the employer, which in a case like this, is the least likely among all parties to be able to carry it.  This Court rejected that approach in Matney and recognized the principle that the Supreme Court mandated in Greenwich Collieries that the Department lacks the authority to alter the burdens of proof specified in Section 7 of the APA.

The decision in National Mining Ass'n v. Dep't of Labor, 292 F.3d 849, 871 (D.C. Cir. 2002), finding section 725.495(c) valid facially does not insulate the decision in this case from attack.  There, the court concluded only that "Section 725.408 shifts the burden of production, not the burden of proof; it requires nothing more than that operators must submit evidence rebutting an assertion of liability within a given period of time."  Id.  Thus it held that the regulation did not violate Greenwich Collieries because it did not shift the burden of proof or persuasion and was not irrational, stating: "Where, as here, the Secretary affords a

mine operator liable for a claimant's black lung disease the opportunity to shift liability to another party, it is hardly irrational to require the operator to bear the burden of proving that the other party is in fact liable." <u>National Mining Ass'n</u>, 292 F.3d at 872. Here, DOL both shifted the burden of production and persuasion to RB&F. The opportunity to prove that another party is in fact liable was a hollow gesture here, given that DOL, the ALJ and the Board refused to allow RB&F to exercise its right to show that someone else was in fact liable. DOL's actions are not consistent with <u>Greenwich Collieries</u>, the Supreme Court's decision in <u>DelVecchio v. Bowers</u>, 296 U.S. 280 (1935) (holding that similar presumptions under the related Longshore Act are bursting bubble rules that fall away upon the presentation of any probative rebuttal evidence) and the APA, 5 U.S.C. § 556 (guaranteeing all parties the right to present probative evidence). It is equally clear that the Department's effort to erect an irrebuttable presumption of liability is unauthorized by statute and unfair.[4]

In a case like this one, where small, defunct operators are the focus, there is no way for a carrier to easily obtain needed evidence. Yet DOL, under the Mine Safety and Health Act maintains a vast historical database of the entire recent history of the coal industry. The Department's access to relevant information is far superior to that of an insurer or operator and extensive discovery on the question in

---

[4]    It is not clear that any presumption of this sort even applies to a case like this one where DOL has skipped a step in the analysis by unilaterally presuming that the last employer is not financially responsible.

any case is fair to no one. Not only has the Supreme Court invalidated the Department's imposition of the burden of persuasion on RB&F, but in trying to shift the burden, the Department compromises any possibility of fairness to the carrier.

In this case, the Director undertook no effort to notify Rockwood or VPCIGA of the existence of the claim despite repeated requests from RB&F to do so. DOL undertook no effort to identify Wilder's officers or to determine whether it had any successor or whether there was any entity that had a substantial interest in the operation of the coal mine after Wilder ceased operations. The Director relied solely on the fact that Wilder was out of business, that Rockwood was dissolved and that it anticipated that VPCIGA would deny coverage. That is not sufficient under DOL's regulations or Trace Fork.

Neither RB&F nor its carrier agreed to insure Wilder's liabilities and neither agreed to reinsure Rockwood's liabilities. VPCIGA had that responsibility and under the theory advanced by the Department in Williams, a carrier may not arbitrarily limit its liability to something less than the full liability imposed by the BLBA. The imposition of liability on RB&F reflects laziness on the agency's part. DOL erred in excusing VPCIGA before it even determined whether VPCIGA would assert a defense. DOL, not RB&F, has all the relevant information, the authority and the obligation to notify VPCIGA and obtain its response. It was just

- 29 -

easier—and more convenient—to name RB&F and Old Republic.  And, rather than hold DOL's feet to the fire and require it to do its job, the ALJ decided that RB&F should do DOL's job for it and then faulted RB&F for not carrying that burden. Rather than imposing liability on RB&F, responsibility for this case should be transferred to the Black Lung Disability Trust Fund.

## VII.  CONCLUSION

For the reasons set forth above, the decision of the Benefits Review Board should be vacated and liability should be transferred to the Black Lung Disability Trust Fund.

Respectfully submitted,

s/Mark E. Solomons
Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG LLP
2101 L Street, NW, Suite 1000
Washington, D.C. 20037
(202) 533-2361

## REQUEST FOR ORAL ARGUMENT

Although RB&F believes that this case should be resolved according to the precedent of this Court and other circuit courts, it respectfully requests oral argument in this case.

# CERTIFICATE OF COMPLIANCE

**Word count**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains ____ words (exclusive of the cover, table of contents and table of authorities). I relied on my word processor to obtain the count, using Microsoft Word 2010.

**TypeFace**

In addition, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times Roman, 14 pt.


s/Laura Metcoff Klaus
Laura Metcoff Klaus

CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2015, copies of the foregoing Petitioners' Brief were served on the following parties through the Court's CM/ECF notification system:

Emily Goldberg-Kraft
kraft.emily.j@dol.gov, blls-sol@dol.gov

Sean Gregory Bajkowski:
blls-sol@dol.gov, bajkowski.sean@dol.gov

Joseph E. Wolfe:
usdcadminbl@wwrrlawfirm.com, jwolfe@wwrrlawfirm.com,
wwrrattorneys@gmail.com, rbarnhill@wwrrlawfirm.com
mturner@wwrrlawfirm.com

s/Laura Metcoff Klaus
Laura Metcoff Klaus