No. 15-1656

---

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

---

R B & F COAL, INC., *et al.*,

*Petitioners,*

v.

DELORIS MULLINS and DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents.*

---

ON PETITION FOR REVIEW OF A DECISION
AND ORDER OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

---

## JOINT APPENDIX

---

Emily Kraft
U.S. Department of Labor
Office of the Solicitor
Suite N-2605 FBP
200 Constitution Ave., NW
Washington, D.C. 20210
(202) 693-5660

Joseph E. Wolfe
Wolfe, Williams
 & Reynolds
P. O. Box 625
Norton, VA 24272
(276) 679-0777

Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG LLP
2101 L Street, N.W.
Washington, D.C. 20037
(202) 533-2361

# TABLE OF CONTENTS

| Item | Record Entry | Page No. |
|------|--------------|----------|
| Petition for Review (filed June 12, 2015) | -- | J.A. 1 |
| Index of Certified Case Record, Benefits Review Board dated (July 16, 2015) | -- | J.A. 3 |
| Benefits Review Board Order on Reconsideration dated April 15, 2015 | R. 1 | J.A. 9 |
| Benefits Review Board Decision and Order dated February 26, 2015 | R. 15 | J.A. 11 |
| Administrative Law Judge Decision and Order dated February 10, 2014 | -- | J.A. 24 |
| Director's Exhibit No. 2: Application for Benefits dated May 11, 2009 | -- | J.A. 63 |
| Director's Exhibit No. 3: Employment History dated May 11, 2009 | -- | J.A. 67 |
| Director's Exhibit No. 5: Social Security Itemized Statement dated June 17, 2009 | -- | J.A. 69 |
| Director's Exhibit No. 16: Responsible Operator Identification dated May 13, 2010 | -- | J.A. 77 |

Director's Exhibit No. 17:
OWCP Correspondence dated
October 21, 2009 to May 10, 2010        --        J.A. 81

Director's Exhibit No. 22:
Operator Response dated
July 17, 2009        --        J.A. 93

Director's Exhibit No. 23:
Request for Dismissal dated
August 13, 2009        --        J.A. 99

Director's Exhibit No. 24:
OWCP Response dated
August 17, 2009        --        J.A. 100

Director's Exhibit No. 25:
Operator Correspondence
dated August. 25, 2009        --        J.A. 101

Director's Exhibit No. 26:
Deposition of Turl Mullins
dated September 17, 2009        --        J.A. 102

Director's Exhibit No. 27:
Schedule for Submission of
Additional Evidence dated
October 14, 2009        --        J.A. 118

Director's Exhibit No. 29:
Operator Correspondence dated
October 29, 2009        --        J.A. 130

Director's Exhibit No. 30:
Operator Correspondence dated
October 21, 2009        --        J.A. 135

Director's Exhibit No. 36:
Proposed Decision and Order
dated May 24, 2010        --        J.A. 137

Director's Exhibit No. 38:
Opposition of Operator dated
June 24, 2010                              --                    J.A. 151

Director's Exhibit No. 49:
Application for Conversion
dated June 10, 2011                        --                    J.A. 152

Director's Exhibit No. 51:
Proposed Decision and Order dated
July 19, 2011                              --                    J.A. 154

Director's Exhibit No. 55:
Opposition of Operator dated
August 8, 2011                             --                    J.A. 161

Operator Renewed Motion to
Dismiss dated March 1, 2013                --                    J.A. 162

Director's Response dated
March 8, 2013                              --                    J.A. 170

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

R B & F COAL, INC, and
OLD REPUBLIC INSURANCE CO.,

      Petitioners,

      v.                       No. _____

DELORIS MULLINS and DIRECTOR,
OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

      Respondents.

PETITION FOR REVIEW OF ORDERS OF THE BENEFITS
REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR

      R B & F Coal, Inc. and Old Republic Insurance Company herewith petition this Court for review of the decision and order of the Benefits Review Board, United States Department of Labor, in <u>Deloris J. Mullins v. RB & F Coal, Inc., et al.,</u> BRB No. 14-0169 BLA issued February 26, 2015, and the order on reconsideration issued April 15, 2015. This Court has jurisdiction to consider this appeal pursuant to Section 21(c) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c).

                                       Respectfully submitted,

                                       <u>s/Laura Metcoff Klaus</u>
                                       Mark E. Solomons
                                       Laura Metcoff Klaus
                                       GREENBERG TRAURIG LLP
                                       2101 L Street, NW, Suite 1000
                                       Washington, D.C. 20037
                                       (202) 533-2362

CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2015, a copy of the foregoing Petition for Review of Decision and Orders of the Benefits Review Board, United States Department of Labor was served on the following parties by first-class mail, postage prepaid:

Emily Goldberg-Kraft, Esq.
Office of the Solicitor
U.S. Department of Labor
Suite N-2117 FPB
200 Constitution Avenue, N.W.
Washington, D.C.  20210
blls-sol@dol.gov

Mr. Jerry Murphree
Stone Mountain Health Services
P. O. Drawer S
St. Charles, Virginia  24282

s/Laura Metcoff Klaus
Laura Metcoff Klaus

**U.S. Department of Labor**

July 16, 2015

Benefits Review Board
P.O. Box 37601
Washington, DC 20013-7601



Patricia S. Connor, Clerk
U.S. Court of Appeals
for the Fourth Circuit
1100 East Main Street
Room 501
Richmond, VA 23219-3517

CA# 15-1656:    RB & F Coal Incorporated and Old Republic Insurance Company,
Petitioners v. Deloris J. Mullins o/b/o and Widow of Turl Mullins
and Director, Office of Workers' Compensation Programs,
United States Department of Labor, Respondents
(Case No. 12-BLA-5277) (BRB No. 14-169 BLA)

Dear Ms. Connor:

The above-cited case has been appealed to your Court.

Enclosed, please find the certified case record.

Sincerely,

BENEFITS REVIEW BOARD

Thomas O. Shepherd, Jr.
Clerk of the Appellate Boards

BRB No. 14-169 BLA                                    Case No. 15-1656

### C E R T I F I C A T E

I, Thomas O. Shepherd, Jr., Clerk of the Appellate Boards, U.S. Department of Labor, do hereby certify that the papers enclosed herewith constitute the record before the Benefits Review Board.

In testimony thereof the undersigned has hereunder set his hand at Washington, D.C. this sixteenth-day of July, 2015.

By:      _____

                              Thomas O. Shepherd, Jr.
                Clerk of the Office of the Appellate Boards

CA# 15-1656:   RB & F COAL INCORPORATED and OLD REPUBLIC INSURANCE COMPANY, Petitioner v.
               DELORIS J. MULLINS o/b/o and WIdow of TURL MULLINS and DIRECTOR, OFFICE OF
               WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,
               Respondents (Case No. 12-BLA-5277)
               (BRB No. 14-169 BLA)

## INDEX OF DOCUMENTS

| | PAGES |
|---|---|
| Benefits Review Board Order on Reconsideration denying employer's motion for reconsideration, dated April 15, 2015. | 1-2 |
| Employer's motion for reconsideration with attached cover letter, from Laura Metcoff Klaus, dated March 23, 2015. | 3-14 |
| Benefits Review Board Decision and Order affirming the administrative law judge's Decision and Order awarding benefits in the miner's claim and remanding the survivor's claim to the district director for entry of an appropriate order, dated February 26, 2015. | 15-28 |
| Employer's reply brief with attached cover letter, from Laura Metcoff Klaus, dated November 10, 2014. | 29-36 |
| Director's response brief, from Emily Goldberg-Kraft, dated October 17, 2014. | 37-45 |
| Benefits Review Board Order giving the Director (10) days to file a response brief, dated October 7, 2014. | 46-47 |
| Director's second motion for extension of time to file a response brief, from Michael J. Rutledge, dated September 15, 2014. | 48-50 |
| Benefits Review Board Order giving the Director (10) days to file a response brief, dated September 3, 2014. | 51-52 |
| Director's motion for extension of time to file a response brief, from Emily Goldberg-Kraft, dated August 16, 2014. | 53-55 |
| Benefits Review Board Order accepting employer's petition for review and brief and setting response time, dated July 17, 2014. | 56-57 |
| Employer's motion to accept brief out of time and petition for review and brief with attached cover letter, from Laura Metcoff Klaus, dated June 18, 2014. | 58-99 |

CA# 15-1656:

## INDEX OF DOCUMENTS CONT.                                    PAGES

Employer's motion for extension of time to file a petition for review and
brief with attached cover letter, from Laura Metcoff Klaus, dated
June 9, 2014.                                                   100-103

Memorandum transmitting the case record to the Benefits Review Board,
from Steven D. Breeskin, dated May 6, 2014.                     104

Benefits Review Board Order giving the employer (30) days from receipt
of Order to file a petition for review and brief, dated May 6, 2014.    105-106

Employer's motion for extension of time to file a petition for review and
brief with attached cover letter, from Laura Metcoff Klaus, dated
April 25, 2014.                                                 107-110

Benefits Review Board acknowledgment of employer's notice of appeal,
dated March 25, 2014.                                           111-112

Director's change of counsel, from Emily Goldberg-Kraft, dated
March 12, 2014.                                                 113

Employer's notice of appearance and notice of appeal with attached cover
letter, from Mark E. Solomons, dated February 27, 2014.         114-117

Decision and Order  Awarding Benefits In Living Miner's And Survivor's
 dated February 10, 2014.

Administrative Law Judge Materials.


Transcript of the Hearing held before the Office of Administrative Law Judges in
Wise, VA on May 9, 2013


Claimant's Exhibits:              1-4

Employer's Exhibits:              1-11

Director's Exhibits:              1-65

## CERTIFICATE OF SERVICE

CA# 15-1656:    RB & F COAL INCORPORATED and OLD REPUBLIC INSURANCE COMPANY, Petitioners
v. DELORIS J. MULLINS (o/b/o and Widow of TURL MULLINS) and DIRECTOR, OFFICE
OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF
LABOR, Respondents (Case No. 12-BLA-5277) (BRB No. 14-169 BLA)

Copies were sent to the following:

Patricia S. Connor, Clerk                              **UPS**
U.S. Court of Appeals
  for the Fourth Circuit
1100 East Main Street
Room 501
Richmond, VA  23219-3514

Jerry Murphree                                         **CERTIFIED**
Stone Mountain Health Services
P.O. Drawer S
St. Charles, VA  24282

Deloris J. Mullins                                     **CERTIFIED**
P.O. Box 1124
Pound, VA  24279

Emily Goldberg-Kraft, Esq.
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Suite N-2119, NDOL
Washington, DC  20210

Hon. Linda S. Chapman
U.S. Department of Labor
Office of Administrative Law Judges
800 K Street, NW
Suite 400
Washington, DC  20001

Mark E. Solomons, Esq.                                 **CERTIFIED**
Greenberg Traurig LLP
2101 L Street, N.W.
Suite 1000
Washington, DC  20037

CA# 15-1656:

## CERTIFICATE OF SERVICE CONT.

Michael Chance
U.S. Department of Labor
Suite C-3516, NDOL
Washington, DC 20210

Rae Ellen James, Esq.                    **ELECTRONIC**
Associate Solicitor
U.S. Department of Labor
200 Constitution Avenue, N.W.
Suite N-2117, NDOL
Washington, DC 20210

**U.S. Department of Labor**   Benefits Review Board
P.O. Box 37601
Washington, DC 20013-7601



BRB No. 14-0169 BLA

DELORIS J. MULLINS                     )
(o/b/o and Widow of TURL MULLINS)      )
                                       )
        Claimant-Respondent            )
                                       )
    v.                                 )
                                       )                    APR 1 5 2015
RB & F COAL, INCORPORATED              )   DATE ISSUED:_____
                                       )
        Employer-Petitioner            )
                                       )
DIRECTOR, OFFICE OF WORKERS'           )
COMPENSATION PROGRAMS, UNITED          )
STATES DEPARTMENT OF LABOR             )
                                       )   ORDER ON
        Party-in-Interest              )   RECONSIDERATION

As no member of the panel has affirmatively voted to vacate or modify the decision herein, the motion for reconsideration filed by employer is DENIED. 33 U.S.C. §921(b)(5); 20 C.F.R. §§801.301(b), 802.407(a), 802.409.

By Order of the Board:

_Thomas O. Shepherd J._

Thomas O. Shepherd, Jr.
Clerk of the Board

J.A. 9

## CERTIFICATE OF SERVICE

2014-0169-BLA Deloris J. Mullins v. RB & F Coal, Inc., Director, Office of Workers' Compensation Programs (Case No. 12-BLA-5277)

I certify that the parties below were served this day.

APR 1 5 2015

_____
(DATE)

*Thomas O. Shepherd*

_____
Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards

Jerry Murphree
Stone Mountain Health Services
P.O. Drawer S
St. Charles, VA 24282
    *--Certified*

Deloris J. Mullins
P.O. Box 1124
Pound, VA 24279
    *--Certified*

Emily Goldberg-Kraft, Esq.
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W., N-2119
Washington, DC 20210

Linda S. Chapman
Office of the Administrative Law Judges
800 K Street, NW
Suite 400
Washington, DC 20001

Mark E. Solomons, Esq.
Greenberg Traurig LLP
2101 L Street, N.W.
Suite 1000
Washington, DC 20037
    *--Certified*

Michael Chance
U.S. Department of Labor
Suite C-3516, NDOL
Washington, DC 20210

Rae Ellen James, Esq.
Associate Solicitor, U.S. Department of Labor
200 Constitution Avenue, N.W.
Suite N-2117, NDOL
Washington, DC 20210
    *--Electronic*

**U.S. Department of Labor**     Benefits Review Board
P.O. Box 37601
Washington, DC 20013-7601



BRB No. 14-0169 BLA

| | | |
|---|---|---|
| DELORIS J. MULLINS | ) | |
| (o/b/o and Widow of TURL MULLINS) | ) | |
| | ) | |
| Claimant-Respondent | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RB & F COAL, INCORPORATED | ) | DATE ISSUED: 02/26/2015 |
| | ) | |
| Employer-Petitioner | ) | |
| | ) | |
| DIRECTOR, OFFICE OF WORKERS' | ) | |
| COMPENSATION PROGRAMS, UNITED | ) | |
| STATES DEPARTMENT OF LABOR | ) | |
| | ) | |
| Party-in-Interest | ) | DECISION and ORDER |

Appeal of the Decision and Order of Linda S. Chapman, Administrative Law Judge, United States Department of Labor.

Mark E. Solomons (Greenberg Traurig LLP), Washington, D.C., for employer.

Emily Goldberg-Kraft (M. Patricia Smith, Solicitor of Labor; Rae Ellen James, Associate Solicitor; Michael J. Rutledge, Counsel for Administrative Litigation and Legal Advice), Washington, D.C., for the Director, Office of Workers' Compensation Programs, United States Department of Labor.

Before: HALL, Acting Chief Administrative Appeals Judge, McGRANERY and BOGGS, Administrative Appeals Judges.

PER CURIAM:

Employer, RB & F Coal, Incorporated, appeals the Decision and Order (2012-BLA-5277) of Administrative Law Judge Linda S. Chapman awarding benefits on claims filed pursuant to the provisions of the Black Lung Benefits Act, 30 U.S.C. §§901-944

(2012) (the Act). This case involves a miner's claim filed on May 14, 2009 and a survivor's claim filed on June 17, 2011.[1]

The administrative law judge adjudicated both claims. In regard to the miner's claim, the administrative law judge credited the miner with 20.23 years of coal mine employment,[2] and found that the evidence established the existence of clinical pneumoconiosis[3] pursuant to 20 C.F.R. §718.202(a)(1), (4). The administrative law judge also found that the medical opinion evidence established the existence of legal pneumoconiosis[4] pursuant to 20 C.F.R. §718.202(a)(4). The administrative law judge further found that the miner was entitled to the presumption that his clinical pneumoconiosis arose out of his coal mine employment pursuant to 20 C.F.R. §718.203(b). The administrative law judge also found that the evidence established that the miner was totally disabled due to pneumoconiosis pursuant to 20 C.F.R. §718.204(b), (c).[5] Accordingly, the administrative law judge awarded benefits in the miner's claim.

---

[1] Claimant is the surviving spouse of the miner, who died on May 12, 2011. Director's Exhibit 49.

[2] The record reflects that the miner's coal mine employment was in Virginia. Director's Exhibit 3. Accordingly, this case arises within the jurisdiction of the United States Court of Appeals for the Fourth Circuit. *See Shupe v. Director, OWCP*, 12 BLR 1-200, 1-202 (1989) (en banc).

[3] "Clinical pneumoconiosis" consists of "those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. §718.201(a)(1).

[4] "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. 20 C.F.R. §718.201(a)(2).

[5] Although the administrative law judge credited the miner with 20.23 years of coal mine employment, she found that claimant failed to establish that the miner worked for at least fifteen years in underground mines, or in surface mining in conditions "substantially similar" to those in an underground mine. Decision and Order at 8, 29-30. The administrative law judge, therefore, found that claimant was not entitled to a rebuttable presumption that the miner was totally disabled due to pneumoconiosis pursuant to 20 C.F.R. §718.305. *Id.*

2

In regard to the survivor's claim, the administrative law judge found that evidence established that the miner's death was due to pneumoconiosis pursuant to 20 C.F.R. §718.205(b). Accordingly, the administrative law judge also awarded benefits in the survivor's claim.

On appeal, employer argues that the administrative law judge erred in identifying it as the responsible operator. Employer further contends that the administrative law judge erred in finding that the evidence established the existence of pneumoconiosis pursuant to 20 C.F.R. §718.202(a)(1), (4), and that the miner was totally disabled due to pneumoconiosis pursuant to 20 C.F.R. §718.204(b), (c). In regard to the survivor's claim, employer contends that the administrative law judge erred in finding that the miner's death was due to pneumoconiosis pursuant to 20 C.F.R. §718.205(b). Claimant has not filed a response brief. The Director, Office of Workers' Compensation Programs (the Director), responds in support of the administrative law judge's identification of employer as the responsible operator. The Director also responds in support of the administrative law judge's award of benefits in both claims. In a reply brief, employer reiterates its previous contentions.

The Board's scope of review is defined by statute. The administrative law judge's Decision and Order must be affirmed if it is rational, supported by substantial evidence, and in accordance with applicable law. 33 U.S.C. §921(b)(3), as incorporated by 30 U.S.C. §932(a); *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.*, 380 U.S. 359 (1965).

In order to establish entitlement to benefits under 20 C.F.R. Part 718 in a miner's claim, a claimant must establish the existence of pneumoconiosis, that the pneumoconiosis arose out of coal mine employment, and that the pneumoconiosis is totally disabling. 20 C.F.R. §§718.3, 718.202, 718.203, 718.204. Failure to establish any one of these elements precludes entitlement. *Trent v. Director, OWCP*, 11 BLR 1-26 (1987); *Perry v. Director, OWCP*, 9 BLR 1-1 (1986) (en banc).

**Responsible Operator**

Employer, RB & F Coal, Incorporated, contends that the administrative law judge improperly designated it as the responsible operator. The responsible operator is the "potentially liable operator, as determined in accordance with [20 C.F.R.] §725.494, that most recently employed the miner." 20 C.F.R. §725.495(a)(1). A coal mine operator is a "potentially liable operator" if it meets the criteria set forth at 20 C.F.R. §725.494(a)-(e).[6]

---

[6] In order for a coal mine operator to meet the regulatory definition of a "potentially liable operator," the miner's disability or death must have arisen out of employment with the operator, the operator must have been in business after June 30,

3

Once a potentially liable operator has been properly identified by the Director, that operator may be relieved of liability only if it proves either that it is financially incapable of assuming liability for benefits, or that another operator more recently employed the miner for at least one year and it is financially capable of assuming liability for benefits. *See* 20 C.F.R. §725.495(c).

The district director found that the miner worked for employer, RB & F Coal, Incorporated, for at least one year from 1985 to 1986. Director's Exhibit 36. Although the miner subsequently worked for Wilder Coal Company (Wilder Coal) from 1986 to 1988, the district director declined to identify Wilder Coal as the responsible operator. The district director explained that Wilder Coal was bankrupt, and that Rockwood Insurance Company (Rockwood), the insurance carrier that provided coverage for Wilder Coal on the miner's last day of employment, was also bankrupt. *Id.* Under Virginia law, claims filed against Rockwood before August 26, 1992, were to be paid by the Virginia Property and Casualty Insurance Guaranty Association (VPCIGA), a reinsurer. *See Boyd & Stevenson Coal Co. v. Director, OWCP* [*Slone*], 407 F.3d 663, 665, 23 BLR 2-288 (4th Cir. 2005). However, the district director noted that the miner's claim was filed after the deadline of August 26, 1992, and that no state claim was ever filed. Director's Exhibit 36. Because employer was the last viable operator to employ the miner for a full year,[7] the district director designated employer as the responsible operator. *Id.*

The administrative law judge found that employer was the properly named responsible operator, even though it was not the operator that most recently employed the miner. The administrative law judge specifically rejected employer's contention that Wilder Coal should have been designated as the responsible operator:

> [I]t was the Employer's burden to establish that Wilder Coal should have been designated as the responsible operator, because it, or its corporate

---

1973, the operator must have employed the miner for a cumulative period of not less than one year, the employment must have occurred after December 31, 1969, and the operator must be financially capable of assuming liability for the payment of benefits, either through its own assets or through insurance. 20 C.F.R. §725.494(a)-(e).

[7] Although the miner worked for J&R Contractors, Incorporated in 1988 and 1989, and for A G M Coal Company in 1989, the district director found that neither of these companies employed the miner for a full year. Director's Exhibit 36. While the miner worked for Kim-Stan, Incorporated in 1989 and 1990, the district director found that the company was not insured during the miner's dates of employment, and was no longer in business. *Id.*

4

officers, have the ability to pay benefits in these claims. Similarly, it was the Employer's burden to establish that the assets of VPCIGA should be applied to these claims. The Employer provided absolutely no information to establish that a claim against Rockwood, Wilder [Coal]'s insolvent insurer, was a "covered claim" for which VCIPGA would be statutorily liable under Virginia law. Indeed as the [district director] noted in the Proposed Decision and Order, [the miner's] claim was filed after the Rockwood bankruptcy bar date of August 26, 1992, and no state claim was ever filed.

Decision and Order at 6.

Employer argues that the district director erred in failing to notify VPCIGA of the miner's and survivor's claims.[8] Employer concedes that the deadline for filing a claim with VPCIGA was August 26, 1992. However, citing *Slone*, employer asserts that the miner's untimely claim would have been excused under Virginia Law because the miner "could not have filed a claim prior to the cut-off date because he had no knowledge of the conditions that would have entitled him to file for benefits." Employer's Brief at 21.

Employer's reliance upon *Slone* is misplaced. In *Slone*, the United States Court of Appeals for the Fourth Circuit held that VPCIGA was liable for a survivor's claim, even though the claim was filed after August 26, 1992, the deadline for filing claims for which VPCIGA would be held liable. The court explained that the survivor's claim was derivative of a miner's claim, which had been filed before the deadline. *Slone*, 407 F.3d at 668, 23 BLR at 2-299. In this case, by contrast, both the miner's claim and the survivor's claim were filed after the August 26, 1992 deadline. Thus, the facts presented in this case differ materially from the facts that were presented in *Slone*. Moreover, Virginia courts have recognized that VPCIGA is not liable for benefits where a claimant files his claim after the final date set by a court for the filing of claims against an insolvent insurer. *Uninsured Employer's Fund v. Mounts*, 484 S.E. 2d 140 (Va. Ct. App. 1997), *aff'd*, 497 S.E.2d 464 (Va. 1998). Because the current claims were filed after August 26, 1992, VPCIGA could not be deemed responsible for the payment of benefits. *Id.* Furthermore, contrary to employer's argument, state-run insurance guaranty associations are not covered by 20 C.F.R. §726.203(c), which prohibits private insurance carriers from limiting their liability for black lung claims. *See Slone*, 407 F.3d at 669, 23 BLR at 2-299; *Lovilia Coal Co. v. Williams*, 143 F.3d 317, 21 BLR 2-353 (7th Cir.

---

[8] Employer does not dispute that Wilder Coal Company and Rockwood Insurance Company are incapable of paying benefits.

5

1998).  We affirm, therefore, the administrative law judge's determination that the district director properly designated employer as the responsible operator in the current claims.[9]

## The Miner's Claim

### The Existence of Clinical Pneumoconiosis

Turning to the merits, employer argues that the administrative law judge erred in finding that the evidence established the existence of clinical pneumoconiosis.  The administrative law initially considered the x-ray evidence, consisting of seven interpretations of four x-rays taken on April 24, 2009, July 7, 2009, November 19, 2009, and August 18, 2010.  The administrative law judge accurately noted that six of the seven x-ray interpretations were interpreted as positive for pneumoconiosis, including four x-ray interpretations rendered by physicians dually qualified as B readers and Board-certified radiologists.[10]  Decision and Order at 29.  Based upon the "overwhelming preponderance" of the evidence, the administrative law judge found that the x-ray evidence established the existence of clinical pneumoconiosis pursuant to 20 C.F.R.

---

[9] Employer asserts that the administrative law judge "failed to consider that [the miner's] employment for either Deblin Coal or Crystal Coal took place after his employment with [employer] and that employment cumulatively totaled more than one year."  Employer's Brief at 27.  The miner's Social Security records reveal that the miner worked for Deblin Coal Company from 1977 to 1979, well before he worked for employer.  Although the miner briefly referenced "Crystal Coal Company" during a September 17, 2009 deposition, Director's Exhibit 26 at 5, there is no indication in the record as to when, or for how long, the miner worked for this company.  Also, employer provides no support for its assertion that "Crystal Coal was a successor to Deblin." Employer's Reply Brief at 4.  Consequently, employer has failed to carry its burden to prove that Crystal Coal satisfies the requirements of a potential responsible operator.  *See* 20 C.F.R. §725.495(c)(2).

[10] Drs. Miller and Alexander, each dually qualified as a B reader and Board-certified radiologist, interpreted the April 24, 2009 x-ray as positive for pneumoconiosis. Director's Exhibit 12; Claimant's Exhibit 5.  Drs. Miller and Navani, each dually qualified as a B reader and Board-certified radiologist, interpreted the July 7, 2009 x-ray as positive for the disease.  Director's Exhibits 10, 13.  Although Dr. Jarboe, a B reader, interpreted the November 19, 2009 x-ray as negative for pneumoconiosis, Director's Exhibit 14, Dr. Alexander, a B reader and Board-certified radiologist, interpreted the x-ray as positive for the disease.  Director's Exhibit 13.  Finally, Dr. Fino, a B reader, interpreted the August 18, 2010 x-ray as positive for pneumoconiosis.  Director's Exhibit 44.  Director's Exhibit 44.

6

J.A. 16

§718.202(a)(1). Because employer does not challenge this finding, it is affirmed.[11] *Skrack v. Island Creek Coal Co.*, 6 BLR 1-710 (1983).

Employer next argues that the administrative law judge erred in finding that the medical opinion evidence established the existence of clinical pneumoconiosis.[12] The administrative law judge considered the medical opinions of Drs. Forehand, Sergent, Smiddy, Jarboe, Fino, and Rosenberg. While Drs. Forehand, Sergent, and Smiddy diagnosed clinical pneumoconiosis, Director's Exhibit 9; Claimant's Exhibits 2, 3; Employer's Exhibits 12, 13, Drs. Jarboe, Fino, and Rosenberg opined that the miner did not suffer from the disease. Director's Exhibits 14, 44; Employer's Exhibits 1-4, 9   The administrative law judge found that Dr. Forehand's diagnosis of clinical pneumoconiosis was well-reasoned and "consistent with [her] finding on the totality of the x-ray evidence." Decision and Order at 30. The administrative law judge noted that Dr. Forehand's opinion was supported by the well-reasoned opinions of the miner's treating physicians, Drs. Smiddy and Sargent. *Id.* at 33-34. By contrast, the administrative law judge found that the contrary opinions of Drs. Jarboe, Fino, and Rosenberg were speculative, equivocal, poorly reasoned, and not supported by the objective evidence. *Id.* at 30-33. The administrative law judge, therefore, found that the medical opinion evidence established the existence of clinical pneumoconiosis pursuant to 20 C.F.R. §718.202(a)(4). *Id.* at 34.

───────────────

[11] Employer contends that the administrative law judge erred in not weighing the CT scan evidence against the x-ray evidence. Dr. Saadeh interpreted two CT scans, taken on September 10, 2009 and April 28, 2010, as revealing "extensive interstitial lung disease" that was "most likely" related to usual interstitial pneumonitis/interstitial pulmonary fibrosis. Decision and Order at 28; Employer's Exhibit 11. Because Dr. Saadeh "did not make any findings of pneumoconiosis," the administrative law judge found that the CT scan evidence did not establish the existence of pneumoconiosis. Decision and Order at 30. Although the administrative law judge did not explicitly weigh the CT scan evidence against the x-ray evidence, we note that the administrative law judge relied upon the radiological qualifications of the readers in evaluating the x-ray evidence. Because Dr. Saadeh's radiological qualifications are not in the record, the administrative law judge's error, if any, in not providing a more detailed explanation for her weighing of the CT scan evidence was harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 413 (2009); *Larioni v. Director, OWCP*, 6 BLR 1-1276, 1-1278 (1985).

[12] The administrative law judge found that the evidence did not establish the existence of pneumoconiosis pursuant to 20 C.F.R. §718.202(a)(2), (3). Decision and Order at 28-29.

7

Employer argues that the administrative law judge erred in finding that Dr. Forehand's opinion established the existence of clinical pneumoconiosis. In finding that Dr. Forehand's diagnosis of clinical pneumoconiosis was supported by the x-ray evidence, employer contends that the administrative law judge ignored the doctor's statement that the x-rays could be consistent with idiopathic pulmonary fibrosis (IPF). We disagree. The administrative law judge noted that, although Dr. Forehand acknowledged that the miner's x-ray findings could be consistent with "early idiopathic pulmonary fibrosis," the doctor opined that this finding would not eliminate other considerations. Decision and Order at 11; Employer's Exhibit 12 at 6, 16. In fact, Dr. Forehand specifically opined that it remained his opinion that the x-ray findings were "consistent with the effects of coal mine dust in the lungs." *Id.* at 6. The administrative law judge, therefore, permissibly credited Dr. Forehand's opinion, that the miner suffered from clinical pneumoconiosis because she found that it was consistent with the x-ray evidence. *See Island Creek Coal Co. v. Compton*, 211 F.3d 203, 22 BLR 2-162 (4th Cir. 2000); *see also Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 533, 21 BLR 2-323, 2-335 (4th Cir. 1998); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441, 21 BLR 2-269, 2-275-276 (4th Cir. 1997).

We also reject employer's contention that the administrative law judge erred in according less weight to the opinions of Drs. Jarboe, Fino, and Rosenberg. The administrative law judge noted that Dr. Jarboe was the only reader who rendered a negative x-ray interpretation. The administrative law judge permissibly found that the November 19, 2009 x-ray that Dr. Jarboe relied upon as negative for pneumoconiosis was interpreted as positive for pneumoconiosis by a better qualified physician, thus calling into question the reliability of Dr. Jarboe's opinion.[13] *Arnoni v. Director, OWCP*, 6 BLR 1-423 (1983); *White v. Director, OWCP*, 6 BLR 1-368 (1983); Decision and Order at 30-31.

The administrative law judge found that the opinions of Drs. Fino and Rosenberg merited less weight because they were not well-supported by the x-ray evidence. The administrative law judge found that Dr. Fino's opinion, that the miner did not have pneumoconiosis, relied on the physician's finding that the miner's x-rays showed only irregular opacities, not rounded opacities, which he stated are typical of coal workers' pneumoconiosis. The administrative law judge further found that Dr. Rosenberg's opinion, that the miner did not have pneumoconiosis, similarly relied on the physician's finding that the miner's x-rays showed only irregular opacities, not rounded opacities.

---

[13] Although Dr. Jarboe, a B reader, interpreted the November 19, 2009 x-ray as negative for pneumoconiosis, Director's Exhibit 14, Dr. Alexander, a B reader and Board-certified radiologist, interpreted the x-ray as positive for the disease. Director's Exhibit 13.

8

The administrative law judge determined that the weight of the x-ray evidence failed to support the findings of Drs. Fino and Rosenberg that only irregular opacities were seen, as more highly qualified physicians interpreting the x-rays detected either rounded opacities, or a combination of rounded and irregular opacities. Decision and Order at 31-33.

Contrary to employer's contention, the administrative law judge did not err in her analysis of the medical opinions. The determination of whether a medical opinion is reasoned and documented is within the discretion of the administrative law judge. *Clark v. Karst-Robbins Coal Co.*, 12 BLR 1-149, 1-155 (1989) (*en banc*); *Fields v. Island Creek Coal Co.*, 10 BLR 1-19 (1987). Here, the administrative law judge rationally found that the reasoning of Drs. Rosenberg and Fino, that only irregular opacities were present on x-ray, was not supported by the weight of the x-ray evidence, as a majority of the other physicians who reviewed the miner's x-rays noted either rounded opacities, or a combination of rounded and irregular opacities.[14] *See Wetzel v. Director, OWCP*, 8 BLR 1-139, 141 (1985).

Thus, the administrative law judge permissibly credited Dr. Forehand's opinion, that the miner suffered from clinical pneumoconiosis, over the contrary opinions of Drs. Jarboe, Fino, and Rosenberg.[15]   Because it is based upon substantial evidence,[16] we

---

[14] The administrative law judge noted that five of the seven x-ray readings included findings of round opacities, as well as irregular opacities:

> Dr. Alexander reported that the April 24, 2009 x-ray showed primary rounded opacities (p), and secondary irregular opacities (s); he reported that the November 19, 2009 x-ray showed primary irregular opacities (s), and secondary rounded opacities (p). Dr. Miller reported primary rounded opacities (q) and secondary irregular opacities (s) on the April 24, 2009 and July 7, 2009 x-rays. Dr. Forehand reported primary rounded opacities (p) and secondary irregular opacities (t) on the July 7, 2009 x-ray.

Decision and Order at 31.

The administrative law judge also accurately noted that four of the seven x-ray readings "include findings of *primary* p or q changes (i.e., rounded opacities)." *Id.* at 32.

[15] Because the administrative law judge provided valid bases for according less weight to the opinions of Drs. Jarboe, Fino, and Rosenberg, any error she may have made in according less weight to their opinions for other reasons would be harmless. *See Kozele v. Rochester and Pittsburgh Coal Co.*, 6 BLR 1-378, 1-382 n.4 (1983). Therefore,

9

affirm the administrative law judge's finding that the medical opinion evidence established the existence of clinical pneumoconiosis pursuant to 20 C.F.R. §718.202(a)(4).

The administrative law judge also found that all of the evidence of record, when weighed together, established the existence of clinical pneumoconiosis pursuant to 20 C.F.R. §718.202(a). *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 22 BLR 2-162 (4th Cir. 2000); Decision and Order at 35. Because it is supported by substantial evidence, this finding is affirmed.

## Total Disability

Employer next contends that the administrative law judge erred in finding that the medical opinion evidence established that the miner was totally disabled pursuant to Section 718.204(b)(2)(iv).[17] Employer asserts that the administrative law judge erred in failing to consider the physical requirements of the miner's previous coal mine work in conjunction with the medical opinion evidence. We disagree. The administrative law judge accurately found that "[e]very physician who has addressed [the] issue has concluded that [the miner] had a totally disabling oxygen transfer impairment."[18]

---

we need not address employer's remaining arguments regarding the weight accorded to the opinions of Drs. Jarboe, Fino, and Rosenberg.

[16] Employer argues that the administrative law judge erred in her consideration of the opinions of Drs. Sergent and Smiddy. We note that, even if the administrative law judge had discounted the opinions of Drs. Sergent and Smiddy, Dr. Forehand's opinion, which the administrative law judge permissibly credited as better reasoned than the opinions of Drs. Jarboe, Fino, and Rosenberg, would still constitute substantial evidence in support of the administrative law judge's finding that the medical opinion evidence established clinical pneumoconiosis. *See Larioni v. Director, OWCP*, 6 BLR 1-1276, 1278 (1986).

[17] The administrative law judge found that the arterial blood gas study evidence established total disability pursuant to 20 C.F.R. §718.204(b)(2)(ii). Decision and Order at 35. Because this finding is unchallenged on appeal, it is affirmed. *Skrack v. Island Creek Coal Co.*, 6 BLR 1-710 (1983).

[18] Dr. Jarboe opined that the miner suffered from "a totally disabling impairment of gas exchange." Employer's Exhibit 9. Dr. Fino opined that the miner was "clearly disabled" due to "severe oxygen transfer problems." Director's Exhibit 44. Dr. Rosenberg diagnosed a "severe oxygenation abnormality," and opined that the miner

10

Decision and Order at 35. Because it is supported by substantial evidence, we affirm the administrative law judge's finding that the miner was totally disabled pursuant to 20 C.F.R. §718.204(b).

**Disability Causation**

Employer argues that the administrative law judge erred in finding that the evidence established that the miner's total disability was due to pneumoconiosis pursuant to 20 C.F.R. §718.204(c). We disagree. The administrative law judge noted that, although Dr. Forehand explained that the miner's arterial blood gas study results could be consistent with IPF, the doctor further explained that the results "could be consistent with a lot of other conditions that cause scarring of the lungs." Decision and Order at 36; Employer's Exhibit 12 at 10. In this case, Dr. Forehand found that the miner's severe respiratory impairment (a pO2 of 43) was due to his clinical pneumoconiosis. Director's Exhibit 9. The administrative law judge permissibly found that Dr. Forehand's opinion, that the miner's totally disabling pulmonary impairment was due to clinical pneumoconiosis, was well reasoned. *See Compton*, 211 F.3d at 212, 22 BLR at 2-176; *Hicks*, 138 F.3d at 533, 21 BLR at 2-335; *Akers*, 131 F.3d at 441, 21 BLR at 2-275-276. Conversely, the administrative law judge permissibly accorded less weight to Dr. Jarboe's opinion because the doctor did not provide "any support for his claim that the miner's desaturation with exercise was not characteristic of [clinical] pneumoconiosis." Decision and Order at 36-37. The administrative law judge also permissibly accorded less weight to Dr. Rosenberg's opinion because the doctor "did not explain or support his conclusory statement that the inhalation of coal mine dust did not have a material adverse effect on the [miner's] pulmonary well-being." Decision and Order at 37.

The administrative law judge accorded less weight to Dr. Fino's opinion because the doctor relied on the fact that the miner's diffusing capacity was too low to have been caused by coal mine dust exposure. Decision and Order at 37. We need not address whether this was a proper basis for according less weight to Dr. Fino's opinion. The administrative law judge accurately found that Dr. Fino, along with Drs. Jarboe and Rosenberg, did not diagnose the miner with clinical pneumoconiosis. Since the administrative law judge found the existence of clinical pneumoconiosis established, she "could only give weight to the causation opinions of the physicians who had not diagnosed pneumoconiosis 'if [s]he provided specific and persuasive reasons for doing

---

suffered from a totally disabling pulmonary impairment. Employer's Exhibits 1, 4 at 11. Dr. Forehand also opined that the miner was "totally and permanently disabled" explaining that the miner did not have sufficient residual ventilatory capacity to return to his last coal mining job. Director's Exhibit 9.

11

so, and those opinions could carry little weight at the most.'" *Collins v. Pond Creek Coal Mining Co.,* 468 F.3d 213, 224, 23 BLR 2-393, 2-412 (4th Cir. 2006) (Shedd, J., dissenting), quoting *Scott v. Mason Coal Co.,* 289 F.3d 263, 22 BLR 2-372 (4th Cir. 2002); *see also Toler v. Eastern Associated Coal Corp.,* 43 F.3d 109, 19 BLR 2-70 (4th Cir. 1995). We therefore reject employer's contention that the administrative law judge erred in according diminished probative value to the opinions of Drs. Fino, Jarboe, and Rosenberg regarding the cause of the miner's totally disabling pulmonary impairment. Consequently, the opinions of Drs. Fino, Jarboe and Rosenberg do not counter Dr. Forehand's opinion. *Id.* Under these circumstances, we affirm the administrative law judge's finding that the evidence established that the miner's total disability was due to pneumoconiosis pursuant to 20 C.F.R. §718.204(c). We, therefore, affirm the administrative law judge's award of benefits in the miner's claim.

### The Survivor's Claim

Having affirmed the administrative law judge's award of benefits in the miner's claim, we hold that claimant has satisfied her burden to establish each fact necessary to demonstrate her entitlement under amended Section 932(*l*) of the Act: that she filed her claim after January 1, 2005; that she is an eligible survivor of the miner; that her claim was pending on March 23, 2010; and that the miner had been determined to be eligible to receive benefits at the time of his death. 30 U.S.C. §932(*l*). Because claimant is derivatively entitled to survivor's benefits, we remand this case to the district director for the entry of an award of benefits pursuant to Section 932(*l*).[19]

---

[19] In light of our disposition of this case, we need not address employer's contention that the administrative law judge erred in finding that the miner's death was due to pneumoconiosis pursuant to 20 C.F.R. §718.205(b).

12

Accordingly, the administrative law judge's Decision and Order awarding benefits in the miner's claim is affirmed.  In regard to the survivor's claim, this case is remanded to the district director for the entry of an appropriate order.

SO ORDERED.


_____
BETTY JEAN HALL, Acting Chief
Administrative Appeals Judge


_____
REGINA C. McGRANERY
Administrative Appeals Judge


_____
JUDITH S. BOGGS
Administrative Appeals Judge

J.A. 23

**U.S. Department of Labor**     Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

(202) 693-7300
(202) 693-7365 (FAX)



Issue Date: 10 February 2014

---

*IN THE MATTER OF:*

DELORIS J. MULLINS (Widow)
TURL MULLINS (Deceased),
        *Claimant,*

        v.

RB & F COAL, INC.,
        *Employer,*

        and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
        *Party-in-Interest.*

CASE NO.:  2012-BLA-5277

---

### DECISION AND ORDER
### AWARDING BENEFITS IN
### LIVING MINER'S AND SURVIVOR'S CLAIMS

This proceeding arises from a claim for benefits under the Black Lung Benefits Act of 1977 ("the Act"), 30 U.S.C. § 901 et seq. Benefits under the Act are awardable to miners who are totally disabled due to pneumoconiosis. Pneumoconiosis is a dust disease of the lungs arising from coal mine employment and is commonly known as "black lung."

In accordance with the Act and the regulations issued thereunder, this case was referred by the Director, Office of Workers' Compensation Programs for a formal hearing. A formal hearing was held before the undersigned on May 9, 2013, in Wise, Virginia, at which all parties were afforded full opportunity in accordance with the Rules of Practice and Procedure (29 C.F.R. Part 18) to present evidence and argument as provided in the Act and the regulations issued thereunder, set forth in Title 20, Code of Federal Regulations, Parts 410, 718, 725, and 727. At the hearing, I admitted Director's Exhibits (DX) 1–65; Claimant's Exhibits (CX) 1-4; and Employer's Exhibits (EX) 1-11.

On September 3, 2013, I issued an Order admitting a reading of an April 24, 2009 x-ray by Dr. Alexander (CX 5), as well as the transcripts from the depositions of Dr. Forehand (EX 12)

and Dr. Sergent (EX   ). I noted that, although the Employer had requested additional time for Dr. Tarver to review CT scans, no readings had been submitted.

On September 30, 2013, I issued an Order reopening the record at the Employer's request, so that the Employer could obtain the April 24, 2009 x-ray for re-reading.   On November 26, 2013, after being advised that the Employer would not be submitting any additional re-readings, I issued an order closing the record. I noted that the Employer's Exhibits were EX 1 through 4, 7, 9, and 11 through 13. I incorrectly stated that there was not an EX 10; in fact, by letter dated June 13, 2013, counsel for the Employer submitted a copy of a subpoena that had been served on the Holston Valley Hospital for production of September 10, 2009 and April 28, 2010 CT scans, which counsel designated as EX 10.  This exhibit will be considered as part of the record.

The District Director submitted a written brief on December 6, 2013; the Employer submitted a written brief on December 11, 2013; the Claimant did not submit a written brief.

I have based my analysis on the entire record, including the exhibits and representations of the parties, and given consideration to the applicable statutory provisions, regulations, and case law, and made the following findings of fact and conclusions of law.

## JURISDICTION AND PROCEDURAL HISTORY

Mr. Turl Mullins filed his claim for benefits on May 14, 2009 (DX 2).  On May 24, 2010, the District Director issued a Proposed Decision and Order awarding benefits (DX 36).   The Employer appealed, and on August 11, 2010, the file was transmitted to the Office of Administrative Law Judges (DX 41). Mr. Mullins passed away on May 12, 2011, and on August 9, 2011, Judge Colwell issued an Order of Remand, returning the file to the District Director for a determination of an estate representative (DX 47).

Mrs. Mullins submitted her survivor's claim for benefits on June 17, 2011 (DX 49).  On July 19, 2011, the District Director issued a Proposed Decision and Order awarding benefits to Mrs. Mullins (DX 51).  The Employer appealed and requested a hearing, and both the miner's and survivor's claims were transmitted to the Office of Administrative Law Judges on December 13, 2011 (DX 61, 63).

## APPLICABLE STANDARD

Because this claim was filed after the enactment of the Part 718 regulations, entitlement to benefits will be evaluated under Part 718 standards.  Under these regulations, Mrs. Mullins, in connection with the living miner's claim, bears the burden of demonstrating each of the following elements by a preponderance of the evidence:    (1) the miner suffers from pneumoconiosis; (2) the pneumoconiosis arose from coal mine employment; (3) the miner has a totally disabling respiratory impairment; and (4) the impairment is caused by pneumoconiosis. 20 C.F.R. §§ 718.202-718.204.  Failure to establish any one of these elements precludes entitlement to benefits.

J.A. 25

With respect to Mrs. Mullins's survivor's claim, she must establish that Mr. Mullins had pneumoconiosis that arose from his coal mine employment, and that his death was due to pneumoconiosis.

## ISSUES PRESENTED

The following issues are presented for resolution:

1. Whether Mr. Mullins timely filed his claim for benefits.
2. Whether Mr. Mullins had pneumoconiosis that arose from his coal mine employment.
3. Whether Mr. Mullins was totally disabled due to pneumoconiosis.
4. Whether Mr. Mullins' death was due to pneumoconiosis.
5. Whether the Employer is properly designated as the responsible operator.

Tr. 7-8.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The findings of fact and conclusions of law which follow are based upon my analysis of the entire record, including all documentary evidence admitted and arguments made.

### Background

Mr. Mullins was born on April 11, 1935; he had a tenth grade education (DX 2). Mr. Mullins stated that he had 30 years of coal mine employment, ending in 1992. He married his wife, Deloris, on October 24, 2008. Mr. Mullins was previously married, but his first spouse died in January 2002. Mr. and Mrs. Mullins have no dependent children.

Before his death, Mr. Mullins testified by deposition on September 17, 2009 (DX 26). He stated that he ran an open cab dozer for J & R Contractors. He had several periods of self-employment; he ran a dozer on strip mines with his own company. They included Crystal Coal Company, and Deblin. He also ran an open cab for Wilder Coal Company, and for R B & F. According to Mr. Mullins, the same person owned Wilder and R B & F.

Mr. Mullins estimated that he worked in the coal mines for close to thirty years, about seven of which were underground. Most of his work was as a dozer operator. He quit in 1989, because he was unable to work; he had cancer (melanoma), and he was overweight. At the time of his deposition, Mr. Mullins had been on oxygen for about three months. He had seen Dr. Forehand about three months earlier, who told him that he had black lung. His treating physician, Dr. Sergent, told him about seven months earlier that he had black lung; Dr. Smiddy told him that a week earlier, and Dr. Joshi told him the same thing about two months earlier. According to Mr. Mullins, a physician whose name he could not recall told him in 1982 that he had black lung, but he did not follow up on it.

- 3 -

Mr. Mullins stated that in the past, he sometimes smoked as much as a pack a day, but quit thirteen years earlier. He was treated for a heart condition by Dr. Joshi, who prescribed medication.

Mrs. Mullins testified at the hearing (Tr. 21 - 25). She stated that she and Mr. Mullins married on October 24, 2008; she has not remarried, and has no dependents. Mrs. Mullins recalled that Mr. Mullins told her he worked for maybe 30 years in the mines. He worked in the little coal mines shoveling coal, and later on strip mines, running dozers and heavy equipment. She stated that the dozers had reverse fans that blew everything back on him. His last job was at a strip mine. She thought that Mr. Mullins retired in 1987, because of his breathing. He did not work anywhere else.

Mrs. Mullins stated that her husband told her that he smoked very little, maybe for about 12 years. He smoked off and on. His health was not good when they married, and he had breathing difficulties toward the end of his life, and trouble sleeping. He was treated by Dr. Sergent, who started him on oxygen in 2009. Toward the end, Mr. Mullins could not take a shower without his oxygen; he had to sleep on seven or eight pillows in a hospital bed.

The Director determined that Mr. Mullins established 20.23 years of coal mine employment, from January 1, 1960, to December 31, 1990 (DX 36). The Director noted that Mr. Mullins' Social Security earnings record also reflected self-employment earnings, but there was not sufficient documentation or information, and these periods were not credited.

### Responsible Operator

As the Director noted in the May 24, 2010 Proposed Decision and Order awarding benefits in Mr. Mullins' miner's claim, the Employer, R B & F Coal Inc., is not the operator that most recently employed Mr. Mullins. Mr. Mullins worked for the Employer in 1985 and 1986, and his Social Security earnings records establish more than one year of coal mine employment with this operator. After he left R B & F, Mr. Mullins worked for Wilder Coal Company in 1986, 1987, and 1988. However, the Director stated that Wilder Coal Company is out of business. The company was insured by Rockwood Insurance Company for Mr. Mullins' dates of employment, but Rockwood is bankrupt, and Mr. Mullins' claim was filed after the bar date of August 26, 1992. Thus, the Director determined that Wilder Coal Company is not a viable operator under the regulations.

Mr. Mullins also worked for AGM Coal Company, Inc., in 1989, but his Social Security earnings record does not reflect a full year of employment. Mr. Mullins last worked for Kim-Stan, Inc., in 1989 and 1990, but Kim-Stan was not insured for his dates of employment, and is no longer in business.

For these reasons, the Director designated R B & F Coal Inc. as the responsible operator, and noted in the Proposed Decision and Order that R B & F failed to timely submit evidence to challenge its designation, and thus no documentary evidence could be admitted in further proceedings.

- 4 -

J.A. 27

By letter dated February 13, 2012, counsel for the Employer submitted a Motion to Dismiss R B & F Coal Company, Inc. and Transfer Liability to the Black Lung Disability Trust Fund. The Director submitted a response on August 15, 2012, which it renewed on March 8, 2013. By letter dated March 1, 2013, counsel for the Employer submitted a Renewed Motion to Dismiss R B & F Coal Company, Inc. and Transfer Liability to the Black Lung Disability Trust Fund, and a Reply to Director's Response to R B & F Coal Company's Motion to Dismiss.

The Employer argues that the Director, after determining that he would not designate Wilder Coal as the responsible operator because it was insured by Rockwood, which was bankrupt, had an affirmative duty to designate the guaranty fund, the Virginia Property & Casualty Insurance Guaranty Association (VPCIGA), as a party, but the Director ignored the Employer's request to do so.

The Employer also argues that the Director had an affirmative duty to notify VPCIGA and allow them an opportunity to file a response, and to notify the officers and directors of Wilder Coal and make a determination as to whether they had sufficient assets to pay these claims. The Employer argues that it is illegal for an operator to fail to obtain insurance, and the Department of Labor does not have the power to "excuse" Wilder from its obligations under the Act.

The Employer's arguments are based on a misapprehension of the regulations that apply to the designation of a responsible operator in these claims, which were filed after 2008. Under the regulations applicable to these claims, the Director is required to designate as the responsible operator the most recent operator that meets the requirements for designation at 20 C.F.R. §§ 725.492 and 725.493 (2000) and 20 C.F.R. §§ 725.491-725.494 (2008).

Once the Director has designated a responsible operator, this designated responsible operator has the burden to prove either

(1) That it does not possess sufficient assets to secure the payment of benefits in accordance with § 725.606; or

(2) That it is not the potentially liable operator that most recently employed the miner. Such proof must include evidence that the miner was employed as a miner after he or she stopped working for the designated responsible operator and that the person by whom he or she was employed is a potentially liable operator with the meaning of § 725.494. In order to establish that a more recent employer is potentially liable operator, the designated responsible operator must demonstrate that the more recent employer possesses sufficient assets to secure the payment of benefits in accordance with § 725.606. The designated responsible operator may satisfy its burden by presenting evidence that the owner, if the more recent employer is a sole proprietorship; the partners, if the more recent employer is a partnership; or the president, secretary, and treasurer, if the more recent employer is a corporation that failed to secure the payment of benefits pursuant to part 726 of this subchapter, possess assets sufficient to secure the payment of benefits, provided such assets may be reached in a proceeding brought under subpart I of this part.

- 5 -

J.A. 28

Title 20 C.F.R. § 725.495(c).

In other words, it is the *Employer's* burden to show that Mr. Mullins' more recent coal mine employers had sufficient assets to secure the payment of benefits in these claims. It is not, as claimed by the Employer, the Director's duty to notify the officers and directors of Wilder Coal, and make a determination as to whether they had sufficient assets to pay the claims.[1] Nor is it of any significance whatsoever that the Director did not notify Wilder Coal, Rockwood, or VPCIGA that they were potentially liable as responsible operators.

Not surprisingly, the Employer cited to no authority to support its claim that the Director had an affirmative duty to notify VPCIGA of these claims and allow them the opportunity to file a response. The cases cited by the Employer, dealing with the requirement that an insurer cover a policyholder's entire liability, have no relevance whatsoever to the issue at hand, which is whether the Employer has met its burden to establish that a more recent coal mine employer has assets sufficient to secure the payment of benefits in these claims.

Contrary to the Employer's claim, the Director did not make a decision to "excuse" Wilder Coal and VPCIGA from liability, in violation of the regulations. The Employer's argument that under the regulations, "the carrier responsible for a claim is the company that insured the coal operator at the time of the miner's last date of exposure," is a misstatement of the applicable regulations. Those regulations specifically provide that if the responsible operator designated by the Director is not the operator that most recently employed the miner for at least one year, the Director must explain the reasons for the designation. Title 20 C.F.R. § 725.495(d). The Director's Proposed Decision and Order states that Wilder Coal is no longer in business, and its insurer is bankrupt, and has no assets available for the payment of these claims. The Director thus established that Wilder Coal did not meet the requirements of Title 20 C.F.R. 725.494(e). Thus, the Director designated R B & F, the next most recent operator for whom Mr. Mullins worked for at least one year, as the responsible operator.

Again, it was the Employer's burden to establish that Wilder Coal should have been designated as the responsible operator, because it, or its corporate officers, had the ability to pay benefits in these claims. Similarly, it was the Employer's burden to establish that the assets of VPCIGA should be applied to these claims. The Employer provided absolutely no information to establish that a claim against Rockwood, Wilder's insolvent insurer, was a "covered claim" for which VPCIGA would be statutorily liable under Virginia law. Indeed, as the Director noted in the Proposed Decision and Order, Mr. Mullins' claim was filed after the Rockwood bankruptcy bar date of August 26, 1992, and no state claim was ever filed.

In its reply, the Employer finds it "interesting" that the Director argues that the Employer had the burden to submit evidence regarding the ability of Wilder or any corporate officer to pay benefits, noting that the Director is relying on its "own regulations" in requiring the Employer to submit this evidence. The Employer argues that this is unconstitutional and a deprivation of its

---

[1] I note that under 725.491(b), an officer of a corporation is not to be considered an "operator" for purposes of designating a responsible operator. Rather, after the issuance of an order awarding benefits against an operator that has not secured its liability for benefits, the order may be enforced against the officers of the corporation.

- 6 -

J.A. 29

due process rights. According to the Employer, if the Director had "properly performed its obligations and discharged its duties" by naming Wilder, Rockwood, or VPCIGA as a party, the Employer would have had access to discovery and depositions to establish their ability to pay. Again, I find that the Director's actions were in accordance with the applicable regulations. I do not have the authority to address the Employer's claim that the regulations are unconstitutional.

The Employer's claim that the Director was required to notify Wilder and its corporate officers of its potential status as a responsible operator, and to notify VPCIGA of the claim is misplaced. As discussed above, the Director was not required to do so, and the Employer did nothing to meet its burden to establish that a more recent operator had sufficient assets to secure the payment of benefits. I find that the Employer is properly designated as the responsible operator.

### Length of Coal Mine Employment

The Director determined that Mr. Mullins worked as a coal miner for 20.23 years, from January 1, 1960, to December 31, 1990. This is supported by Mr. Mullins' Social Security earnings record, and the Employer agrees to that finding.[2] Most of his work was above ground, working on strip mines, as reflected in his Description of Coal Mine Work and Employment History, and his testimony at his deposition (DX 4, 26). When he worked at the strip mines, Mr. Mullins ran a dozer, with an open cab.

In order to be entitled to consideration of the presumptions under Section 718.305, Mrs. Mullins must establish that Mr. Mullins worked for fifteen years in an underground mine, or in a surface mine with dust conditions substantially similar to those found in underground mines. In his Employment History form, Mr. Mullins set out his coal mine jobs from November 1959 through 1990 (DX 3). He described his occupation, when underground, as hand-loading coal, and his work on the surface as running an open cab dozer. For each position, he stated that he was exposed to dust, gases, or fumes. At least for the years 1989 to 1990, Mr. Mullins' Description of Coal Mine work reflects that he worked for seven days a week (DX 4).

In his deposition, Mr. Mullins discussed his coal mine employment, which involved running open cab dozers. He estimated that he worked about seven years in underground coal mines, and about 23 above ground, as a dozer operator. According to Mrs. Mullins, Mr. Mullins ran dozers and heavy equipment in the strip mines; he told her that the dozers had reverse fans that blew everything back on him.

Mr. Mullins' tasks, loading coal in the underground mines, and operating a bulldozer on strip mines, were inexorably intertwined with coal production. Mr. Mullins was a coal miner, a status that is not contested by the Employer. Unfortunately, however, the record does not include sufficient factual evidence to support a conclusion that Mr. Mullins' work operating an open cab dozer on surface strip mines exposed him to substantially similar conditions as work in the underground mines. Mr. Mullins can no longer provide any details about his working conditions, nor can his previous spouse, who was married to him during his coal mine

---

[2] The Employer agrees that Mr. Mullins had twenty years of coal mine employment, four of them underground, and the remainder as a dozer operator on the surface (Tr. 26).

employment. All that is in the record is that Mr. Mullins worked in an open cab dozer, was exposed to coal, dust, and fumes, and according to Mrs. Mullins, he told her that the fans blew everything back into the cab.[3]

I find that Mrs. Mullins has not established that Mr. Mullins worked for at least 15 years in underground coal mines, or on the surface in similar conditions. Thus, she is not entitled to invocation of the fifteen year presumption under Section 718.305.

## Timeliness

The Employer contests the timeliness of Mr. Mullins' claim for benefits. Mr. Mullins' claim was filed on May 14, 2009. 20 C.F.R. Section 725.308 provides that

> A claim for benefits filed under this part by, or on behalf of, a miner shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner or a person responsible for the care of the miner, or within three years after the date of enactment of the Black Lung Benefits Act of 1977, whichever is later.

The regulations also provide that there is a rebuttable presumption that every claim for benefits is timely filed. 20 C.F.R. Section 725.308(c). The Board has held that a determination of total disability due to pneumoconiosis must be "actually received" by the miner, and if so, there must be a finding that the miner was capable of understanding the report. *Adkins v. Donaldson Mine Co.,* 19 B.R.R 1-34 (1993).

The record in this case does not contain any evidence to suggest that a physician provided Mr. Mullins with a report indicating that he was totally disabled due to pneumoconiosis. Given the presumption that a claim is timely filed, and the total lack of any evidence to rebut this presumption, I find that Mr. Mullins' claim for benefits was timely filed.

## Designation of an Estate Representative

In its brief, the Employer raises for the first time its argument that Mr. Mullins' living miners' claim must be dismissed, because no personal representative has been properly authorized to pursue this claim. On August 9, 2011, Judge Colwell remanded Mr. Mullins' claim to the District Director, for a determination of whether there was a personal representative to pursue his claim (DX 47). The Director sent a form letter to Mrs. Mullins, asking if she intended to pursue Mr. Mullins' claim, and she indicated that she did (DX 60). There is no other documentation to reflect Mrs. Mullins' status as the representative of her late husband's estate.

At the hearing, I specifically discussed the issues raised by both the miner's and survivor's claims. Counsel for the Employer did not indicate that the Employer contested the authority of Mrs. Mullins to pursue her husband's miner's claim. Nor did the Employer identify this as an issue in its May 1, 2013 Prehearing Report.

---

[3] There is no information in the record as to whether any of these strip mines were associated with an underground mine.

- 8 -

J.A. 31

Under these circumstances, I find that any challenge to Mrs. Mullins' status as an authorized representative entitled to pursue her late husband's claim has been waived.[4]

## Medical Evidence

### Chest X-Ray Evidence

| Exhibit No. | Date of X-ray | Reading Date | Physician/ Qualifications[5] | Impression |
|---|---|---|---|---|
| DX 12 | 4-24-09 | 5-9-09 | Miller/B, BCR | 2/1, q, s |
| CX 5 | 4-24-09 | 6-25-13 | Alexander/B, BCR | 2/3, p, s |
| DX 10 | 7-7-09 | 7-23-09 | Navani/B, BCR | Read for quality purposes |
| DX 9 | 7-7-09 | 7-7-09 | Forehand/B | 2/2, p, t |
| DX 13 | 7-7-09 | 1-24-10 | Miller/B, BCR | 2/2, q, s |
| DX 13 | 11-19-09 | 2-2-10 | Alexander/B, BCR | 3/2, s, p |
| DX 14 | 11-19-09 | 12-13-09 | Jarboe/B | Negative for pneumoconiosis |
| DX 44 | 8-18-10 | 9-10-10 | Fino/B | 1/2, t, s |

### Pulmonary Function Studies

| Exhibit No. | Date | Age/Ht | FEV$_1$ | FVC | FEV1/ FVC | MVV | Effort |
|---|---|---|---|---|---|---|---|
| DX 9 | 7-7-09 | 74/66" | 2.00 | 2.93 | 68 | | Good |
| DX 14 | 11-19-09 | 74/66" | 1.80 1.84* | 2.69 2.56* | 66.99 71.69* | 39.37 32.46 | |

---

[4] In any event, Mrs. Mullins' status as Mr. Mullins' surviving spouse is sufficient to entitle her to pursue his claim.

[5] "B-reader" (designated as "B") and "Board-certified radiologist" (designated as "BCR") are designations that indicate qualifications a person may possess to interpret x-ray film. A "B-reader" has demonstrated proficiency in assessing and classifying chest x-ray evidence for pneumoconiosis by successful completion of an examination. A "Board Certified Radiologist" has been certified, after four years of study and an examination, as proficient in interpreting x-ray films of all kinds including images of the lungs.

| DX 44 | 8-18-10 | 75/172.7 cm | 1.79 1.77* | 2.54 2.45* | 70 72* | | |

*Test administered after bronchodilator usage.

### Arterial Blood-Gas Studies

| Exhibit No. | Date | Physician | PCO₂ | PO₂ | pH | At rest/exercise |
|---|---|---|---|---|---|---|
| DX 9[6] | 7-7-09 | Forehand | 40.9 40.5 | 62.2 43.1 | 7.443 7.455 | At rest During exercise |
| DX 14 | 11-19-09 | Jarboe | 39.3 | 68.8 | 7.384 | At rest |
| DX 44 | 8-18-10 | Fino | 36 | 46 | 7.51 | At rest |

### Medical Reports

#### Dr. J. Randolph Forehand

Dr. Forehand examined Mr. Mullins on July 7, 2009 at the Director's request (DX 9). He reported Mr. Mullins' occupational history, as well as his family and medical histories, and his symptoms. Mr. Mullins told Dr. Forehand that he smoked off and on from 1960 to 1994, a pack of cigarettes a day. On his examination of Mr. Mullins, Dr. Forehand reported no dullness to percussion, and crackles on auscultation. Mr. Mullins' x-ray showed coal workers' pneumoconiosis. His pulmonary function studies produced an FEV1 of 80%; his arterial blood gas study showed exercise induced arterial hypoxemia.

Dr. Forehand concluded that Mr. Mullins had coal workers pneumoconiosis, based on his work history, shortness of breath, abnormal breath sounds, x-ray, and arterial blood gas study, and cigarette smokers lung disease, based on his smoking history, and his pulmonary function study. He attributed the coal workers pneumoconiosis to Mr. Mullins' history of coal dust exposure, and the cigarette smokers lung disease to his cigarette smoking.

Dr. Forehand stated that Mr. Mullins had a significant respiratory impairment, and insufficient residual ventilatory capacity to return to his last coal mining job. He was unable to work, and was totally and permanently disabled. According to Dr. Forehand, Mr. Mullins' 34 years of smoking cigarettes had left him with a mild respiratory impairment, with an FEV1 of 80%. But on the other hand, the scarring of his lungs from the effects of breathing coal mine dust caused a severe respiratory impairment, with a pO2 of 43. He stated that the principal

---

[6] Dr. Michos reviewed this test and determined that it was technically acceptable (DX 11).

- 10 -

reason Mr. Mullins could not return to work was his shortness of breath stemming from the lack of oxygen due to coal workers pneumoconiosis.

Dr. Forehand testified by deposition on June 11, 2013 (EX 12). He discussed his findings, including his interpretation of Mr. Mullins' x-ray, which he thought showed primary small rounded lesions, and secondary irregular opacities; he saw changes in all six lung zones, with a profusion at second stage. In response to a question from counsel, Dr. Forehand stated that Mr. Mullins did not tell him that he was being treated for idiopathic pulmonary fibrosis.[7]

Dr. Forehand stated that at the time he saw Mr. Mullins, he did not make an exhaustive initial diagnosis of the x-ray. He thought that the findings were consistent with the effects of coal mine dust on the lungs, and he continued to believe that. He thought it could also be consistent with early idiopathic pulmonary fibrosis.

Employer's counsel advised Dr. Forehand that the Holston Valley Hospital had provided CT scan reports; Mr. Mullins had CT scans on August 28, 2009, September 10, 2009, and April 28, 2010. Counsel read the findings on Mr. Mullins' April 28, 2010 CT scan, stating that Mr. Mullins had extensive interstitial lung disease, with findings most likely related to UIP/IPF.[8] Dr. Forehand responded that he also noted the T-type opacity, which sort of "goes along." He felt that rather than just describing what he or she saw, the radiologist was going a step farther and making a diagnosis. In his experience, the radiologist in this situation would recommend a biopsy. This is what Dr. Forehand would have done, because if IPF comes to mind, it has very serious implications. He stated that idiopathic pulmonary fibrosis is a progressive and generally fatal disease, characterized by scarring of the lungs and thickening of the lining.

Dr. Forehand did not think that things added up. He noted that Mr. Mullins had an FVC of 90%, an FEV1 of 80%, and an FEV1/FVC of 68%, which, looking at the gold standard for diagnosing lung disease, certainly steered him away from thinking of IPF, which has a very very marked effect on the FVC. It is a severely restrictive lung disease, due to the scarring and thickening. He stated that with IPF, one would see a profoundly reduced FVC, yet when he saw Mr. Mullins, his FVC was normal. According to Dr. Forehand, you cannot have IPF and an FVC of 92 percent of predicted.

Dr. Forehand did not discount the CT scan, stating that it was a significant finding. But he wondered whether if the radiologist knew that Mr. Mullins had a normal FVC, he would have recommended a biopsy.

Dr. Forehand felt that Mr. Mullins' blood gas study could fit with IPF, but it also fit with a lot of things that cause scarring of the lungs; it was a non-specific finding. It shows that he has a respiratory impairment, but it does not show an etiology. He still had a lot of questions about the CT scan.

---

[7] There is no medical evidence in the record to indicate that Mr. Mullins **was** being treated for idiopathic pulmonary fibrosis.

[8] Counsel did not refer to the more detailed findings on the September 9, 2009 report by Dr. Saadeh, which he incorporated by reference in his April 28, 2010 report, and which included findings of extensive coarse reticular opacities throughout the lungs.

- 11 -

J.A. 34

Dr. Forehand acknowledged that IPF would cause the results seen in Mr. Mullins' arterial blood gas studies, but so could other fibrotic lung diseases. He agreed with counsel that the risk factors for IPF were past smoking history, being older than 60, and being a male, as well as persistent cough, chronic shortness of breath, and a crackling sound. He referred to Robbins and Cotran, Pathologic Basis of Disease, and a table showing the major causes of fibrotic lung disease. They include IPF, as well as pneumoconiosis. Dr. Forehand stated that while smoking, age, and gender are factors, so is occupational dust exposure. He stated that he was always a little puzzled when the term "idiopathic" was used, when there was an exposure history and a smoking history.

Dr. Forehand agreed that pneumoconiosis does not cause as rapid a demise as idiopathic pulmonary fibrosis. But he stated that the pneumoconiosis they were seeing now, since the early 200s, was a more accelerated advanced form, with a clearly different pathology. He had just returned from a conference on the subject, and stated that the current pathology in the lungs of miners dying of pneumoconiosis was different than twenty years ago. He did note that in general, with IPF, there is a very accelerated course, with three years until death.

Dr. Forehand acknowledged that Mr. Mullins' findings were consistent with idiopathic pulmonary fibrosis, but he did not think there was anything that eliminated other considerations.

*Dr. Thomas Jarboe*

Dr. Jarboe examined Mr. Mullins on November 19, 2009 at the Employer's request (DX 14). He reported Mr. Mullins' occupational history, as well as his family and medical histories, and his symptoms. Dr. Jarboe also reviewed additional medical records. Mr. Mullins told Dr. Jarboe that he started smoking at age 19, about 1954, and smoked a while and quit a while; at one time he quit for 12 years. He thought he smoked for 5-10 years, about a half pack a day, and on weekends perhaps a pack a day. Mr. Mullins was on oxygen.

On his examination of Mr. Mullins, Dr. Jarboe noted that he had good air entry and distribution, with no wheezes. There were intense bibasilar crackles posteriorly and laterally. The pulmonary function testing showed no restriction, and very mild airflow obstruction on the pre-dilator study. The FEV1% was in the normal range after administration of bronchodilators. Dr. Jarboe thought that Mr. Mullins had no clinically significant airflow obstruction. His lung volumes showed a moderate restrictive process, and the residual volume was significantly reduced. The diffusion capacity was severely lowered at 37%, but corrected for lung volume it was mildly reduced at 70%.

Mr. Mullins' resting arterial blood gases showed mild resting hypoxemia for a man 74 years old. His carboxyhemoglobin level was that of a nonsmoker. Dr. Jarboe thought that the x-ray was distinctly abnormal, with diffuse irregular opacities in all lung zones, and scattered small rounded opacities. But based on the "overall clinical findings," Dr. Jarboe did not feel that the abnormalities were indicative of coal workers pneumoconiosis. He thought that they were caused by interstitial lung disease, likely idiopathic fibrosis. He classified the x-ray as 0/0.

- 12 -

Dr. Jarboe concluded that a diagnosis of legal or clinical pneumoconiosis could not be made. Mr. Mullins had interstitial lung disease, likely due to idiopathic pulmonary fibrosis. He had an abnormal x-ray, but the overall clinical findings were those of interstitial lung disease, likely idiopathic pulmonary fibrosis, and not coal workers pneumoconiosis.

Dr. Jarboe based his conclusion that Mr. Mullins did not have legal pneumoconiosis on the fact that he had intense basilar rales or crackles; Dr. Forehand also described crackles over the lung fields. According to Dr. Jarboe, crackles are not a feature of coal workers pneumoconiosis, but are commonly found as a manifestation of idiopathic pulmonary fibrosis. He cited to an article by Dr. Seaton. In addition, Dr. Jarboe stated that another finding not characteristic of simple coal workers pneumoconiosis was the severely reduced diffusion capacity, which was not characteristic of coal dust induced lung disease. He cited to studies showing that simple pneumoconiosis does not cause respiratory disability by a reduction of diffusing capacity, and in fact, the diffusing capacity is either within normal limits or slightly reduced, and when there is a reduction it is almost always in miners with a p type opacity.[9] Dr. Jarboe concluded that Mr. Mullins' degree of reduction was not indicative of coal workers pneumoconiosis. Considering the x-ray findings, the crackles over the lung fields, and the reduction in diffusion, he felt the most likely cause was idiopathic pulmonary fibrosis.

Dr. Jarboe stated that Mr. Mullins had a severe pulmonary impairment. He did not have significant restriction, but his lung volumes showed a moderate restrictive defect. He also had a significant impairment in gas exchange, as shown by the severely reduced diffusing capacity, and drop in oxygen tension shown by Dr. Forehand. Dr. Jarboe felt that the cause was idiopathic fibrosis and not the inhalation of coal mine dust or coal workers pneumoconiosis. Mr. Mullins was totally and permanently disabled, and did not retain the respiratory capacity to perform his previous job or one of similar demand. The cause of this impairment was idiopathic pulmonary fibrosis. Dr. Jarboe did not feel that the inhalation of coal mine dust or pneumoconiosis caused Mr. Mullins' disabling impairment.

Dr. Jarboe prepared a report dated March 24, 2013 after reviewing additional medical evidence (EX 2). He concluded that the available medical evidence did not indicate that Mr. Mullins had coal workers pneumoconiosis. He did not have clinical coal workers pneumoconiosis. His x-ray was characteristic of idiopathic pulmonary fibrosis, with predominantly irregular opacities, most intense in the mid and lower zones. He acknowledged that interstitial fibrosis can be seen in coal miners, but felt that features in this case allowed distinction as to the cause of Mr. Mullins' abnormal x-ray.

Dr. Jarboe noted that Mr. Mullins had intense basilar crackles on examination, which are not a feature of coal workers pneumoconiosis, but are commonly found as a manifestation of idiopathic pulmonary fibrosis. He cited to an article by Dr. Seaton in Occupational Lung Diseases. Dr. Jarboe stated that another finding not characteristic of simple coal workers pneumoconiosis was the severely reduced diffusion capacity, which is not characteristic of coal dust inducted lung disease. He cited to a report by Lapp and Parker, stating that studies of single breath diffusion capacity in miners confirmed earlier observation that persons with category 2 or 3 simple coal workers pneumoconiosis of the pinhead type had slight reductions of diffusion,

---

[9] Dr. Alexander, Dr. Forehand, and Dr. Fino reported the presence of p type opacities on Mr. Mullins' x-rays.

compared with subjects with q opacities. On the other hand, Kiblestis found that the reductions with moderate exercise for 133 working miners were minimal, and were related to smoking, and not radiographic evidence of coal workers pneumoconiosis or the number of years spent underground. Dr. Morgan concluded that there was little doubt that simple coal workers pneumoconiosis does not lead to respiratory disability through a reduction of the diffusion capacity. Rather, the diffusion capacity is either within normal limits or slightly reduced. When there is a reduction, it is seen almost entirely in miners with the p type of radiographic opacity.

Thus, Dr. Jarboe concluded that the degree of reduction of the diffusion capacity in this case was not indicative of coal workers pneumoconiosis. Considering all of the findings, the most likely cause was idiopathic pulmonary fibrosis.

According to Dr. Jarboe, another finding indicating that Mr. Mullins did not have clinical or legal pneumoconiosis was his clinical course. He cited to an article by Dr. Cohen, noting that the occupational form of diffuse fibrosis has a much more benign clinical course than idiopathic pulmonary fibrosis. Mr. Mullins' clinical course progressed rapidly, not characteristic of interstitial disease caused by coal workers pneumoconiosis.

Dr. Jarboe testified by deposition on April 11, 2013 (EX 3). He stated that after his review of the medical information he was provided, he concluded that Mr. Mullins did not have any disease or condition significantly aggravated by or contributed to by the inhalation of coal dust. Despite the fact that there were several positive x-ray interpretations, when it was coupled with the clinical findings, it was not indicative of coal workers pneumoconiosis. Dr. Jarboe stated that Mr. Mullins' x-ray was distinctly abnormal, with a lot of irregular opacities in all zones, but especially in the mid and lower zones. But given the overall findings, with intense bibasilar crackles and his clinical course, they indicate that the cause of the abnormalities is not coal dust, but another etiology.

In Dr. Jarboe's opinion, the etiology of the abnormalities was idiopathic pulmonary fibrosis. He also thought it was very possible that some of the x-ray changes might have been due to congestive heart failure. Mr. Mullins had a rapid increase in the size of his heart; there were symptoms compatible with ischemic heart disease. Although that may have been a contributor, the primary cause by far of the x-ray abnormality was idiopathic pulmonary fibrosis.

Dr. Jarboe noted that there were several pulmonary function studies that showed an FEV1/FVC ratio above 70 percent. He felt that the overall pulmonary function study evidence did not indicate the presence of an obstructive ventilatory defect. He felt that the lung volume results tended to confirm the spirometric findings of "fairly pure" restrictive disease.

Dr. Jarboe stated that Mr. Mullins was very overweight, which would reduce his forced vital capacity. He felt that the predominant cause of Mr. Mullins' reduced forced vital capacity was his idiopathic fibrosis, with his obesity contributing as well. Dr. Jarboe noted that Mr. Mullins' arterial blood gas studies showed a very rapid falloff in oxygenation; when Dr. Forehand examined him, he had a profound drop in oxygen tension with exercise. According to Dr. Jarboe, these findings are characteristic of idiopathic fibrosis. He noted that coal dust

- 14 -

induced lung disease tends to have a much more indolent and slow course than that of idiopathic fibrosis.

According to Dr. Jarboe, the cause of idiopathic fibrosis is not clear, and there is no effective treatment. It is basically an inflammatory reaction in the lung tissues, with formation of fibrous tissue, which causes severely impaired function. It causes severe stiffening of the lung and contraction of the lung volume. It is predominant in males, and in persons who are older, in their 60s and 70s.

Dr. Jarboe pointed to Mr. Mullins' insidious onset of shortness of breath, with very severe dyspnea. The abnormalities on x-ray were more consistent with idiopathic fibrosis than coal workers disease. Mr. Mullins' desaturation with exercise was characteristic of idiopathic fibrosis, but not coal workers pneumoconiosis. There were intense rales or crackles at the lung bases, which are not at all characteristic of coal workers disease. The most telling factor was Mr. Mullins' clinical course, which was a rapid deterioration in function, characteristic of idiopathic fibrosis but not coal workers pneumoconiosis.

Dr. Jarboe acknowledged that the inhalation of coal dust can cause interstitial fibrosis. But idiopathic pulmonary fibrosis is a specific pathological and clinical entity that is not due to coal workers pneumoconiosis. He stated that there are studies showing that based on autopsy, as high as 15 to 18 percent of coal miners will have some fibrosis in their lungs, but he does not call that idiopathic pulmonary fibrosis.

Dr. Jarboe thought there was good evidence that Mr. Mullins' congestive heart failure, on top of his idiopathic fibrosis, severely impaired his function and worsened his impairment. In just over a year, his heart became massively enlarged, and there was no question that it must have contributed to his death.

According to Dr. Jarboe, Mr. Mullins was disabled from performing his previous coal mine work, but Dr. Jarboe could rule out his inhalation of coal dust as a cause of his pulmonary disability. He stated that if coal dust were a significant contributing factor to Mr. Mullins' impairment or disability, he did not think there would have been the characteristic intense crackles at the lung bases, the severe impairment of diffusion, and the severe drop in oxygen tension with exercise. Dr. Jarboe stated that coal miners can have minor impairment of oxygen transfer and diffusion, but it is mild, and would not nearly approach what was seen with Mr. Mullins.

Dr. Jarboe thought the primary cause of Mr. Mullins' death was idiopathic pulmonary fibrosis, and that congestive heart failure also contributed to his death.

According to Dr. Jarboe, simple pneumoconiosis usually does not have any significant effect on spirometric measurements or diffusion capacity. There is not normally a disabling impairment or significant reduction in diffusion from simple pneumoconiosis. Even if Mr. Mullins had simple pneumoconiosis, it would not have caused the severe reduction in diffusion capacity, the impaired oxygen transfer with exercise, and his rapid deterioration and death. It

- 15 -

J.A. 38

does not explain his clinical picture. He concluded that the inhalation of coal mine dust did not have any material adverse effect on Mr. Mullins' pulmonary well-being.

Dr. Jarboe prepared a report dated June 2, 2013 after reviewing additional medical evidence (EX 9). He concluded that the medical evidence did not support a diagnosis of either clinical or legal pneumoconiosis. He acknowledged that Mr. Mullins had a very abnormal chest x-ray, but considering all of the evidence, he did not think that the x-ray indicated coal workers pneumoconiosis. Instead, it showed the classical changes of usual interstitial pneumonitis or idiopathic pulmonary fibrosis. According to Dr. Jarboe, the x-ray is "quite characteristic" of this condition – it shows predominantly irregular opacities, most intense in the mid and lower lung zones.

Dr. Jarboe noted that there were references to two CT scans. He did not have the official readings,[10] but the notes from Dr. Smiddy's office indicated that they showed changes of interstitial pulmonary fibrosis; there was no mention of any micronodular changes that would indicate evidence of coal workers pneumoconiosis. Dr. Jarboe stated that interstitial fibrosis can be seen in coal miners, but features in Mr. Mullins' case allowed distinction as to the cause of his abnormal x-ray. First, he had intense basilar crackles, which are not a feature of coal workers pneumoconiosis; they are commonly found in idiopathic pulmonary fibrosis. He cited to Occupational Lung Diseases. Dr. Jarboe felt that the explanation for the crackles was idiopathic pulmonary fibrosis. He also noted that Mr. Mullins developed severe chronic congestive heart failure, which will cause basilar crackles.

According to Dr. Jarboe, the records also confirmed that Mr. Mullins had a severely reduced diffusion capacity, which is not characteristic of simple pneumoconiosis.[11] Nor was his clinical course consistent with clinical or legal pneumoconiosis. He cited to an article by Dr. Cohen, stating that the occupational form of diffuse fibrosis has a much more benign clinical course than idiopathic pulmonary fibrosis. Mr. Mullins' clinical course progressed rapidly, which is not characteristic of interstitial disease caused by coal workers pneumoconiosis.

Mr. Mullins' current records confirmed his rapidly deteriorating course, including a rapidly progressive and severe deterioration of oxygen tension, associated with a rapid increase in pulmonary artery hypertension. This all transpired over less than two years, a course characteristic for persons with usual interstitial pneumonia, or idiopathic interstitial fibrosis. But coal workers pneumoconiosis has a much slower progression.

Dr. Jarboe felt that the additional records confirmed that Mr. Mullins had ischemic heart disease, manifested by severe cardiomegaly and congestive heart failure, which contributed to his impairment and disability. His repeated admissions to the hospital were the result of a combination of severe idiopathic fibrosis and congestive heart failure.

---

[10] Apparently, although the Employer obtained these readings from the hospital, the Employer did not provide them to Dr. Jarboe.

[11] In fact, of the numerous studies reflected in Mr. Mullins' treatment records, only one, reported by Dr. Smiddy on September 4, 2009, included findings of a reduced diffusion capacity (36%). Dr. Fino also reported a reduced diffusion capacity on his study.

- 16 -

Dr. Jarboe stated that there was no question that Mr. Mullins was totally and permanently disabled from a pulmonary standpoint. He had a totally disabling gas exchange impairment, which worsened progressively over the last 18 months of his life. He felt that the progressive hypoxemia and eventual carbon dioxide retention was the result of a combination of idiopathic pulmonary fibrosis and congestive heart failure, unrelated to the inhalation of coal mine dust or coal workers pneumoconiosis.

Dr. Jarboe concluded that Mr. Mullins' death was not caused by, hastened by, or contributed to by coal workers pneumoconiosis; the medical evidence did not support a finding of clinical or legal coal workers pneumoconiosis. The available spirometric evidence did not show a ventilatory impairment, restriction or obstruction, which resulted from his coal mine employment. He noted that Dr. Smiddy's studies were completely within normal limits. Dr. Jarboe's post bronchodilator spirogram also showed no evidence of restriction or obstruction. As Mr. Mullins' fibrosis and congestive heart failure progressed, he developed some evidence of a restrictive ventilatory defect. But despite repeated references to COPD, and even end-stage COPD, the objective evidence did not confirm that Mr. Mullins had chronic airflow obstruction; the FEV1% was either normal or near normal in every spirogram. In Dr. Jarboe's opinion, the evidence did not support clinical or legal pneumoconiosis, and thus these conditions could not have been a factor in his death.

Dr. Jarboe concluded that Mr. Mullins' death was caused by a combination of idiopathic pulmonary fibrosis and chronic congestive heart failure, which caused marked impairment of gas exchange. The immediate cause of his death appeared to have been a pneumonia caused by methicillin resistant staphylococcus aureus with septicemia. He made some recovery from this acute infection, but died a short time after. In Dr. Jarboe's opinion, Mr. Mullins would have died at the same time and of the same cause that he did whether he ever worked as a coal miner.

Dr. Jarboe stated that Mr. Mullins had a disabling gas exchange impairment, caused by a combination of idiopathic pulmonary fibrosis and chronic congestive heart failure. It was in no way related to the inhalation of coal mine dust or coal workers pneumoconiosis. He stated that Mr. Mullins did not have any pulmonary disability that arose from his occupation as a coal miner.

*Dr. Gregory J. Fino*

Dr. Fino examined Mr. Mullins on August 18, 2010 at the Employer's request (DX 44). He reported Mr. Mullins' occupational history, as well as his family and medical history and symptoms. On his examination of Mr. Mullins, Dr. Fino noted rales at the left lung base. Dr. Fino reviewed the x-ray, which he concluded showed massive cardiomegaly, and an interstitial pattern in all six lung zones. It was more profuse in the middle and lower lung zones than in the upper lung zones. He stated that he could not completely rule in or out "diagnoses" with reasonable certainty based on the x-ray. He classified the film as 1/2, t, s, in six zones. Dr. Fino subsequently reviewed an x-ray done on November 19, 2009. He stated that it was important for him to review this x-ray, to see if the interstitial pattern was new as of the date of his examination, which made the abnormalities more likely due to congestive heart failure. In comparison, the new film also showed massive cardiomegaly, and the interstitial abnormality,

- 17 -

which may have gotten a little worse. He stated that this still could be congestive heart failure, but the irregular opacities and change over time made it very unlikely to be simple coal workers pneumoconiosis.

Mr. Mullins' FVC and FEV1 were both reduced, but the ratio was normal. The lung volumes and diffusing capacity were reduced. Mr. Mullins was on oxygen, and did not do an exercise test. His resting arterial blood gas produced a pO2 of 46.

Dr. Fino also reviewed additional medical records. His diagnosis was "abnormal chest x-ray." According to Dr. Fino, Mr. Mullins is clearly disabled; he has severe oxygen transfer problems, and a reduced diffusing capacity. He stated that, generally speaking, the diffusing capacity is increased with congestive heart failure. Thus, although he could not rule out congestive heart failure, that diagnosis would be lower on his list than a diffuse interstitial pulmonary condition.

Dr. Fino stated that his finding of only irregular opacities made it very unlikely that it was due to simple pneumoconiosis. He noted that the inhalation of coal mine dusts such as silica and coal may cause an abnormality to appear on x-ray; these abnormalities are rounded opacities, p, q, and r, and involve a particular location of the lung, the first being the upper portion of the right lung. In descending order, they involve the left upper zone, the two middle zones, and finally the two lower zones. According to Dr. Fino, the ILO classification system categorizes all types of conditions that may be consistent with a pneumoconiosis; it is not specific to coal workers pneumoconiosis. Some non-coal dust related pneumoconiosis may cause only irregular opacities, but the presence of only irregular opacities, in the absence of rounded opacities, is inconsistent with a diagnosis of coal workers pneumoconiosis. In addition, he stated that opacities found only in the lower lung zones do not indicate a coal dust related lung condition.

Dr. Fino stated that other factors made it unlikely that Mr. Mullins' condition was related to coal mine dust. He agreed with Dr. Jarboe, that the marked reduction in diffusing capacity would be very unusual in coal workers pneumoconiosis, and noted that Dr. Jarboe cited to the same articles he reviewed. In Dr. Fino's experience, there can be mild to moderate reductions in the diffusing capacity with coal workers pneumoconiosis, but not to the extent seen with Mr. Mullins. The fact that the x-ray worsened in 9 months also argued strongly against simple coal workers pneumoconiosis, which would not be expected to progress so quickly. But idiopathic pulmonary fibrosis can progress quickly.

Dr. Fino speculated that the worsening x-ray could also just be due to worsening heart failure. But he did not believe that it was due to coal mine dust. He stated that idiopathic pulmonary fibrosis is a diagnosis made when there is diffuse interstitial fibrosis without a definite etiology. It is a common diagnosis, and not caused by inhalation of coal mine dust.

Dr. Fino claimed that it was possible to determine if diffuse interstitial pulmonary fibrosis was related to the inhalation of coal mine dust, or was idiopathic and unrelated to coal dust inhalation. He cited to several articles and studies that he claimed did not show a cause and effect relationship between coal workers pneumoconiosis and idiopathic interstitial pulmonary fibrosis. Dr. Fino stated that the "bottom-line" with respect to one of these studies was that there

was no pathological evidence that the irregular opacities found were indeed coal workers pneumoconiosis. He noted that the findings were no different than those in non-miners; about 20% of them have irregular opacities. Dr. Fino cited to other articles, which he claimed showed no clear cut association between coal mine dust and interstitial pulmonary fibrosis.

Dr. Fino relied on the article by Dr. Churg and Dr. Green, who stated that interstitial pulmonary fibrosis in coal miners has a relatively benign clinical course, compared with the general population. Pathologically, the pigmented, or anthracotic, forms of fibrosis were more likely to be associated with severe pneumoconiosis, and they thought it was reasonable to consider this type of interstitial fibrosis to be caused by exposure to coal mine dust. Dr. Fino agreed, and thought that if there were clear cut evidence of classical pneumoconiosis, either radiographically or pathologically, associated with the diffuse interstitial pulmonary fibrosis, it was reasonable to assume that the two were connected. But Dr. Churg and Dr. Green stated that the non-pigmented fibrosis had an unclear pathogenesis; they did not state that there was a cause and effect relationship, but commented that it was possible that exposure to coal mine dust modified immune and fibrogenic responses in a susceptible population. Or, coal mine dust inhalation is not causing the pulmonary fibrosis but is modifying it, which was well documented by the observation that the course of pulmonary fibrosis in coal miners was much less severe than in non-coal miners.

Dr. Fino concluded that Mr. Mullins had either significant congestive heart failure or idiopathic pulmonary fibrosis. His severe oxygen transfer impairment was due to one of these two diagnoses, but not to his coal mine dust inhalation. He "tended" to agree with Dr. Jarboe that it was more likely idiopathic pulmonary fibrosis, but he could not ignore the massive cardiomegaly and the possibility of congestive heart failure. But he stated that Mr. Mullins would be as disabled even if he never stepped foot in the coal mines.

_Dr. David Rosenberg_

Dr. Rosenberg reviewed medical evidence at the Employer's request and prepared a report dated March 18, 2013 (EX 1). He noted that there were different opinions about the type of parenchymal abnormalities apparent on Mr. Mullins' x-ray. According to Dr. Rosenberg, when coal mine dust exposure causes x-ray abnormalities, it is as p, q, or r opacities, primarily in the upper lung zones.[12] As they progress, they can involve all lung zones, with large opacity formation, a condition termed progressive massive fibrosis. With respect to Mr. Mullins, although there was debate about the character of his parenchymal abnormalities, he clearly had restriction and an oxygenation defect, associated with the persistent presence of rales. Dr. Rosenberg felt that the finding of rales was helpful in determining the etiology of Mr. Mullins' pulmonary condition, because they are not associated with coal workers pneumoconiosis. Rather, they are clearly associated with a variety of fibrotic lung disorders unrelated to past coal mine dust exposure. Dr. Rosenberg felt that the presence of rales supported the B reading interpretations of outlying linear parenchymal fibrotic changes as opposed to micronodularity. He concluded that Mr. Mullins did not have clinical coal workers pneumoconiosis.

---

[12] Dr. Alexander reported p type opacities in six zones; Dr. Forehand reported p type opacities in six zones; Dr. Miller reported q opacities in six zones; and Dr. Fino reported p and q opacities in six zones.

- 19 -

According to Dr. Rosenberg, there are more than 200 different types of interstitial lung disease, many of which cause the development of linear scarring. Specific etiologies include arthritis, medications, sarcoidosis, eosinophilic granuloma, smoking, and age. He also stated that the American Thoracic Society has outlined a classification of a grouping of idiopathic pneumonias that cause linear interstitial scarring, including idiopathic pulmonary fibrosis, and its correlate usual interstitial pneumonitis. Dr. Rosenberg stated that although various medical references purport to show that linear interstitial lung disease occurs in relationship to coal mine dust exposure, the studies did not control for these disorders known to cause interstitial scarring, and thus they do not objectively support the conclusion that coal mine dust exposure causes this type of abnormality. He discussed several studies which he felt did not establish a causal relationship between coal mine dust exposure and the development of interstitial fibrosis.[13]

Dr. Rosenberg concluded that Mr. Mullins' "likely" linear interstitial scarring did not represent a condition related to past coal mine dust exposure, but represented a condition such as idiopathic pulmonary fibrosis or usual interstitial pneumonitis. This condition is causing his reduced lung volumes, rales, and gas exchange abnormalities. Any cough or sputum production Mr. Mullins had would not be related to past coal mine dust exposure, which ceased decades earlier.

According to Dr. Rosenberg, Mr. Mullins did not have clinical or legal pneumoconiosis. He was disabled from a pulmonary perspective, but it did not relate to past coal mine exposure; it related to linear interstitial lung disease, such as idiopathic pulmonary fibrosis, a condition of the general public. Dr. Rosenberg asked that, if CT scans had been done, they be forwarded to him for review.

Dr. Rosenberg testified by deposition on April 12, 2013 (EX 4).[14] He stated that Mr. Mullins did not have COPD. His spirometric studies showed deterioration over about a year or so, predominantly restriction. There may have been a mild obstructive component. Mr. Mullins developed severe restriction over a short time frame, during which his oxygenation worsened.

Dr. Rosenberg described idiopathic pulmonary fibrosis as disorders that are characterized by predominantly linear as opposed to nodular changes, tending to have a lower lung zone predominance. It is generally progressive over a short time frame, and is associated with worsening restriction and oxygenation abnormalities. It is not related to occupational exposures. It is referred to as idiopathic, because research has not determined the exact etiology.

According to Dr. Rosenberg, the predominant symptom is shortness of breath, which is progressive over time. A cough is not uncommon, but it is usually dry. Findings of crackles or rales are characteristic of this disorder, as opposed to coal workers pneumoconiosis. Dr. Rosenberg stated that a finding of crackles is generally not considered related to pneumoconiosis, but they are very common in IPF or UIP.

---

[13] However, Dr. Rosenberg was willing to credit one of those studies to conclude that if Mr. Mullins has chronic linear changes, they are related to his cigarette smoking, not his coal dust exposure.
[14] Although Dr. Rosenberg specifically requested that any CT scans be forwarded for his review, Mr. Mullins' CT scans apparently were not provided to him.

Appeal: 15-1656    Doc: 19    Filed: 08/21/2015    Pg: 48 of 180

Dr. Rosenberg identified the risk factors as smoking, increasing age, and being male. He noted that rales or crackles were heard in all of the examinations of Mr. Mullins. From July 2009 to August 2010 his FVC and spirometric values deteriorated markedly, and his lung volume measurements decreased to 43% of predicted. He was developing moderate to severe restriction over a short time frame. He also developed worsening oxygenation.

Dr. Rosenberg noted that many of the x-ray readers reported a lower lobe predominance with a linear characteristic. He felt that the "whole clinical course" looked like IPF. He noted that Mr. Mullins died less than a year after Dr. Fino's evaluation. Dr. Rosenberg felt that there was no question this was more consistent with idiopathic pulmonary fibrosis rather than coal workers pneumoconiosis. He acknowledged that coal workers pneumoconiosis "obviously" can cause the interstitial lung disorder, but it progresses over many years, not a short time frame. It would not be associated with rapidly progressive restriction over a year or so. In addition, the marked deterioration of the oxygenation, and the presence of crackles or rales supports an interstitial disease of the IPF variety, and not CWP.

Dr. Rosenberg stated that Mr. Mullins had a totally disabling respiratory or pulmonary impairment. He felt that coal dust could be ruled out as a cause, based on the overall total picture: the markedly progressive restriction over a short time frame, the persistent crackles, the worsening oxygenation over a short time frame, and the lower lobe predominance in the findings of what looked like IPF on x-ray. He felt that the "whole picture" ruled out CWP as a contributing factor.

Dr. Rosenberg acknowledged that some of the x-ray readers outlined changes they felt were related to pneumoconiosis, but he thought that they made the assumption that because there were interstitial changes, there was coal workers pneumoconiosis. But looking at the character of the changes, and the predominance in the lower lung zones, he felt there were not findings of coal workers pneumoconiosis. He noted that Dr. Jarboe reported interstitial changes, but rated the x-ray as negative, because the findings were classic for IPF. Dr. Fino found no micronodular changes, and Dr. Alexander outlined primarily s changes.[15]

According to Dr. Rosenberg, Mr. Mullins' primary lung disease had a linear characteristic; he did not think the secondary p changes "really" implied the presence of a "CWP picture."

Dr. Rosenberg stated that idiopathic pulmonary fibrosis clearly was the cause of Mr. Mullins' death. He stated that, assuming that Mr. Mullins died a respiratory death, the total picture supported an IPF disorder, not CWP. Mr. Mullins' rapid change over a short period, and his ultimate death, were consistent with the clinical course of IPF. The inhalation of coal mine dust did not have a material adverse effect on Mr. Mullins' pulmonary well-being. His opinions would not change even if the administrative law judge were to conclude that Mr. Mullins had simple coal workers pneumoconiosis.

*Dr. Bernie N. Sergent*

---

[15] However, on reviewing the April 24, 2009 x-ray, which he read on June 25, 2013, Dr. Alexander reported predominantly p opacities.

- 21 -

J.A. 44

Dr. Sergent, Mr. Mullins' treating physician, wrote a letter dated October 31, 2011 (CX 2). He stated that Mr. Mullins died suddenly on May 12, 2011. Dr. Sergent noted that Mr. Mullins worked in the mining industry for more than 30 years, as a coal shoveler underground, and also working above ground running heavy equipment, including a dozer. Mr. Mullins had a smoking history – he smoked inconsistently for a number of years, but quit in 1997.

According to Dr. Sergent, Mr. Mullins' coal workers pneumoconiosis was well documented. He had massive pulmonary fibrosis in association with coal workers pneumoconiosis. During the previous 3 ½ years, Mr. Mullins developed progressive shortness of air. He was also treated by Dr. Joshi, a cardiologist; he had cor pulmonale and right sided heart failure, and pulmonary hypertension associated with his severe lung disease. For the last six months of his life, Mr. Mullins had very high oxygen requirements, and was in and out of the hospital. For the last several weeks, he was so short of breath that very simple movements were terribly difficult. Mr. Mullins became wheelchair bound, and eventually required ambulance transport to and from hospital and clinic visits.

Dr. Sergent stated that multiple imaging studies, including x-ray and CT scan, documented changes consistent with coal workers pneumoconiosis and the fibrosis associated with it. Mr. Mullins had very little air movement on examination, and suffered from diffuse rhonchi and wheezing, consistent with his lung disease. Toward the end of his life, to maintain adequate oxygenation, Mr. Mullins required a nonrebreather. Dr. Sergent felt that the majority of Mr. Mullins' cardiac issues were in association with his severe lung disease, which led to his demise.

Dr. Sergent completed Mr. Mullins' death certificate, reporting that the immediate cause of his death was coal workers pneumoconiosis, due to pulmonary fibrosis, and right sided heart failure. Other significant conditions contributing to his death were diastolic dysfunction and MRSA septicemia.

Dr. Sergent testified by deposition on May 20, 2013 (EX 13).[16] He discussed Mr. Mullins' October 13, 2010 hospital admission. He agreed with Employer's counsel that Mr. Mullins had a progressive deterioration between January and May 2011, noting that he was at the end stage of his coal workers pneumoconiosis, so that his rapid deterioration would be consistent with coal workers pneumoconiosis. Dr. Sergent stated that Mr. Mullins' pulmonary issues were his most significant issues. Dr. Sergent agreed with counsel that idiopathic pulmonary fibrosis is a progressive and generally fatal disease, which causes scarring of the lungs and an irreversible loss of the ability to transport oxygen; it generally robs a person of the ability to breathe. He agreed that Mr. Mullins was a male over sixty years of age, who smoked in the past, and had shortness of breath, which is one of the symptoms of idiopathic pulmonary fibrosis. He agreed that Mr. Mullins worsened significantly over the six months that he treated him, but not by x-ray.

Dr. Sergent agreed with counsel that one of the objective findings for idiopathic pulmonary fibrosis is rales; but he stated that coal workers pneumoconiosis, which causes

---

[16] Dr. Sergent specifically stated that he would like the opportunity to review his deposition transcript. However, there is nothing in the record to indicate that Dr. Sergent was provided with the opportunity to do so.

- 22 -

fibrotic changes as well, can sometimes sound similar. He stated that he found rales and crackles with Mr. Mullins. Mr. Mullins also had cor pulmonale, or right sided heart disease, which is a product of diseased lungs from whatever the cause. He also developed sepsis, and MRSA.

Dr. Sergent noted that he did not diagnose coal workers pneumoconiosis, but it was reported as part of his history, and also by his pulmonologist. He stated that Mr. Mullins had pulmonary issues, including coal workers pneumoconiosis, COPD, and cor pulmonale, which eventually led to his demise. Dr. Sergent did not know specifically if Mr. Mullins had a lung biopsy, but reviewing the records from his pulmonologist, and multiple imaging studies, including CT scans and x-rays, Dr. Sergent thought that Mr. Mullins certainly had fibrotic changes. But Dr. Sergent stated that he could not say specifically "what was the culprit."

_Dr. Joseph F. Smiddy_

Mr. Mullins saw Dr. Smiddy on referral by Dr. Joshi. His treatment notes cover the period from September 2009 to March 2011 (CX 3). On September 4, 2009, Dr. Smiddy reported to Dr. Joshi that Mr. Mullins' x-ray showed severe interstitial lung disease with upper lobe predominance, which could be related to pneumoconiosis. He had a rather profound impairment to his transfer factor, consistent with his severe oxygen drop with exertion. Dr. Smiddy's diagnosis was coal workers pneumoconiosis, interstitial lung disease, and hypoxia. He noted that the x-rays showed a rather unusual dilatation to what appeared to be the trachea, with a possible stenotic area below, raising a question of a tracheal anomaly or narrowing, and possible airway constriction or anatomic alteration. Dr. Smiddy reported that Mr. Mullins was placed on oxygen. He planned to obtain a CT scan and other tests.

Dr. Smiddy saw Mr. Mullins on September 18, 2009, and noted that a September 10 CT scan showed extensive interstitial lung disease likely related to interstitial usual pneumonitis or interstitial pulmonary fibrosis. His diagnosis was coal workers pneumoconiosis, interstitial lung disease, and hypoxia.

Janice Ewing, nurse practitioner, saw Mr. Mullins on March 18, 2010, and noted that he had wheezes in all lung fields; she did not hear any crackles or rhonchi. Her impression was severe hypoxia secondary to interstitial lung disease; coal workers pneumoconiosis; and COPD. She increased his oxygen, and prescribed Spiriva, a Ventolin inhaler, and prednisone.

Ms. Ewing saw Mr. Mullins on May 12, 2010, after he was released from the hospital for treatment of pneumonia. She noted that Dr. Shah performed a bronchoscopy, which showed chronic inflammation bilaterally, and tracheobronchomalacia bilaterally. The bronchial washing was negative for malignancy. Ms. Ewing noted that there were bibasilar crackles consistent with Mr. Mullins' interstitial lung disease; his breath sounds were diminished in all fields, with no wheezes. Ms. Ewing noted that a CT scan done on April 28, 2010 showed no significant change from the September 2009 CT scan. Mr. Mullins had extensive interstitial lung disease, with no evidence of any superimposed consolidation. She felt that the findings were most likely related to usual interstitial pneumonitis/interstitial pulmonary fibrosis.

- 23 -

J.A. 46

Ms. Ewing's impression was severe hypoxia with exercise; COPD; coal workers pneumoconiosis; severe extensive interstitial lung disease; chronic respiratory failure; and evidence of mild pulmonary hypertension on echocardiogram. She increased his oxygen.

Ms. Ewing saw Mr. Mullins on July 12, 2010, and noted that he had bibasilar crackles consistent with his interstitial lung disease; she heard no wheezes. An arterial blood gas study showed a pH of 7.44, pCO2 of 44, and pO2 of 69. The x-ray, reviewed by Dr. Smiddy, showed chronic changes, with slight improvement since the April x-ray. Her impression was severe hypoxia with exercise; severe extensive interstitial lung disease; coal workers pneumoconiosis; chronic respiratory failure, and mild pulmonary hypertension per echocardiogram. She increased his oxygen, and noted that, because of his age and complex medical problems, he was not a candidate for a lung transplant. Dr. Smiddy also recommended that Mr. Mullins continue prednisone.

Dr. Smiddy read an x-ray performed on July 12, 2010, and reported five lobe interstitial disease, and cardiomegaly. He thought the infiltrates looked slightly better after the use of prednisone. There was no acute or new process. His differential diagnosis remained the same; he noted that Mr. Mullins had an element of pneumoconiosis and old granulomas.

Ms. Ewing saw Mr. Mullins on September 14, 2010, and noted that he had end stage COPD, coal workers pneumoconiosis, and interstitial lung disease, as well as mild pulmonary hypertension. He had very diminished breath sounds in all fields, with no wheezes or crackles. Her impression was coal workers pneumoconiosis; end stage COPD with severe hypoxemia; interstitial lung disease; and mild pulmonary hypertension.

Dr. Smiddy saw Mr. Mullins on November 16, 2010, and noted that he had congestive heart failure, COPD, and hypoxia, with profound O2 desaturation. He also reviewed outside records. An x-ray showed five lobe interstitial disease change, cardiomegaly, known coal workers pneumoconiosis, and mediastinal widening. His diagnoses were coal workers pneumoconiosis, interstitial lung disease, hypoxia, and history of tracheal stenosis.

Ms. Ewing saw Mr. Mullins on March 16, 2011, after he was treated at the Norton hospital. Mr. Mullins had diffuse crackles, worse in the bases, and scattered wheezes. An arterial blood gas study showed a pH of 7.45, a pCO2 of 48, and a pO2 of 83. His impression was coal workers pneumoconiosis, end stage COPD with severe hypoxemia and chronic respiratory failure; interstitial lung disease; congestive heart failure; and mild pulmonary hypertension.

### Norton Community Hospital

The exhibit file includes records from the Norton Community Hospital (CX 4). Mr. Mullins was admitted on October 13, 2010 for shortness of breath. Dr. Sergent noted that he had bibasilar crackles in his lungs, with no wheezes. He assessed him with acute exacerbation of COPD, and admitted him for treatment.

- 24 -

An x-ray done on October 13, 2010 was reviewed by Dr. Joshua Crum, who reported that the cardiac size was enlarged. He again saw a diffuse interstitial nodular pattern, including a nonspecific apical density. He also reported pulmonary vascular congestion. His impression was diffuse interstitial lung disease redemonstrated, and apparent worsening/aeration/increased marking including the right upper and lower lungs compared to a previous exam.

Mr. Mullins underwent an echocardiogram on October 13, 2010, which showed normal ejection fraction; mild concentric left ventricular hypertrophy; diastolic dysfunction; trace mitral regurgitation; mild tricuspid regurgitation; moderate pulmonary hypertension; mildly enlarged right ventricle; mild pulmonary regurgitation; trivial posterior pericardial effusion; and mildly dilated pulmonary artery.

Dr. Sergent prepared Mr. Mullins' discharge summary, and noted diagnoses of acute exacerbation of chronic obstructive pulmonary disease; chest pain, rule out myocardial infarction; diabetes mellitus type 2; hyperlipidemia; and hypertension.

Dr. Srikumar Gopalan reviewed an x-ray performed on March 6, 2009, and reported diffuse interstitial changes in both lungs involving the upper mid and lower lung zones, suggestive of interstitial fibrosis.

Mr. Mullins was admitted on January 24, 2011 for complaints of shortness of breath. Dr. Sergent noted that there were crackles in the bilateral bases, and diminished air exchange. He was admitted for acute exacerbation of congestive heart failure and COPD, and questionable pneumonia.

An arterial blood gas study done on January 25, 2011 showed a $CO_2$ of 51.5, and a $pO_2$ of 89. A study done on January 24, 2011 showed a $pO_2$ of 45.2, and a $pCO_2$ of 45.8.

Dr. Crum read an x-ray done on January 27, 2011, and reported that it was abnormal, with findings of pulmonary vascular congestion and bilateral airspace opacities, and a right suprahilar opacity, without evidence of improvement.

Dr. Crum read an x-ray done on January 25, 2011, and reported that it was abnormal, with enlargement of the cardiac silhouette, pulmonary vascular congestion, and extensive bilateral airspace process, without evidence of improvement.

Dr. Crum read a second x-ray done on January 25, 2011, and reported that it was persistently abnormal, without evidence of significant improvement.

Dr. Crum read an x-ray performed on January 24, 2011, and noted that it showed an enlarged cardiac size, and significant worsening since a previous x-ray, with pulmonary vascular congestion and extensive bilateral airspace processes. There was apparent consolidation in the right upper lung.

Dr. Sergent prepared the discharge report on January 30, 2011, with discharge diagnoses of health care associated pneumonia; diastolic CHF; acute exacerbation of COPD; leukocytosis;

- 25 -

chronic kidney disease; obesity; diabetes; debility; gastroesophageal reflux disease; and hyperlipidemia.

Mr. Mullins was admitted on March 5, 2011 for complaints of shortness of breath. Dr. Sergent reported positive rhonchi bilaterally, worse at the bases, and no wheezes. He was admitted for acute exacerbation of COPD.

An arterial blood gas study done on March 6, 2011 showed a pCO2 of 51, and a pO2 of 70.7. A study done on March 7, 2011 showed a pCO2 of 56.2, and a pO2 of 131.7.

Dr. Thomas Haines read an x-ray performed on March 8, 2011, and reported an enlarged heart, and diffuses pleural-parenchymal changes bilaterally without improvement.

Dr. Haines reviewed an x-ray performed on March 7, 2011, and reported an enlarged heart, and diffuse increased parenchymal density and central vascular congestion throughout both lungs, and likely small effusions in the bases. He felt the changes were most likely due to heart failure and pulmonary edema, with differential considerations including noncardiogenic pulmonary edema and diffuse inflammatory etiology.

Dr. Crum read a March 6, 2011 x-ray, and reported that it was abnormal, with vascular congestion, bilateral airspace opacities, enlargement of the cardiac silhouette, and right suprahilar opacity. There was apparent worsening of the aeration in the right upper lung.

Dr. Crum read a second x-ray done on March 6, 2011, and reported the same changes.

Dr. Sergent prepared the discharge summary on March 9, 2011, reporting diagnoses of acute exacerbation of CHF; leukocytosis; chronic renal insufficiency; COPD; diabetes; hyperlipidemia; hypertension; GERD; and constipation.

Mr. Mullins was admitted on March 21, 2011 with complaints of increasing shortness of breath and weight gain. Dr. Sergent noted that his lungs had positive rhonchi and rales, and diffuse expiratory wheezing throughout. He was discharged on March 24, 2011, and Dr. Sergent noted diagnoses of congestive heart failure, acute exacerbation of COPD, and severe pulmonary hypertension.

An arterial blood gas study performed on March 22, 2011 showed a pCO2 of 49.7, and a pO2 of 61.7. A study done on March 21, 2011 showed a pCO2 of 44.3, and a pO2 of 46.1.

Dr. Gopalan read an x-ray done on March 24, 2011, and reported a markedly enlarged cardiac size, and changes of pulmonary edema. There was a density in the right upper lobe, which could be due to superimposed infiltrates or a mass lesion. His impression was moderate to marked cardiomegaly; pulmonary edema; diffuse interstitial changes in both lungs; and a density in the right upper lobe.

Dr. Gopalan read an x-ray done on March 23, 2011, and noted a moderately enlarged cardiac size, with pulmonary edema, and possible superimposed infiltrates in the right upper lobe and left base. His impression was cardiomegaly with pulmonary edema.

Dr. Gopalan read an x-ray performed on March 22, 2011, and noted enlarged cardiac size, and no pulmonary edema. There was a right pleural effusion. His impression was cardiomegaly with interstitial and alveolar pulmonary edema.

Dr. Gopalan read an x-ray done on March 21, 2011, and reported enlarged cardiac size, and changes of pulmonary edema, with more prominent markings in the right upper lobe. His impression was cardiomegaly with superimposed chronic interstitial changes. His impression was cardiomegaly with pulmonary edema, and possible superimposed pneumonic infiltrates in the right upper lobe.

Mr. Mullins was admitted on April 4, 2011 for complaints of shortness of breath and weight gain. Dr. Gale Jackson reported that he had coarse breath sounds throughout his lungs. An arterial blood gas study done on April 3, 2011 showed a $pCO2$ of 51.2, and a $pO2$ of 68.3. Dr. Crum reported that an x-ray done on April 4, 2011 showed an enlarged cardiac size, and diffuse pleural/parenchymal change in the lungs bilaterally with pulmonary vascular congestion.

Dr. Crum read an x-ray done on April 4, 2011, with similar findings.

Dr. Crum read an April 3, 2011 x-ray, and reported enlarged cardiac size, pulmonary vascular congestion slightly worse, and a right suprahilar upper lung density with diffuse bilateral pleural parenchymal changes.

Dr. Jackson prepared the discharge summary on April 5, 2011, with discharge diagnoses of acute exacerbation of chronic obstructive pulmonary disease and congestive heart failure.

Mr. Mullins was admitted on April 15, 2011 and discharged with diagnoses of acute exacerbation of COPD, diastolic congestive heart failure, UTI, chronic kidney disease, hyponatremia, hypertension, diabetes mellitus, chest pain, and gastroesophageal reflux disease. Dr. Sergent noted that an x-ray done on April 14, 2011 showed mild improvement in aeration, with a moderate amount of residual change still in a diffuse pattern. An April 17, 2011 x-ray showed moderate cardiomegaly, and pulmonary edema with worsened congestive changes.

An arterial blood gas study done on April 15, 2011 showed a $pCO2$ of 53.7 and a $pO2$ of 142.9.

Dr. Gopalan read the April 17, 2011 x-ray, reporting moderate cardiomegaly, and pulmonary edema with worsened congestive changes.

Dr. Haines read an April 14, 2011 x-ray, reporting mild improvement in aeration, and a moderate amount of residual change in a diffuse pattern.

- 27 -

J.A. 50

Mr. Mullins was admitted on April 25, 2011 for shortness of breath and productive cough. Dr. Sergent reported that his lungs had positive rhonchi, and extremely coarse breath sounds throughout. He was admitted to the ICU for treatment of sepsis and bilateral pneumonia.

Mr. Mullins underwent a transthoracic echocardiogram on May 2, 2011. Dr. Frank Lauro reported findings of Methicillin resistant staph aureus sepsis, and abnormal echocardiogram.

Dr. Sergent prepared the May 5, 2011 discharge summary, with diagnoses of sepsis, bilateral healthcare associated pneumonia, MRSA bacteremia, COPD, coworkers [sic] pneumoconiosis, diabetes mellitus, coronary artery disease, hypertension, GERD, history of congestive heart failure, hypokalemia, hyponatremia, leukocytosis, and acute renal insufficiency.

### *CT Scans*

Mr. Mullins underwent a CT scan on April 28, 2010 (EX 11). Dr. Kris N. Saadeh, the reading radiologist, reported that, overall, there was no significant change since a CT scan done on September 10, 2009. Mr. Mullins had extensive interstitial lung disease as described on the earlier report, with no evidence of any superimposed consolidation. Dr. Saadeh stated that the findings were most likely related to UIP/IPF, but referred to his September 10, 2009 report for details.

In his report on the September 10, 2009 CT scan, Dr. Saadeh noted that there were numerous lymph nodes throughout the mediastinum, with tiny calcifications in a few, consistent with previous granulomatous disease (EX 11). The lymph nodes were abnormally increased in number, likely related to chronic inflammation.

Mr. Mullins' lungs had reduced lung volumes, with extensive coarse reticular opacities throughout the lungs with inter and intralobular septal thickening. There was peripheral honeycombing and traction bronchiectasis, and numerous emphysematous cysts. There was no significant ground glass component. There were tracheobronchial calcifications, and irregularity of the bronchial walls at several locations. There were calcified tiny granulomas bilaterally.

Dr. Saadeh concluded that the CT scan showed extensive interstitial disease which was most likely related to usual interstitial pneumonitis/interstitial pulmonary fibrosis. The findings corresponded to what was seen on a CT scan two weeks earlier.

### DISCUSSION

#### *Existence of Pneumoconiosis*

Pneumoconiosis is defined, by regulation, as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201. It includes "any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.* Under the Act, the legal definition of pneumoconiosis is much broader than the medical definition of pneumoconiosis. *Richardson v. Director, OWCP,*

- 28 -

J.A. 51

94 F.3D 164 (4th Cir. 1996).  The claimant has the burden of proving the existence of pneumoconiosis, as well as every element of entitlement, by a preponderance of the evidence. *See, Director, OWCP v. Greenwich Collieries,* 114 S.Ct. 2251 (1995).

Because the current claim was filed after the enactment of the Part 718 regulations, the evidence will be evaluated under standards found in 20 C.F.R. Part 718.  The existence of pneumoconiosis may be established by any one or more of the following methods: (1) chest x-rays; (2) autopsy or biopsy; (3) by operation of presumption; or (4) by a physician exercising sound medical judgment based on objective medical evidence.  20 C.F.R. § 718.202(a).  I have independently assessed the evidence under each of these methods.

*X-ray evidence*

To establish the existence of pneumoconiosis, a chest x-ray must be classified as category 1, 2, 3, A, B, or C, according to the ILO-U/C classification system.  A chest x-ray classified as category 0, including subcategories 0/1, 0/0, or 0/-, does not constitute evidence of pneumoconiosis.  In this case, the record includes 7 ILO readings of 4 x-rays.  With the exception of the reading of the November 19, 2009 x-ray by Dr. Jarboe, who is a B reader, the interpretations are positive for pneumoconiosis.  Four of these readings were by dually qualified physicians, and two were by Dr. Forehand and Dr. Fino, who are B readers.  I find that the overwhelming preponderance of the ILO x-ray interpretations establishes the presence of pneumoconiosis.

Mr. Mullins' treatment records include a number of narrative x-ray readings.  While a number of them include findings of diffuse interstitial changes, none of them include a diagnosis of pneumoconiosis.  I find that the narrative x-rays do not establish either the presence or absence of pneumoconiosis.

Viewing the x-ray evidence as a whole, I find that it establishes that Mr. Mullins had clinical pneumoconiosis.

*Biopsy/Autopsy evidence*

Another method of establishing pneumoconiosis is with autopsy or biopsy evidence, pursuant to § 718.202(a)(2).  There is no autopsy or biopsy evidence in the record, and thus Mrs. Mullins has not established the existence of pneumoconiosis by biopsy or autopsy evidence.

*Applicable Statutory Presumptions*

There is no evidence to suggest that Mr. Mullins had complicated pneumoconiosis, and thus Mrs. Mullins is not entitled to invocation of the irrebuttable presumption under § 718.304.

With respect to the fifteen-year presumption at Section 718.305, I have found that although Mr. Mullins worked for twenty years in the coal mines, Mrs. Mullins has not met her burden to establish that at least 15 years of that employment was in underground mines, or at

- 29 -

surface mines under comparable conditions. Thus, Mrs. Mullins is not entitled to invocation of the presumption at Section 718.305.

### Other Medical Evidence

The record includes two reports on CT scans read by Dr. Saadeh. He did not make any findings of pneumoconiosis. I find that the other medical evidence does not establish the existence of pneumoconiosis.

### Medical Reports

A claimant can also establish that he suffers from pneumoconiosis by well-reasoned, well-documented medical reports. A documented opinion is one that sets forth the clinical findings, observations, facts, and other data on which the physician based the diagnosis. *Fields v. Island Creek Coal Co.,* 10 B.L.R. 1-19 (1987). An opinion may be adequately documented if it is based on items such as a physical examination, symptoms, and the patient's history. *See Hoffman v. B&G Construction Co.,* 8 B.L.R. 1-65 (1985); *Hess v. Clinchfield Coal Co.,* 7 B.L.R. 1-295 (1984). A report which is better supported by the objective medical evidence of record may be accorded greater probative value. *Minnich v. Pagnotti Enterprises, Inc.,* 9 B.L.R. 1-89, 1-90 n.1 (1986); *Wetzel v. Director, OWCP,* 8 B.L.R. 1-139 (1985). A reasoned opinion is one in which the administrative law judge finds the underlying documentation adequate to support the physician's conclusions. *Fields, supra.* Whether a medical report is sufficiently documented and reasoned is for the administrative law judge as the finder-of-fact to decide. *Clark v. Karst-Robbins Coal Co.,* 12 B.L.R. 1-149 (1989)(en banc).

Statutory pneumoconiosis is established by well-reasoned medical reports which support a finding that the miner's pulmonary or respiratory condition is significantly related to or substantially aggravated by coal dust exposure. *Wilburn v. Director, OWCP,* 11 B.L.R. 1-135 (1988). An equivocal opinion, however, may be given little weight. *Griffith v. Director, OWCP,* 49 F.3d 184 (6th Cir. 1995); *Justice v. Island Creek Coal Co.,* 11 B.L.R. 1-91 (1988); *Snorton v. Zeigler Coal Co.,* 9 B.L.R. 1-106 (1986).

Dr. Forehand concluded that Mr. Mullins had coalworkers' pneumoconiosis based on his work history, shortness of breath and abnormal breath sounds, x-ray findings, and arterial blood gas study, as well as cigarette smokers lung disease. I find that Dr. Forehand's conclusions are well-reasoned, and consistent with my findings on the totality of the x-ray evidence, and I accord them significant weight.

Dr. Jarboe found that Mr. Mullins' x-ray was "distinctly abnormal," with diffuse irregular opacities in all lung zones and scattered small rounded opacities. But relying on the "overall clinical findings,"[17] Dr. Jarboe classified the x-ray as 0/0, because he thought the abnormalities were caused by interstitial lung disease, likely idiopathic fibrosis, rather than coal workers pneumoconiosis. I note that Dr. Jarboe is the only reader who interpreted Mr. Mullins' x-ray as

---

[17] For reasons discussed further below, I do not credit Dr. Jarboe's conclusions based on the "overall clinical findings."

- 30 -

negative for pneumoconiosis. I do not credit Dr. Jarboe's conclusion that Mr. Mullins did not have clinical pneumoconiosis.[18]

Dr. Fino, who examined Mr. Mullins and reviewed medical records, classified Mr. Mullins' x-ray as positive for pneumoconiosis. In addition to the August 18, 2010 x-ray, the reading of which was designated by the Employer, Dr. Fino also reviewed the November 19, 2009 x-ray. Dr. Fino did not indicate what he found on the November 19, 2009 x-ray, other than to state that the newer film "also" showed massive cardiomegaly and the "interstitial abnormality," which may have gotten a little worse. Dr. Fino thought that the x-ray findings "could be" due to congestive heart failure, but the irregular opacities and change over time (which he did not further describe) made it "very unlikely" to be simple coal workers' pneumoconiosis. His conclusion was that Mr. Mullins had an "abnormal chest x-ray."

According to Dr. Fino, his finding of only irregular opacities made it "very unlikely" that they were due to simple pneumoconiosis, because the inhalation of coal mine dusts can cause abnormalities to appear on x-ray, but they are rounded opacities that affect first the right upper zone, the left upper zone, the two middle zones, and finally the two lower zones. He stated that the presence of *only* irregular opacities, in the absence of rounded opacities, was inconsistent with coal workers' pneumoconiosis. In addition, opacities *only* in the lower lung zones do not indicate a coal dust related lung condition.

In fact, of the seven ILO x-ray readings, five included findings of rounded opacities, as well as irregular opacities. Dr. Alexander reported that the April 24, 2009 x-ray showed primary rounded opacities (p), and secondary irregular opacities (s); he reported that the November 19, 2009 x-ray showed primary irregular opacities (s), and secondary rounded opacities (p). Dr. Miller reported primary rounded opacities (q) and secondary irregular opacities (s) on the April 24, 2009 and July 7, 2009 x-rays. Dr. Forehand reported primary rounded opacities (p), and secondary irregular opacities (t) on the July 7, 2009 x-ray.

Dr. Fino acknowledged that Mr. Mullins was clearly disabled, with severe oxygen transfer problems and a reduced diffusing capacity. According to Dr. Fino, "generally speaking," diffusing capacity is increased with congestive heart failure. Thus, although he could not rule out congestive heart failure, such a diagnosis would be "lower on his list" than a diffuse interstitial pulmonary condition.

Dr. Fino concluded that Mr. Mullins had either significant congestive heart failure or idiopathic pulmonary fibrosis, and "tended" to agree with Dr. Jarboe that it was "more likely" idiopathic pulmonary fibrosis, but he could not ignore the massive cardiomegaly and possibility of congestive heart failure.

Although Dr. Fino discussed articles dealing with a possible association between coal mine dust inhalation and diffuse interstitial pulmonary fibrosis, he did not address the question of whether, if it was "more likely" that Mr. Mullins had idiopathic pulmonary fibrosis, it had any relationship to his inhalation of coal mine dust. And he did not explain his conclusion that Mr. Mullins' severe oxygen transfer impairment was due either to congestive heart failure or

---

[18] It appears that Dr. Jarboe classified Mr. Mullins' x-ray based on his conclusion about the etiology of the irregular opacities he observed. The ILO form requires a physician to classify the opacities regardless of etiology.

- 31 -

J.A. 54

idiopathic pulmonary fibrosis, but not to his inhalation of coal mine dust. He relied on his experience, that there *can be* mild to moderate reductions in diffusing capacity with coal workers pneumoconiosis, but not to the extent seen with Mr. Mullins. But he did not explain why Mr. Mullins' coal mine dust exposure could not have been a factor, along with other factors such as congestive heart disease or idiopathic fibrosis, which resulted in Mr. Mullins' disabling oxygen transfer.[19]

I find that Dr. Fino's conclusions are speculative, equivocal, poorly reasoned, and not supported by the objective medical evidence, and I accord them no weight.

Dr. Rosenberg, who reviewed some, but not all, of Mr. Mullins' medical records, stated that, although there are medical references purporting to show that linear interstitial lung disease occurs in relationship to coal mine dust exposure, those studies did not control for disorders known to cause interstitial scarring, and thus he did not feel that they objectively supported the conclusion that coal mine dust exposure causes linear interstitial scarring. He discussed a number of studies that did not establish a causal relationship between coal mine dust exposure and the development of interstitial fibrosis.

Dr. Rosenberg concluded that Mr. Mullins "likely" had linear interstitial scarring; it was not a condition related to past coal mine dust exposure, but represented a condition such as idiopathic pulmonary fibrosis or usual interstitial pneumonitis, which is causing his reduced lung volumes, rales, and gas exchange abnormalities.

Dr. Rosenberg did not review any of Mr. Mullins' x-rays, nor was he provided with his CT scans for review, as he requested. He based his conclusions on the findings of rales, which he felt supported B reading interpretations of "outlying linear parenchymal fibrotic changes as opposed to micronodularity." There are three B readings in the record. While Dr. Fino and Dr. Jarboe reported only irregular opacities, Dr. Forehand reported both rounded and irregular opacities. Dr. Miller and Dr. Alexander, who are dually qualified, reported both rounded and irregular opacities, in all lung zones.

Dr. Rosenberg felt that the character of the x-ray changes, and their predominance in the lower lobes, were not findings of coal workers' pneumoconiosis. He felt that Mr. Mullins' "primary" lung disease had a "linear characteristic." He acknowledged that there were "secondary" p changes, but did not think that they "really implied" the presence of a "CWP picture." Again, four of the ILO readings, by Dr. Miller, Dr. Alexander, and Dr. Forehand, include findings of *primary* p or q changes (i.e., rounded opacities); one reading, by Dr. Alexander, included findings of "secondary" p changes.

Other than citing the presence of rales, Dr. Rosenberg did not explain why he discounted the readings by B readers and dually qualified interpreters, who reported rounded opacities in all lung zones, or reconcile those findings of rounded opacities with his conclusions.

---

[19] Dr. Fino also relied on the fact that Mr. Mullins x-ray worsened in 9 months, which argued against simple pneumoconiosis, which, unlike idiopathic pulmonary fibrosis, would not be expected to progress so quickly. Again, the Employer did not designate Dr. Fino's reading of the earlier x-ray, and I discount any findings by Dr. Fino based on his reading of that x-ray.

- 32 -

Dr. Rosenberg speculated that Mr. Mullins "likely" had linear interstitial scarring, which was a condition "such as" idiopathic pulmonary fibrosis or usual interstitial pneumonitis. But other than discussing various studies, he did not explain why this "likely" linear interstitial scarring, which he felt was causing Mr. Mullins' reduced lung volumes, rales, and gas exchange abnormalities, had no relationship to Mr. Mullins' history of coal dust exposure.

Dr. Rosenberg discussed the risk factors for IPF and UIP, including smoking, increasing age, and being male. He noted that rales or crackles were heard in Mr. Mullins' lungs, and he developed moderate to severe restriction and worsening oxygenation over a short period of time. In addition, "many" of the x-ray readers reported a lower lobe predominance with a linear characteristic. He felt that Mr. Mullins' death, less than a year after Dr. Fino's evaluation, was more consistent with idiopathic pulmonary fibrosis than coalworkers' pneumoconiosis, which can cause interstitial lung disorder, but does not progress over a short time frame.

I find that Dr. Rosenberg's conclusions are speculative and not well-supported by objective medical evidence, and I accord them little weight.

In addition, I note that the plain language of the regulations does not require that fibrosis develop first in a particular location, or be of a particular shape, before a diagnosis of pneumoconiosis can be made. 20 C.F.R. §§ 718.102 and 718.202. *See also Pannier v. Wells Fargo Disability Management*, 2012 WL 3276627, BRB No. 11-0559 BLA (July 17, 2012)(unpub.) ("The administrative law judge noted that the regulations do not foreclose a diagnosis of clinical pneumoconiosis when the opacities are irregular in shape, and are in the lower, rather than the upper, zones"); *M.A.S. (widow of W.A.S.) v. Westmoreland Coal Co.*, 2009 WL 2104857, BRB No. 08-0563 BLA (June 17, 2009)(unpub.) (the Board rejected similar reasoning on grounds that the medical expert "did not identify the source for such definition and the administrative law judge found that no such restriction as to specific zones is found under 20 C.F.R. Part 718"). And, even accepting the premise that it is "not typical" for pneumoconiosis to develop first in the lower lung zones or to be irregularly-shaped, Dr. Fino, Dr. Rosenberg, and Dr. Jarboe do not explain why Mr. Mullins could not be one of the *atypical* miners whose pneumoconiosis began to develop in the lower lung zones and are irregular in shape. As a result, to the extent Dr. Fino, Dr. Rosenberg, and Dr. Jarboe premised their opinions on the location or shape of the opacities, I find that those opinions are entitled to less weight.

Dr. Sergent, Mr. Mullins' treating physician, reported that Mr. Mullins' had "well documented" coal workers pneumoconiosis, with massive pulmonary fibrosis associated with coal workers' pneumoconiosis. He had developed progressive shortness of breath in the preceding three and a half years, and he had cor pulmonale and right sided heart failure, with pulmonary hypertension associated with his severe lung disease. Dr. Sergent stated that multiple imaging studies, including x-rays and CT scans, documented changes consistent with coal workers' pneumoconiosis and its associated fibrosis. He thought that the majority of Mr. Mullins' cardiac issues were in association with his severe lung disease, which led to his death.

Dr. Sergent agreed that Mr. Mullins progressively deteriorated between January and May 2011, which was consistent with the end stage of his coal workers pneumoconiosis. However,

- 33 -

his x-ray did not worsen significantly over this time. He agreed that one of the objective findings for idiopathic pulmonary fibrosis was rales, but stated that coal workers pneumoconiosis, which also causes fibrotic changes, can sometimes sound similar. Mr. Mullins had findings of rales and crackles. But although Dr. Sergent agreed that Mr. Mullins had symptoms consistent with idiopathic pulmonary fibrosis, including being a male older than sixty who smoked in the past and had shortness of breath, he did not diagnose him with idiopathic pulmonary fibrosis.

Dr. Sergent reported that Mr. Mullins died suddenly, and reported on his death certificate that the immediate cause of his death was coalworkers' pneumoconiosis due to pulmonary fibrosis, and right sided heart failure. He stated that Mr. Mullins' pulmonary issues, including his coalworkers pneumoconiosis, COPD, and cor pulmonale, eventually led to his death, although he could not say what was the specific mechanism.

I find that Dr. Sergent's conclusions which are based on his treatment of Mr. Mullins over a period of time, and his review of objective test results in connection with that treatment, are well-reasoned, and supported by the objective medical evidence. I accord them significant weight.

Dr. Smiddy, also Mr. Mullins' treating physician, concluded that his x-ray showed severe interstitial lung disease with upper lobe predominance, which "could be" related to pneumoconiosis. He had a severe oxygen transfer impairment. His diagnosis was coal workers pneumoconiosis, interstitial lung disease, and hypoxia. At his last examination of Mr. Mullins, Dr. Smiddy reported that he had congestive heart failure, COPD, and hypoxia. He reviewed outside records, and noted that an x-ray showed five lobe interstitial disease change, cardiomegaly, known coal workers' pneumoconiosis, and mediastinal widening. Dr. Smiddy's diagnoses were coal workers' pneumoconiosis, interstitial lung disease, hypoxia, and a history of tracheal stenosis.

Dr. Smiddy's diagnoses are based on his treatment of Mr. Mullins over the last two years of his life, and his review of numerous x-rays, CT scans, and test results. I find that his conclusion that Mr. Mullins had clinical coal workers' pneumoconiosis is well reasoned and supported, and entitled to significant weight.[20]

Mr. Mullins' records from the Norton Community Hospital include diagnoses of coal workers' pneumoconiosis, but no discussion of the basis for that diagnosis.

I rely on the conclusions of Dr. Forehand, Dr. Sergent, and Dr. Smiddy, over those of Dr. Rosenberg, Dr. Jarboe, and Dr. Fino, to find that Mrs. Mullins has established the existence of pneumoconiosis, both legal and clinical, by a preponderance of the medical opinion evidence.

---

[20] Dr. Smiddy did not speak to the issue of legal pneumoconiosis.

- 34 -

J.A. 57

Finally, weighing all of the evidence on the issue of pneumoconiosis as a whole, I find that Mrs. Mullins has established that Mr. Mullins had pneumoconiosis that arose from his coal mine employment.[21]

### Total Disability

The regulations at § 718.204(b) provide the following five methods to establish total disability: (1) pulmonary function studies; (2) blood gas studies; (3) evidence of cor pulmonale; and (4) reasoned medical opinions. 20 C.F.R. § 718.204(b). However, in a living miner's claim, lay testimony "is not sufficient, in and of itself, to establish total disability." *Tedesco v. Director, OWCP*, 18 B.L.R. 1-103, 106 (1994).

The pulmonary function studies in the record did not produce qualifying values. Of the three arterial blood gas studies, only one was done during exercise, and it produced qualifying values. The most recent study, by Dr. Fino, produced qualifying values at rest. I find that the arterial blood gas studies establish that Mr. Mullins had a totally disabling respiratory impairment.

Every physician who has addressed this issue has concluded that Mr. Mullins had a totally disabling oxygen transfer impairment. In addition, Dr. Sergent, who treated Mr. Mullins for three and a half years before his death, reported that he had cor pulmonale with right sided heart failure.

I find that Mrs. Mullins has established by a preponderance of the evidence that Mr. Mullins had a totally disabling respiratory impairment.

### Disability/Death Due to Pneumoconiosis

With respect to Mr. Mullins' living miner's claim, Mrs. Mullins must establish by a preponderance of the medical evidence that his total disability was due to pneumoconiosis. With respect to Mrs. Mullins' survivor's claim, she must establish that Mr. Mullins' death was due to pneumoconiosis.

Dr. Forehand concluded that the scarring of Mr. Mullins' lungs from the effects of breathing coal dust caused a severe respiratory impairment, and that the principal reason he was disabled was his shortness of breath due to lack of oxygen due to his coal workers' pneumoconiosis. He also felt that Mr. Mullins had cigarette smoking lung disease, which left him with a mild respiratory impairment.

Dr. Forehand acknowledged that findings on CT scan of a T-type opacity, which he also noted, were consistent with UIP/IPF. But considering Mr. Mullins' findings as a whole, he did not think that Mr. Mullins had IPF. He stated that IPF is a severely restrictive lung disease,

---

[21] As Mr. Mullins worked for more than ten years in the coal mines, Mrs. Mullins is entitled to the presumption that his pneumoconiosis arose from his coal mine employment. I find that the opinions of Dr. Jarboe, Dr. Rosenberg, and Dr. Fino are not sufficient to rebut that presumption.

J.A. 58

which has a very, very marked effect on the FVC. But Mr. Mullins' FVC was normal, which was inconsistent with IPF.

Although Dr. Forehand acknowledged that Mr. Mullins' blood gas study results could be consistent with IPF, he noted that it was a non-specific finding that could be consistent with a lot of other conditions that cause scarring of the lungs. Dr. Forehand agreed that a past smoking history, being older than 60 and a male were risk factors for fibrotic lung disease, occupational dust exposure was also a risk factor. He was puzzled by the term "idiopathic" when there was an exposure and a smoking history.

Although Dr. Forehand stated that in general, there is a very accelerated course with IPF, with three years until death, the pneumoconiosis seen since the early 2000s is a more accelerated advance form, with a clearly different pathology than twenty years earlier.

I find that Dr. Forehand's conclusions are well-reasoned and supported by the objective medical evidence, and support the conclusion that Mr. Mullins' totally disabling respiratory impairment was due to his exposure to coal mine dust. Dr. Forehand did not provide an opinion on whether Mr. Mullins' death was due to pneumoconiosis.

Dr. Jarboe concluded that Mr. Mullins had a severe pulmonary impairment, with a significant impairment in gas exchange, "most likely" due to idiopathic fibrosis, not the inhalation of coal mine dust or coal workers pneumoconiosis. He based his conclusion that this impairment was not due to coal dust exposure on the fact that Mr. Mullins had intense basilar rales or crackles, which are not a feature of coal workers pneumoconiosis, but are commonly found with idiopathic pulmonary fibrosis.[22] He also relied on his claim that Mr. Mullins' *severely reduced* diffusion capacity was not characteristic of coal dust induced lung disease, citing studies showing that simple pneumoconiosis does not cause respiratory disability by a reduction of diffusing capacity. However, in reporting the results of his examination of Mr. Mullins, Dr. Jarboe stated that his diffusion capacity was severely lowered at 37%, **but corrected for lung volume it was mildly reduced at 70%.** Dr. Jarboe did not reconcile or explain the significance of his finding of a mild reduction in Mr. Mullins' diffusion capacity, when corrected for lung volume, with his conclusions based on a finding of a severely reduced diffusion capacity.[23]

Dr. Jarboe also thought that Mr. Mullins' rapidly progressing clinical course was consistent with idiopathic pulmonary fibrosis, but not characteristic of interstitial disease caused by coal workers pneumoconiosis, which has a much more benign and indolent course.

I note Dr. Jarboe's claim that simple pneumoconiosis does not "usually" have any significant effect on spirometry or diffusion capacity, and it does not "normally" cause a disabling impairment or significant reduction in diffusion. But the Act recognizes that simple

---

[22] It is not clear whether Dr. Jarboe was referring to rales or crackles as a feature of clinical pneumoconiosis, as opposed to the broader category of coal dust induced lung disease.

[23] Dr. Jarboe felt that the severely reduced diffusion capacity was consistent with Mr. Mullins' treatment records. There is only one other notation of a "reduced" diffusion capacity, by Dr. Fino on his August 18, 2010 examination of Mr. Mullins.

pneumoconiosis can result in a disabling respiratory impairment. Nor did Dr. Jarboe provide any support for his claim that Mr. Mullins' desaturation with exercise was not characteristic of coal workers pneumoconiosis.

I find that Dr. Jarboe's conclusions are not well reasoned, speculative, and not supported by the objective medical evidence, and I accord them little weight.

For the reasons discussed above, I have discounted Dr. Rosenberg's speculation that Mr. Mullins' respiratory impairment was due, not to his inhalation of coal mine dust, but to an interstitial process of unknown etiology (*i.e.*, idiopathic fibrosis). He did not explain or support his conclusory statement that the inhalation of coal mine dust did not have a material adverse effect on Mr. Mullins' pulmonary well-being (even if it were found that he had simple pneumoconiosis). And although he concluded that idiopathic pulmonary fibrosis was "clearly" the cause of Mr. Mullins' death, he did not explain why Mr. Mullins' history of coal mine dust exposure, or the simple pneumoconiosis that he did not believe Mr. Mullins had, did not play a role in his death.

I note that in *Miller v. McCoy Caney Coal Co.*, 2013 WL 1400890, BRB No. 12-0391 BLA (Mar. 28, 2013)(unpub.), the Board held it was proper to accord less weight to a similar opinion offered by Dr. Rosenberg, stating:

> [T]he administrative law judge noted correctly that Dr. Rosenberg's opinion, that claimant's severely reduced diffusing capacity establishes that his emphysema is not related to coal dust exposure, is at odds with the DOL's statement, in the preamble, that sound medical science establishes that emphysema due to coal dust exposure can occur independently of clinical coal workers' pneumoconiosis and that 'dust-induced emphysema and smoke-induced emphysema occur through similar mechanisms.' 65 Fed. Reg. 79,943 (Dec. 20, 2000). Thus, the administrative law judge rationally found that Dr. Rosenberg's opinion, that claimant's FEV1/FVC ratio and severe reduction in diffusing capacity rule out coal dust exposure as a cause of his COPD/emphysema, is entitled to little weight. *See Adams*, 694 F.3d at 801-02, 25 BLR at 2-210-11; *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 483 n.7; 22 BLR 2-265, 2-281 n.7 (7th Cir. 2001).

Thus, to the extent that Dr. Fino, Dr. Jarboe, and Dr. Rosenberg rely on the fact that Mr. Mullins' diffusing capacity was too low to be caused by coal dust induced lung disease, these opinions are accorded less weight, because they are based on views that are inconsistent with the Department's position in its preamble.

I credit the conclusions of Dr. Sergent, who reported that Mr. Mullins had severe lung disease as a result of his coal workers pneumoconiosis, which also led to cardiac issues, including cor pulmonale and right sided heart failure, and pulmonary hypertension, and which led to his death. I find that, based on Dr. Sergent's conclusions, Mrs. Mullins has met her burden to establish that Mr. Mullins' death was due, at least in part, to pneumoconiosis. I find that, based on the opinions of Dr. Forehand, which I find are well-reasoned and supported by the objective medical evidence, Mrs. Mullins has also met her burden to establish that Mr. Mullins was totally disabled due to pneumoconiosis.

- 37 -

### Conclusion

Based on the foregoing, I find that Mrs. Mullins has established by a preponderance of the medical evidence that Mr. Mullins had pneumoconiosis that arose from his coal mine employment, that he was totally disabled due to pneumoconiosis, and that his death was due to pneumoconiosis. Accordingly, she is entitled to benefits under the Act in connection with Mr. Mullins' miner's claim, and her survivor's claim.

### ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the claims of Mrs. Deloris Mullins, on behalf of her husband Turl Mullins, and as the eligible survivor of Turl Mullins, for benefits under the Act are GRANTED.

IT IS FURTHER ORDERED that the Employer, RB & F Coal, Inc., shall pay Mrs. Mullins all benefits to which she is entitled commencing on May 2009 with respect to Mr. Mullins' living miner's claim, and on June 2011 with respect to Mrs. Mullins' survivor's claim.

SO ORDERED.



Digitally signed by Linda Chapman
DN: CN=Linda Chapman,
OU=Administrative Law Judge, O=Office
of Administrative Law Judges,
L=Washington, S=DC, C=US
Location: Washington DC

LINDA S. CHAPMAN
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS**: If you are dissatisfied with the administrative law judge's decision, you may file an appeal with the Benefits Review Board ("Board"). To be timely, your appeal must be filed with the Board within thirty (30) days from the date on which the administrative law judge's decision is filed with the district director's office. *See* 20 C.F.R. §§ 725.478 and 725.479. The address of the Board is: Benefits Review Board, U.S. Department of Labor, P.O. Box 37601, Washington, DC 20013-7601. Your appeal is considered filed on the date it is received in the Office of the Clerk of the Board, unless the appeal is sent by mail and the Board determines that the U.S. Postal Service postmark, or other reliable evidence

establishing the mailing date, may be used. *See* 20 C.F.R. § 802.207. Once an appeal is filed, all inquiries and correspondence should be directed to the Board.

After receipt of an appeal, the Board will issue a notice to all parties acknowledging receipt of the appeal and advising them as to any further action needed.

At the time you file an appeal with the Board, you must also send a copy of the appeal letter to Associate Solicitor, Black Lung and Longshore Legal Services, U.S. Department of Labor, 200 Constitution Ave., NW, Room N-2117, Washington, DC 20210. *See* 20 C.F.R. § 725.481.

If an appeal is not timely filed with the Board, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 20 C.F.R. § 725.479(a).

Miner's Claim for Benefits Und~
The Black Lung Benefits Act

U.S. Department of L~ ~r
Employment Standards Administration
Office of Workers' Compensation Programs

☒

I hereby claim all benefits which may be payable to me under the Black Lung Benefits Act. I also hereby apply on behalf of my family for any benefits that may be payable under the Act.

| | |
|---|---|
| | OMB No.: 1215-0052 |
| | Expires: 05/31/02 |
| | (FOR DOL USE) |

**IMPORTANT:** No benefits may be paid under the Black Lung Benefits Act, unless a completed application form has been received. However, disclosure of your Social Security Number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit, or privilege to which an individual may be entitled. Collection of the information on this form is authorized by law (30 U.S.C. 901, et. seq.). This information is required to obtain a benefit.

1. Miner's Full Name (First, Middle, Last)

2. Miner's Social Security Number

3. Miner's Date of birth (Month, day, year)

4. Highest grade miner completed in school

5. Have you or anyone on your behalf ever filed a claim for Federal Black Lung benefits before?

☐ Yes          ☒ No

6. Decision made (if more than one claim filed, identify and show disposition of each in Item 18, "Remarks,")
☐ Allowed                    ☐ Denied
☐ Withdrawn                  ☐ Pending

7. Are you still working in or around the coal mines?

☐ Yes    If "yes," answer only c.
☒ No     If "no," answer a-c.

a. When did you stop working in or around coal mines or a coal preparation facility, in the extraction, transportation or preparation of coal, or in coal mine construction or maintenance in or around a coal mine?

*1955*

b. Why did you stop working in or around coal mines or a coal preparation facility, in the extraction, transportation or preparation of coal, or in coal mine construction or maintenance in or around a coal mine?

c. Have you ever been transferred from your regular coal mine job to lighter duty?

☐ Yes          ☐ No    If "Yes," provide the dates and reasons why you were transferred. Use space in item 18, "Remarks."

8. How many years have your worked in or around coal mines, or in a coal preparation facility, in the extraction or preparation of coal, or worked in coal mine construction or transportation in or around a coal mine? _____ To the best of your knowledge, list your complete coal mine Employment History on form CM-911a.

**NOTE:** If available evidence is not sufficient to arrive at a determination, you may be requested to have an independent medical examination at no expense to you. Should the Department of Labor obtain information useful to your physician for treatment, such information may be furnished to the physician.

9. Describe briefly any disability you believe you have due to pneumoconiosis (Black Lung) or other respiratory or pulmonary disease resulting from coal mine employment. Specifically, what aspect(s) of your regular job in the coal mines are you physically unable to perform as a result of your disability?

Director's Exh. No. *2*
Consisting of *4* pages.

Form CM-911
Rev. Sept. 1998

NOTE: The amount of any state or Fed___ ___orkers' Compensation / Occupational Disea___ ___efits you are receiving based on your disability due to coal workers' pneumo___ ___ts will be subtracted from your benefits under Part C of the Black Lung Benefits Act.

10. Have you filed a workers' compensation claim under any state or Federal law on account of your disability, due to coal workers' pneumoconiosis?

☐ Yes          ☐ No  (If "Yes," complete items a through j.)

| a. With what state or Federal agency was the claim filed? | b. Approximate date of filing: | c. Claim No. (If known) |
|---|---|---|
| d. Decision made:<br><br>☐ Allowed          ☐ Denied<br>☐ Pending | e. Employer against whom Workers' Compensation Claim was filed? | |
| f. Amount of payment:<br><br>Weekly: $<br>Other: $          per week<br>per _____ | g. Date payments began:<br><br>Date payments ended: | |
| h. Did you pay any attorney fees or legal fees in securing your workers' compensation award?<br><br>☐ Yes          ☐ No | i. If you received a lump sum payment based on your compensation claim, please indicate the following:<br><br>Period covered (fill in below):          Amount: $<br>From:                    To: | |

j. Did you receive any medical benefits as part of your workers' compensation benefits?

☐ Yes                    ☐ No

NOTE: The amount of your earnings, either as an employee or from self-employment, will help us determine the correct payment of black lung benefits to which you may be entitled. This information is required by the 1981 Amendments to the Black Lung Benefits Act.

11a. Enter the names and addresses of all persons, companies, or government agencies for which you worked during the previous calendar year. If self-employed, so indicate.

| Name and Address of Employer | Work Began Month / Year | Work Ended Month / Year | Approximate Earnings |
|---|---|---|---|
| | | | |

b. How much do you expect the earnings to be this year? (Count all of your earnings beginning with the first of the year and all expected earnings through the end of the year.) $ _____

12. Are you married now? ☑ Yes    ☐ No  (If "Yes," complete items a–f)

(If "No," go to item 13)

| | a. Date of marriage: |
|---|---|

| b. Your wife's maiden name (Print):<br><br>SSN: | c. Her birth date: | d. Do you and your wife live together?<br><br>☑ Yes    ☐ No  (If "No," answer items e and f.) |
|---|---|---|
| e. Are you under a court order to make support payments to your wife?<br><br>☐ Yes    ☐ No  (If "Yes," attach a copy of the order.) | Do you make regular support payments to your wife?<br>☐ Yes    ☐ No (If "Yes," indicate amount.)<br>$ _____ per _____<br>(month, day, year) | |

13. Have you previously married? ☐ Yes    ☐ No (If "Yes," answer a through f.)

| a. Full name of previous wife: | b. Date married (month, day year) | c. Place married (City & State) |
|---|---|---|
| d. How marriage ended: (death, divorce) | e. Date marriage ended: | f. Place marriage ended (City, State) |

If prior marriage ended by divorce and you were married for 10 years before the divorce action, answer questions 14 and 15.

| 14. Are you under a court order to make support payments to a divorced wife?<br><br>☐ Yes    ☐ No  (If "Yes," attach a copy of the orders). | 15. Do you make substantial contributions to a divorced wife?<br>☐ Yes    ☐ No (If "Yes," indicate amount)<br>$ _____ per _____<br>(month, day, year) |
|---|---|

J.A. 64

16. Do you have any unmarried chil. ...no are:

Under age 18

    ☐ Yes    ☐  No

Age 18-23 and attending school

    ☐ Yes    ☐ No

Age 18 or older and disabled

    ☒ Yes    ☐ No

**List All Such Children In Order Of Birth Beginning With The Oldest**

(Use "Remarks" space Item 18 if space below is insufficient)

| Check (X) sex of child | | Date of Birth | Check (X) if child 18 or older is student or disabled. | | Check (X) the column that shows child's relationship to you | | |
|---|---|---|---|---|---|---|---|
| Male | Female | (Mo., day, yr.) | Student | Disable | Legitim | Adopted | Stepchi |

Full name of child:

SSN:

Full name of child:

SSN:

Full name of child:

SSN:

Full name of child:

SSN:

**If Any Child Named Above Does Not Live With You, Enter The Name And Address Of The Person Or Organization With Whom The Child Lives In Item 18, "Remarks."**

17. The events listed below may affect the amount of your Federal Black Lung benefits:

    Your condition improves; or

    You become entitled to receive workers' compensation or occupational disease payments due to disability on account of pneumoconiosis; or

    The amount of any of the benefits described above to which you are entitled changes; or

    You work in or around coal mines or any other employment, including self-employment.

The events listed below relating to your dependents may also affect the amount of your Federal Black Lung benefits:

    A dependent marries, divorces, dies, or is adopted by someone else; or

    A child age 18-23 stops attending school, or in the case of a disabled child a-18 or older, the disabling condition improves.

It is **IMPORTANT** that you report **PROMPTLY** any of the above events that occur.

Do you agree to notify the Department of Labor if any of the above events occur? ☐ Yes    ☐ No

18. Remarks. (You may use this space for explanations. If you need more space, attach a separate sheet.)

19. Do you authorize any physician, ho. ., agency, employer or other organization (including the Social Security Administration) to disclose to the Department of Labor any medical records, or information about your disability, or any other information pertinent to your claim?

☐ Yes      ☐ No

20. Do you authorize the Department of Labor to give information about the decision in your Black Lung Benefits claim to the Workers' Compensation, Unemployment Compensation, or Disability Insurance agency of your State to use in connection with a claim you may have with the agency?

☒ Yes      ☐ No

## SIGNATURE OF MINER

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000.00, or by imprisonment for not more than one year, or both.

| 21. Signature of claimant (First, middle, last) | 22. Date (Month, day, year) |
|---|---|
| 22. Mailing Address (Number, street, Apt. No., P.O. Box or Rural Route) | 24. City and State |
| .25. Zip Code | 26. County Where You Now Live | 27. Telephone number (Include area code) |

Witnesses are required ONLY if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address

| 28. Signature of witness: | 29. Signature of witness |
|---|---|
| 30. Address (Number, street, city, state & zip code) | 31. Address (Number, street, city, state & zip code) |

Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

## PRIVACY ACT NOTICE

In accordance with the Privacy Act of 1974 (5 U.S.C. 552a), as amended, you are hereby notified that: (1) the Black Lung Benefits Act (BLBA) (30 U.S.C. 901 et seq.), as amended, is administered by the Office of Workers' Compensation Programs (OWCP) of the U.S. Department of Labor, which receives and maintains personal information, relative to this application, on claimants and their immediate families; (2) information obtained by OWCP will be used to determine eligibility for benefits payable under the BLBA; (3) information may be given to coal mine operators potentially liable for payment of the claim or to the insurance carrier or other entity which secured the operator's compensation liability; (4) information may be given to physicians or other medical service providers for use in providing treatment, making evaluations and for other purposes relating to the medical management of the claim; (5) information may be given to the Department of Labor's Office of Administrative Law Judges, or other person, board or organization, which is authorized or required to render decisions with respect to the claim or other matters arising in connection with the claim; (6) information may be given to Federal, state or local agencies for law enforcement purposes, to obtain information relevant to a decision under the BLBA, to determine whether benefits are being or have been paid properly, and where appropriate, to pursue administrative offset and/or debt collection actions required or permitted by law; (7) disclosure of the claimant's or deceased miner's Social Security Number (SSN) or tax identifying number (TIN) on this form is voluntary, and the SSN and/or TIN and other information maintained by the OWCP may be used for identification and for other purposes authorized by law; (8) failure to disclose all requested information, other than the SSN or TIN, may delay the processing of this claim or the payment of benefits, or may result in an unfavorable decision or reduced level of benefits.

COMPUTER MATCHING PROGRAM. The Department of Labor conducts computer matches with the Department of Health and Human Services and the Department of Veterans Affairs. Any information provided by applicants or and recipients of financial assistance or payments under Federal benefit programs may be subject to verification through computer matches which the Department of Labor conducts with these agencies.

## Public Burden Statement

Public reporting for this collection of information is estimated to average 8 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, 200 Constitution Avenue, NW, Room C-3520, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.**



**U.S. DEPARTMENT OF LABOR**
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION
OMB No. 1212-0052 Expires 06-30-92

**EMPLOYMENT HISTORY**

DEPARTMENT ...
ESP.-OWCP ...
JOHNSTOW... ...

NOTE: Please complete as accurately as possible the miner's complete employment history. (When employment was in coal mining, specify whether the mine was a strip mine or an underground mine.) This report is authorized by law (30 U.S.C. 901 et. seq.). While you are not required to respond, your cooperation is needed to ensure that full and proper consideration is given to this claim. Disclosure of the social security number is voluntary. Failure to disclose such number will not result in the denial of any right, privilege, or benefit to which you may be entitled.

Miner's Name

Iurl   Mullins

Miner's Social Security Number

| 1.  Name and Address of Employer (City and State) | 2. Type of Industry. (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other.) | 3.  Occupation (Specify type of work) | 4. Period of Employment Mo/Yr | Mo/Yr | 5. Exposure to dust, gases or fumes? (Yes/No) |
|---|---|---|---|---|---|
| Edward Joe Mullins Pound, VA | Coal mining | Hand loaded coal | 11/59 | 5/60 | yes |
| Moore Coal Company Clintwood, VA | Coal mining | Hand loaded coal | 1960 | 1962 | yes |
| M+M Coal Co. Pound, VA | Coal mining | Hand loaded coal | 1962 | 1964 | yes |
| Glady Fork Coal Co. Pound, VA | Coal mining | Ran Dozer open cab | Can't remember exact dates | | yes |
| Clay Baker Coal Pound, VA | Coal mining | loaded coal by hand | Can't remember exact date | | yes |
| Leblin Coal Company Pound, VA | Coal mining | Ran open cab dozer | 1978 | 1979 | yes |
| Shelcy Mullins Wilder Coal Wise, VA | Coal mining | Worked in mines + ran open cab | 1980 | Can't remember exact date | yes |
| R.B.+F Inc. Wise, VA | Coal mining | loaded coal | 1985 | 1986 | yes |
| Wilder Coal Corp. Wise, VA | Coal mining | In mines + on dozer | 1986 | 1988 | yes |
| J+R Contractors Inc. Wise, VA | Coal mining | | 1988 | 1989 | yes |

Director's Exh. No. 2.
Consisting of  2  pages.

Form CM-911a
Rev. June 1989

 

| 1.<br><br>Name and Address of Employer<br>(City and State) | 2. Type of Industry. *(Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other.)* | 3.<br><br>Occupation *(Specify type of work)* | 4.<br><br>Period of Employment<br><br>Mo/Yr |Mo/Yr | 5.<br>Exposure to dust, gases or fumes?<br><br>*(Yes/No)* |
|---|---|---|---|---|
| Kim-Stan Inc.<br>Harrisonburg, VA | Coal mining | Ran open cab dozer | 1989 | 1990 | yes |
| AGM Coal Comp<br>Pound, VA | Coal mining | | 1989 | 1989 | yes |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000.00, or by imprisonment of not more than one year or both.

| 6. Signature of claimant *(First, middle, last)*<br><br>*Jusl Mullins* | 7. Date *(Month, day, year)*<br><br>5-11-09 |
|---|---|

| 8. Mailing Address *(Number, Street, Apt. No., P.O. Box or Rural Route)*<br><br>10313 Robinson Rd | 9. City and State<br><br>Pound, VA |
|---|---|

| 10. Zip Code<br><br>24279 | 11. County Where You Live<br><br>Wise | 12. Telephone Number *(Include Area Code)* 276 796 5841 |
|---|---|---|

Witnesses are required only if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address.

| Signature of witness | Signature of Witness |
|---|---|
| Address *(Number, Street, City, State & Zip Code)* | Address *(Number, Street, City, State & Zip Code)* |

**Public Burden Statement**

Public reporting burden for this collection is estimated to average 5 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and composing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Information Management, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0057), Washington, D.C. 20503.

DO NOT SEND THE COMPLETED FORM TO EITHER OF THESE OFFICES

SSA-1826              ITEMIZED STATEMENT OF EARNINGS              JOB: 9586

        SOCIAL SECURITY ADMINISTRATION
        RETIREMENT, SURVIVORS AND DISABILITY INSURANCE
        EARNINGS RECORD INFORMATION
                                    Date: 06/17/2009

DEPARTMENT OF LABOR, COAL MINE WORKERS
319 WASHINGTON STREET
JOHNSTOWN           PA  15901-0000

We are sending you the statement of earnings you requested for
the number holder shown below

Number Holder's Name:  TURL   MULLINS
Social Security Number:  ███████-0508
Years Requested: JANUARY 1950 THRU DECEMBER  2008

If we recently received earnings information, it may not yet be
shown on this statement.

Control Number: 09154082046

Enclosure(s):
    Earnings Statement

Director's Exh. No. 5
Consisting of 2 pages.

J.A. 69



```
SSA-1826                    ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *        FOR SSN ████-0508        * * *      JOB: 9586
```

```
FROM:   SOCIAL SECURITY ADMINISTRATION
        OFFICE OF CENTRAL OPERATIONS
        300 N. GREENE STREET
        BALTIMORE, MARYLAND  21290-0300

DEPARTMENT OF LABOR, COAL MINE WORKERS        NUMBER HOLDER NAME:
                                              TURL   MULLINS
319 WASHINGTON STREET


JOHNSTOWN               PA  15901-0000

PERIOD REQUESTED   JANUARY 1950  THRU  DECEMBER 2008
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|

```
EMPLOYER NUMBER: 35-0930434
U S  ARMY
INDIANAPOLIS   IN 00000-0000
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1957 | 421.20 | 421.20 | 421.20 | 421.20 | $1,684.80 |
| 1958 | 491.92 | 571.60 | 615.00 | 615.00 | $2,293.52 |
| 1959 | 615.00 | | | | $615.00 |

```
EMPLOYER NUMBER: 35-9990000
DEPT OF THE ARMY SRD AC RC
ATTN DFAS ADIMB LAURA WICKS
% DFAS ATTN DFASIN ADIMB
8899 E 56TH ST
INDIANAPOLIS   IN 46249-0002
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1959 | | 461.16 | 470.33 | 167.07 | $1,098.56 |

```
EMPLOYER NUMBER: 54-0679666
MULLINS & MULLINS
M & M COAL CO
BOX 457
POUND  VA 24279-0000
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1960 | | 425.12 | 812.17 | 689.22 | $1,926.51 |
| 1961 | 796.50 | 768.50 | 876.00 | 784.00 | $3,225.00 |
| 1962 | 789.00 | 762.00 | 712.00 | 476.00 | $2,739.00 |

PAGE 001

J.A. 70

```
SSA-1826                ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *      FOR SSN [REDACTED]-0508      * * *        JOB: 9586
```

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1963 | 36.00 | 36.00 | | | $72.00 |

EMPLOYER NUMBER:  54-0492518
WILLARD MOORE
MULLINS HOLLOW COAL CO
C-O W C SOUTHERN JR
CLINTWOD  VA 00000-0000

| | | | | | |
|---|---|---|---|---|---|
| 1963 | | 327.95 | 589.19 | | $917.14 |

EMPLOYER NUMBER:  61-0511200
HI WATER CORP
2112 HI WATER RD
LUDLOW  KY 41016-0000

| | | | | | |
|---|---|---|---|---|---|
| 1963 | | 25.06 | | | $25.06 |

EMPLOYER NUMBER:  54-0449573
LEONARD M MULLINS
BOGGS HILL COAL CO
BOX 457
POUND  VA 24279-0000

| | | | | | |
|---|---|---|---|---|---|
| 1964 | 136.50 | 598.60 | | | $735.10 |
| 1965 | | 574.87 | | | $574.87 |

EMPLOYER NUMBER:  54-0700417
JOHN H RILEY
RILEY COAL COMPANY
BOX 457
POUND  VA 24279-0000

| | | | | | |
|---|---|---|---|---|---|
| 1964 | | | 129.50 | | $129.50 |

EMPLOYER NUMBER:  54-0716691
ROBERT E MCGUIRE
ENTERPRISE TREE SERVICE
1649A W BROAD ST
RICHMOND  VA 23220-0000

| | | | | | |
|---|---|---|---|---|---|
| 1964 | | | 257.77 | | $257.77 |

PAGE 002

J.A. 71

```
SSA-1826                ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *      FOR SSN [████]0508      * * *        JOB: 9586
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

EMPLOYER NUMBER:  54-0763655
LOWELL DINGUS & FESTUS DORTON
DINGUS COAL COMPANY NO 4
POUND   VA 24279-0000

| 1964 | | | | 883.98 | $883.98 |

EMPLOYER NUMBER:  54-0736583
JESSIE LAWRENCE PETERS
PETERS GROCERY
ROUTE 2
FERRUM   VA 24088-0000

| 1965 | 788.37 | | | | $788.37 |

EMPLOYER NUMBER:  54-0763583
LOWELL DINGUS & FESTUS DORTON
DINGUS COAL COMPANY NO 4
BOX 457
POUND   VA 24279-0000

| 1965 | | 69.13 | | | $69.13 |

EMPLOYER NUMBER:  54-0717187
SOUTHERN MATERIALS COMPANY
INCORPORATED OF NORFOLK
977 NORFOLK SQ
NORFOLK   VA 23502-3227

| 1965 | | | | | |
| 1966 | 44.10 | | 716.20 | 1,114.75 | $1,830.95 |
|      |       |  |        |          | $44.10 |

EMPLOYER NUMBER:  54-0660285
GREENBANK CONSTRUCTION CO INC
PO BOX 288
HOPEWELL   VA 23860-0000

| 1966 | 992.00   | 1,392.19 | 1,496.83 | 1,830.18 | $5,711.20 |
| 1967 | 1,477.21 | 1,995.65 | 2,122.20 | 1,004.94 | $6,600.00 |

PAGE 003



```
SSA-1826                ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *      FOR SSN ████████0508      * * *        JOB: 9586
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1968 | 1,977.76 | 1,784.42 | 236.65 | | $3,998.83 |

EMPLOYER NUMBER:  43-0826362
R B POTASHNICK & J D BARTER
 CONST CO INC A JOINT VENTURE
PO BOX 190
CAPE GIRARDEAU MO 63701-0000

| 1968 | | | 2,030.50 | 664.66 | $2,695.16 |
|---|---|---|---|---|---|

EMPLOYER NUMBER:  54-0757675
D R LAWSON
D R LAWSON COAL COMPANY
% ROBERTS & DEAN CPAS
WISE  VA 24293-0000

| 1968 | | | | 1,338.76 | $1,338.76 |
|---|---|---|---|---|---|

EMPLOYER NUMBER:  54-0830804
PAUL BOLLING & SHELEY MULLINS PTR
WILDER COAL COMPANY
WISE  VA 24293-0000

| 1969 | 1,361.51 | 2,030.01 | 1,780.64 | 2,023.01 | $7,195.17 |
| 1970 | 1,490.13 | 2,232.95 | 2,583.00 | 1,493.92 | $7,800.00 |
| 1971 | 2,770.83 | 2,911.87 | 1,821.94 | | $7,504.64 |
| 1974 | | 1,730.93 | 3,277.50 | | $5,008.43 |
| 1976 | | 832.00 | 1,200.87 | 3,494.67 | $5,527.54 |
| 1977 | 2,174.25 | | | | $2,174.25 |

EMPLOYER NUMBER:  54-0882482
DEXTER DOTSON & DOUGLAS MULLINS PTR
GLADY FORK COAL COMPANY
BOX 457
POUND  VA 24279-0000

| 1971 | | | 1,035.00 | 2,649.50 | $3,684.50 |
| 1972 | 2,666.88 | 3,251.27 | 2,576.01 | 505.84 | $9,000.00 |
| 1973 | 2,554.27 | 3,100.39 | | | $5,654.66 |

PAGE 004

J.A. 73

SSA-1826
VERSION 2009.001 * * *　ITEMIZED STATEMENT OF EARNINGS
FOR SSN ████ 0508     * * *     JOB: 9586

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|

EMPLOYER NUMBER:  54-0939917
GLADY FORK COAL CO INC
BOX 486
POUND   VA 24279-0000

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|
| 1973 | | | | | |
| 1974 | 1,588.87 | | 2,665.14 | 2,633.94 | $5,299.08 |
| | | | | | $1,588.87 |

SELF EMPLOYMENT

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|
| 1974 | - | | | | |
| 1982 | - | - | | | $6,603.00 |
| 1983 | - | - | - | - | $19,363.00 |
| 1984 | - | - | - | - | $7,688.00 |
| 1986 | - | - | - | - | $1,701.00 |
| 1989 | - | - | - | - | $1,676.00 |
| | | | | | $4,584.00 |

EMPLOYER NUMBER:  54-0885034
CECIL J & CURTIS E HORNE PTR
CLINCH VALLEY LANES & HORNE BROS
MINING COMPANY
PO BOX 949
WISE   VA 24293-0000

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|
| 1974 | | 600.00 | 900.00 | 900.00 | |
| 1975 | 900.00 | 900.00 | 900.00 | 900.00 | $2,400.00 |
| 1976 | 900.00 | 300.00 | | | $3,600.00 |
| | | | | | $1,200.00 |

EMPLOYER NUMBER:  54-1045808
DEBLIN COAL COMPANY INC
BOX 457
POUND   VA 24279-0000

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|
| 1977 | | 6,500.00 | 7,000.00 | 3,000.00 | |
| 1978 | - | - | - | - | $16,500.00 |
| 1979 | - | - | - | - | $17,700.00 |
| | | | | | $22,900.00 |

PAGE 005

J.A. 74

```
SSA-1826
VERSION 2009.001 * * *        ITEMIZED STATEMENT OF EARNINGS
                                  FOR SSN ████████ 0508        * * *        JOB: 9586
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

```
EMPLOYER NUMBER:  54-1073627
SHELCY MULLINS
WILDER COAL CO NO 3
RT 1 BOX 660
WISE   VA 24293-9784
```

| 1980 | - | - | - | - | |
| | | | | | $3,637.50 |

```
EMPLOYER NUMBER:  54-1255966
R B & F INC
PO BOX 1439
WISE   VA 24293-1439
```

| 1985 | - | - | - | - | |
| 1986 | | - | - | - | $17,046.89 |
| | | | - | - | $13,823.13 |

```
EMPLOYER NUMBER:  54-1328086
WILDER COAL CORPORATION
 RT 640
PO BOX 1439
WISE   VA 24293-1439
```

| 1986 | - | - | | | |
| 1987 | - | - | - | - | $14,140.00 |
| 1988 | - | - | - | - | $24,741.36 |
| | | | | | $14,271.49 |

```
EMPLOYER NUMBER:  54-1438926
J&R CONTRACTORS INC
PO BOX 1187
WISE   VA 24293-1187
```

| 1988 | - | - | - | - | |
| 1989 | - | - | - | - | $7,390.76 |
| | | | | | $3,451.00 |

```
EMPLOYER NUMBER:  54-0917617
KIM-STAN INC
PO BOX 526
HARRISONBURG   VA 22803-0526
```

| 1989 | - | | - | | |
| | | | | | $17,308.63 |

PAGE 006

J.A. 75

```
SSA-1826                ITEMIZED STATEMENT OF EARNINGS
VERSION 2009.001 * * *      FOR SSN ████ 0508    * * *        JOB: 9586
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1990 | | | | | $8,176.50 |

EMPLOYER NUMBER:  54-1227363
A G M COAL COMPANY INC
PO BOX 829
POUND  VA 24279-0829

| | | | | | |
|------|-------------|-------------|-------------|-----------|-------|
| 1989 | | | | | $442.00 |

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER   2007 MAY NOT BE SHOWN, OR ONLY
PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

PAGE 007 END

## ISSUES CONCERNING RESPONSIBLE OPERATOR IDENTIFICATION / DISMISSAL

MINER:                          Turl Mullins

CLAMANT:                        Turl Mullins

CLAIM NO:                       XXX-XX-0508 LM C

RESPONSIBLE OPERATOR(s):        R B & F Coal Inc

DATES OF EMPLOYMENT WITH RESPONSIBLE OPERATOR: 1985-1986


R B & F Coal Inc has been selected as the responsible operator in this claim. The miner's last coal mine employment of more than one year with a viable operator was with R B & F Coal Inc, which is indicated by his social security earnings record.


Stuart C Glassman
District Director


Director's Exh. No. _116_
Consisting of __4__ pages

Request for Identification of
A Potentially Liable Responsible Operator

**U.S. DEPARTMENT OF LABOR**
Office of Workers' Compensation
Division of Coal Mine Workers' Compensation

TO:  Responsible Operator Section

DATE:  May 13, 2010

FROM:  Mary T. Kuzilla

Johnstown, PA

Miner's Name:  **Turl Mullins**
Miner's SSN:  **XXX-XX-0508**

Type Claimant: **LM**
Probable Allowance          ☐ Yes  ☐ No

Please provide the name and address of the potentially liable operator and the insurance carrier as appropriate, for this claim including the rational by which you came to this identification.  The miner's last CME of a year or more was with (Company)  R B & F  from  1985  to  1986  in the state of  Virginia.

This has been verified by (Source or basis):  Earnings Record

Date Claim Filed:  05/14/2009

## RESPONSE

☒  The potentially liable responsible operator for this claim is:
Company:  **R B & F Coal Inc**               Operator Number:  **0203201**

Address:    **P.o.box 1439**

**Wise, VA 24293**

The insurance carrier/servicing agent is:

Company:    **Old Republic Insurance Company**

Address:    **PO Box 2200**          Carrier No./
Self Ins. No.  **NR046**

**Greensburg, PA 15601-2200**

☐  No potentially liable responsible operator can be identified for this claim.

(RO Reviewer or Claims Examiner (RO Index)                    (Date)

*Mary Kuzilla*                                    05-13-10

Form CM-911b
Rev. July 1988

RESPONSIBLE OPERATOR RATIONALE

| Claimant's name **Turl Mullins** | | | | Social Security Number **XXX-XX-0508 LM** | |
|---|---|---|---|---|---|
| Company Name | Status & Dates | Source | | | RMO Yes/No |
| | | Agency | Person | Phone | |

**R B & F Coal Inc is the potentially liable responsible mine operator in this claim based on the following rationale:**

## EMPLOYMENT EVIDENCE:

The miner's Social Security Earnings Record establishes 20.23 years of coal mine employment for the period from April 1960 through December 31, 1990.

## LIABILITY ANALYSIS:

R B & F Coal Inc has been named as the designated responsible operator based upon the following:

1. The designated responsible operator was an operator after 06/30/73 and employed the miner as a miner for not less than one year based upon Social Security Earnings Record.
2. The miner's employment with this operator included at least one working day after 12/31/69 based upon Social Security Earnings Record.
3. There is a rebuttable presumption that coal mine workers were exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility. The presumption has not been successfully rebutted.
4. This operator or its insurer is financially capable of assuming liability for the payment of benefits in accordance with 20 CFR 725.494(e).
5. This operator is not the operator that most recently employed the miner, but is the designated responsible operator because the miner worked for R B & F Coal Company in 1985 and 1986. The miner's Social Security Earnings Record establish more than a year of coal mine employment with R B & F Coal Company. After leaving R B & F Coal Company, he worked for the following companies: 1. Wilder Coal Company in 1986, 1987 and 1988. Wilder Coal Company is out of business and not a viable operator. They were insured by Rockwood Insurance Company for the miner's dates of employment. However, due to Rockwood's bankruptcy and the fact that Wilder Coal Company is not a viable operator, the Department of Labor cannot name Wilder Coal Company as the responsible operator for this claim. 2. J & R Contractors, Inc. in 1988 and 1989. This company cannot be named as the responsible operator as the miner's Social Security Earnings Record establishes less than a full year of employment with this company. 3. A G M Coal Company, Inc. in 1989. This company cannot be named as the miner's Social Security Earnings Record establishes less than a full year of employment with this company. 4. Kim-Stan, Inc. in 1989 and 1990. Kim-Stan, Inc. was not insured for the miner's dates of employment and is no longer in business. Therefore, Kim-Stan, Inc. is not a viable operator. R B & F Coal Company is the last viable operator which employed the miner for a full year and has therefore, correctly identified as the responsible operator for this claim.

A Notice of Claim was received by the potentially liable operator/carrier, R B & F Coal Inc, on July 8, 2009, as evidenced by the signed return receipt from the post office. The potentially liable operator/carrier has failed to timely submit evidence to support its position or to timely request an extension of the period of time for submission of such evidence. Therefore, in accordance with 20 CFR 725.408(b), no documentary evidence relevant to the grounds set forth in the Operator Assertions - 20 CFR 725.408(a)(2) - may be admitted in any further proceeding.

**U.S. DEPARTMENT OF LABOR**     **Office of Workers' Compensation
Division of Coal Mine Workers' Compensation
Greater Johnstown Tech Park
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267**



May 20, 2010              **Phone:   (814) 619-7777 or 1-800-347-3754
Telefax:  (814) 619-7790**

                                    MINER: Turl Mullins
John T Chafin, Esq.                 CLAIM NO.: XXX-XX-0508 LM C
290 E Court Street
PO Box 700
Prestonsburg, KY 41653-0700

Dear Mr. Chafin:

This is in response to your letter regarding dismissal of Deblin Coal Company
as the putative responsible operator in this claim.

Upon review of the evidence in file and in accordance with 20 CFR 725.492-3, it
is determined that Deblin Coal Company is not the putative responsible operator
in this claim. Accordingly, Deblin Coal Company is relieved of further
liability in this claim.

Should further evidence become available, we reserve the right to again name
Deblin Coal Company as a party to this claim.

Sincerely,

*Mary T. Kuzilla*

Mary T. Kuzilla
Claims Examiner

cc: Turl Mullins; Ron Carson; R B & F Coal Inc; Old Republic Insurance Company
Deblin Coal Company

Director's Exh. No. 17
Consisting of  4  pages.



# CHAFIN LAW OFFICE, P.S.C.

290 E. COURT STREET
P.O. BOX 700
PRESTONSBURG, KENTUCKY 41653-0700
TELEPHONE 606-886-9511
FAX 606-886-9644

JOHN T. CHAFIN
jtchafin@bellsouth.net

October 21, 2009

Mr. Evan Shourds
U.S. Department of Labor
ESA/OWCP/DCMWC
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267

Re:   **Turl Mullins vs. Deblin Coal Company**
      OWCP # ██████-0508

Dear Mr. Shourds:

This will provide you with a response to the schedule for the submission of additional evidence on behalf of Deblin Coal. We believe that a schedule should also be issued against Deblin if they are still being considered as the responsible operator.

The Employer disagrees that Deblin Coal is the Correct responsible operator. It is undisputed that the claimant last year of cumulative employment of not less than one year was with Wilder Coal Company. The District Director has failed to place either Rockwood or the Guaranty Fund on notice of this claim. Instead, the District Director has simply named prior operators. In addition, the District Director has an affirmative duty to designate the owners, officers and directors of Wilder Coal as a party pursuant to <u>Donovan</u> v. <u>McKee</u>.

The Employer disagrees with the finding that the claimant suffers from pneumoconiosis which was caused at least in part by coal dust exposure. The Employer disagrees with the finding that the claimant is totally disabled due to pneumoconiosis.

In addition to the controversion form previously filed in this matter, the Employer attaches its additional objections to the evidence under the new regulations.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

John T. Chafin

JTC/mch

cc:   Hon. Ron Carson
      Ms. Chris Terrill 1109867

UNITED STATES DEPARTMENT. OF LABOR
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION

TURL MULLINS,                                    )
                                                 )
          CLAIMANT                               )
                                                 )
VS.                                              )          OWCP NO: ███-0508
                                                 )
DEBLIN COAL COMPANY,                             )
                                                 )
AND                                              )
                                                 )
R B & F COAL COMPANY,                            )
                                                 )
          EMPLOYERS                              )
                                                 )
AND                                              )
                                                 )
DIRECTOR, OFFICE OF WORKERS '                    )
COMPENSATION PROGRAMS                            )
                                                 )
          PARTY IN INTEREST                      )

---

EMPLOYER'S SECOND SET OF INTERROGATORIES
AND
REQUEST FOR PRODUCTION OF DOCUMENTS

---

1.      Please state the social security number and date of birth of Dubree Mullins.

2.      Please state the nature of the disability suffered by Dubree Mullins.

3.      Please state the on set date of any disability suffered by Dubree Mullins.

4.      Please state the treating doctor of Dubree Mullins.

5.    Please state whether you are the guardian or caretaker of Dubree Mullins. If you are not, please state the name and address of the person that is.

6.    Please state whether you are under a duty to provide support for Dubree Mullins.

7.    Please state the person on whose social security account that Dubree Mullins receives benefits.

8.    Please state whether Dubree Mullins has ever been employed. If so, please name the dates and employer.

9.    Please state the relationship between Dubree Mullins and Donna Mullins.

## REQUEST FOR PRODUCTION

1.    Please provide all documents pertaining to Interrogatories 1 through 9.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was, this the 21st day of October, 2009, mailed, postage prepaid, to: Hon. Ron Carson, Stone Mountain Health Services, St. Charles Community Health Clinic, Drawer S, St. Charles, Virginia 24282-0269, and to Mr. Evan Shourds, U.S. Department of Labor, ESA/OWCP/DCMWC, 1 Tech Park Drive, Suite 230, Johnstown, PA 15901-1267.

John T. Chafin, Attorney

 

| Operator Response to Notice of Claim | U.S. DEPARTMENT OF LABOR<br>Employment Standards Administration<br>Office of Workers' Compensation<br>Division of Coal Mine Workers' Compensation |  Claim Number 1109867 |
|---|---|---|

| Miner's Name<br>Turl Mullins | Claimant's Name<br>Turl Mullins | Claim Number<br>[black box]0508 | OMB No. 1215-0058<br>Expires: |
|---|---|---|---|
| Potentially Liable Operator's Name<br>Deblin Coal Co. | | Insurer's Name<br>Old Republic Insurance Co. | Policy Number |

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.). Please check appropriate boxes and provide requested information. **While you are not required to respond, if you fail to do so within 30 days of your receipt of the Notice of Claim you shall not be allowed to contest your liability for the payment of benefits on any of the five specific grounds set forth below in section B.** You must send a copy of this response to the claimant by regular mail.

---

**A.     Acceptance of Liability**

☐      The named potentially liable operator is the responsible operator within the meaning of the Black Lung Benefits Act.

---

**B.     Controversion of Liability**

Indicate whether the named potentially liable operator accepts or denies the assertions that follow. **Acceptance of these assertions is not necessarily an acceptance of liability.** You may still contest your liability on any other available grounds.

| Accepts | Denies | |
|---|---|---|
| ☐ | ☒ | This operator was an operator for any period after 6/30/73. |
| ☐ | ☒ | This operator employed the miner as a miner for a cumulative period of not less than one year. |
| ☐ | ☒ | The miner was exposed to coal mine dust while working for this operator. |
| ☐ | ☒ | The miner's employment with this operator included at least one working day after December 31, 1969. |
| ☐ | ☒ | This operator or its insurer is financially capable of assuming liability for the payment of benefits. |

---

**Time period for submission of evidence.** Within 90 days of the date on which you received the Notice of Claim, you may submit documentary evidence in support of your positions asserted in Section B. For any of the assertions you denied, you must submit all relevant documentary evidence within this 90-day period. The time period may be extended for good cause shown if an extension request is filed with the district director prior to the expiration of the 90-day period. You must include a statement of reasons why you need additional time with your extension request.

---

**Public Burden Statement**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C3526, 200 Constitution Avenue, N.W., Washington, D.C. 20210. (DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.) **Note: Persons are not required to respond to this information unless it displays a currently valid OMB control number.**

---

**C.     Additional Information**

Please answer the questions below. If the space provided for any response is inadequate, please continue your response on a blank sheet of paper and attach it to the form. If you are unable to respond to these questions within the 30-day period for accepting or denying the assertions set forth in Section B above (i.e. within 30 days of receipt of the Notice of Claim), you should return this form in compliance with the 30-day time limitation and provide the information requested in this section within 90 days of your receipt of the Notice of Claim.

Form CM-2970a

J.A. 85

1.  The miner was employed by the named potentially liable operator (list **all** periods of employment)

    From: _____         To: _____
    _____                   _____
    _____                   _____

    Miner's Job Classification(s)/          Time performed                  Name and Location of
    Type(s) of Work Performed               (Beginning and Ending Dates)    Mine or Facility (County and State)

    _____          _____          _____
    _____          _____          _____
    _____          _____          _____

2.  The named potentially liable operator is insured for its obligations under the Black Lung Benefits
    ☐ as an approved self-insurer or   ☐ by a policy or contract of insurance as follows:

    Insurance Carrier(s)                    Policy Number(s)                Dates of Coverage

    _____          _____          _____
    _____          _____          _____
    _____          _____          _____

3.  Is the named potentially liable operator affiliated in any way with any of the other firms identified in the Notices of
    Claim as potentially liable operators? ☐ Yes   ☐ No   If yes, please explain the nature of the relationship:

    _____
    _____
    _____
    _____

4.  Has the named potentially responsible operator transferred or sold its mine, mines, or coal mining business, or
    substantially all of the assets thereof, to another person or business organization? ☐ Yes   ☐ No   If yes, please
    explain the details of the transaction(s), including the name(s) of the person(s) or organization(s) acquiring the property:

    _____
    _____
    _____
    _____
    _____

5.  Please set forth any additional facts regarding potential liability you would like to have considered:
    All other defenses reserved
    Deblin Coal Co. was not the operator with whom the miner had the most recent period of cumulative employment
    of one year

| Name & Address of Firm | Signature _Christine M. Terrill_ | Date |
| Deblin Coal Co. | Christine M. Terrill | 7/14/09 |
| Old Republic Insurance Company | | |
| P.O. Box 2200 | Title | |
| Greensburg, PA 15601 | Supervisor OD Claims | |

cc:  Turl Mullins
     Street Law Firm
     Stone Mtn Health Services - Ron Carson





**U.S. DEPARTMENT OF LABOR**

**Employment Standards Administration**
**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Greater Johnstown Tech Park**
**1 Tech Park Drive, Suite 250**
**Johnstown, PA 15901-1267**
  **Phone: (814) 619-7777 or 1-800-347-3754**
    **FAX: (814) 610-7790**

*NOTICE OF CLAIM*

Date Issued: July 1, 2009

| Miner's Name: Turl Mullins | |
|---|---|
| Claimant's Name/Address<br><br>Turl Mullins<br>10313 Robinson Road<br>Pound, VA  24279 | Claim Number<br><br>XXX-XX-0508 LM C |
| Potentially Liable Operator/Address<br><br>Deblin Coal Company<br>PO Box 106<br>Pound, VA 24279 | Insurance Carrier/Address<br><br>Old Republic Insurance Company<br>PO Box 2200<br>Greensburg, PA 15601-2200<br><br>Policy Number:  BC-39634 |

The claimant named above has filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. 901 et seq.  We are currently developing the claim to determine the claimant's eligibility.  Enclosed is a copy of the claimant's application and any evidence OWCP has obtained to date relating to the miner's employment.

This Notice of Claim is issued pursuant to 20 C.F.R. 725.407.  We have identified you as a "potentially liable operator" in this claim.  A "potentially liable operator" is an employer of the miner (or a successor of an employer pursuant to 20 C.F.R. 725.492) who may be held liable for the payment of benefits should the claimant be found entitled to them.  Designation as a potentially liable operator does not constitute a determination that you are in fact liable.  Where OWCP's records indicate you obtained a policy of insurance, and the claim falls within such policy, we are sending a copy of this notice to your insurer.  You and your insurer shall be considered parties to the claim unless an adjudication officer dismisses you and you are not thereafter notified again of your potential liability.

**Within 30 days of receipt of this Notice of Claim, you (or your insurer) must file a response** pursuant to 20 C.F.R. 725.408 indicating your intent to accept or contest your identification as a potentially liable operator.  This time period may be extended for good cause shown if you file an extension request with the District Director prior to expiration of the 30 days.  We have enclosed a form entitled "Operator Response to Notice of Claim" for your use. Please send your response and any other correspondence to the Office of Workers' Compensation Programs, Division of Coal Mine Workers' Compensation, at

the address shown above.

If you accept liability for the payment of benefits should the claimant obtain an award (i.e. you accept that you are the "responsible operator"), please mark the box in Section A (entitled "Acceptance of Liability") on the Operator Response to Notice of Claim. **Accepting liability means only that you are the operator liable for the payment of any benefits due; it does not constitute a stipulation or admission that the claimant is entitled to benefits.**

If you wish to contest your status as a potentially liable operator, you must state the precise nature of your disagreement by accepting or denying each of the five assertions listed in Section B (entitled "Contest of Potential Liability - Operator Assertions) on the Operator Response to Notice of Claim. The assertions are limited to information about your employment of the miner and your status as an operator. If you deny any of the five operator assertions, you have 90 days from your receipt of this notice to submit documentary evidence in support of your response. This time period may be extended for good cause shown if you file an extension request with the District Director prior to expiration of the 90 days. **Absent extraordinary circumstances, no documentary evidence relevant to the assertions set forth in 20 C.F.R. 725.408(a)(2) (reiterated in Section B of the Operator Response to Notice of Claim) may be admitted in any further proceedings unless it is submitted within 90 days of your receipt of this notice or an extended period authorized by the District Director.**

**If you do not respond within 30 days of your receipt of this Notice of Claim, you will not be allowed to contest your liability for payment of benefits on any of the grounds set forth in 20 C.F.R. 725.408(a)(2) (reiterated in Section B of the Operator Response to Notice of Claim).**

**Please note that your response need not include evidence about any other potentially liable operator and its employment of the miner.** At the conclusion of the initial evidence-gathering period, the District Director will issue a Schedule for the Submission of Additional Evidence pursuant to 20 C.F.R. 725.410. In that schedule, the District Director will select and designate one "responsible operator" from the potentially liable operators notified. All parties will then be given an opportunity to present evidence regarding the liability of the designated responsible operator or any other operator.

**NOTE: THE "OPERATOR RESPONSE TO NOTICE OF CLAIM" MUST INCLUDE THE ORIGINAL SIGNATURE OF AN AUTHORIZED OFFICIAL FOR THE POTENTIALLY LIABLE RESPONSIBLE OPERATOR OR ITS INSURANCE CARRIER. WE CANNOT ACCEPT A COPY OF THE RESPONSE SENT BY FAX IN LIEU OF THE ORIGINAL DOCUMENT.**

We are available to assist you with this process. I may be contacted at the address and telephone number shown above.

Sincerely,

Evan Shourds
Claims Examiner

Enclosures:    Copy of claim and evidence relating to miner's employment history
               Operator Response to Notice of Claim form (Form No. CM-2970a)

cc: Turl Mullins; Ron Carson; R B & F Coal Inc; Old Republic Insurance Company;
Deblin Coal Company;

Miner: Turl Mullins
Claimant: Turl Mullins
Claim No.:  XXX-XX-0508 LM C

**NOTICE**

Two or more coal mine operators have been advised by the Notice of Claim
that they are potentially liable operators.  No operator is authorized
to initiate medical development until such time as one operator is
determined to be the designated responsible operator.  That designation
will be included on the Schedule for the Submission of Additional
Evidence which will be issued following the period of time allowed for
development of the liability issues as outlined on the Notice of Claim.

  

## OPERATOR RESPONSE TO NOTICE OF CLAIM

**U.S. DEPARTMENT OF LABOR**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| Miner's Name: | Claimant's Name: | Claim Number: | OMB No.: 1215-0058 |
|---|---|---|---|
| **Turl Mullins** | **Turl Mullins** | **XXX-XX-0508 LM C** | Expires: 12/31/2010 |
| Responsible Operator's Name: | Insurer's Name: | Policy No. | |
| **Deblin Coal Company** | **Old Republic Insurance Company** | | **BC-39634** |

This information is authorized by the Black Lung Benefits Act (30 U.S.C. 901 et.seq.) (20 CFR 725.408). Please check appropriate boxes and provide requested information. While you are not required to respond, if you fail to do so within 30 days of your receipt of the Notice of Claim you shall not be allowed to contest your liability for the payment of benefits on any of the five specific grounds set forth below in Section B. (20 CFR 725.408). You must send a copy of this response to the claimant by regular mail.

### A. Acceptance of Liability

☐    The named potentially liable operator is the responsible operator within the meaning of the Black Lung Benefits Act

### B. Controversion of Liability

Indicate whether the named potentially liable operator accepts or denies the assertions that follows.
Acceptance of these assertions is not necessarily an acceptance of liability. You may still contest your liability on any other available grounds.

| Accepts | Denies | |
|---|---|---|
| ☐ | ☐ | This operator was an operator for any period after 06/30/73. |
| ☐ | ☐ | This operator employed the miner <u>as a miner</u> for a cumulative period of not less than one year. |
| ☐ | ☐ | The miner was exposed to coal mine dust while working for this operator. |
| ☐ | ☐ | The miner's employment with this operator included at least one working day after December 31, 1969. |
| ☐ | ☐ | This operator or its insurer is financially capable of assuming liability for the payment of benefits. |

**Time period for submission of evidence.** Within 90 days of the date on which you received the Notice of Claim, you may submit documentary evidence in support of your positions asserted in Section B. For any of the assertions you denied, you must submit all relevant documentary evidence within this 90 day period. The time period may be extended for good cause shown if an extension request is filed with the district director prior to expiration of the 90 days period. You must include a statement of reasons why you need additional time with your extension request.

### Public Burden Statement

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N. W., Washington, D.C. 20210. Note: Persons are not required to respond to this information unless it displays a currently valid OMB control number. (DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.)

Form CM-2970a
Rev. Jan. 2001



## C. Additional Information

Please answer the questions below. If the space provided for any response is inadequate, please continue your response on a blank sheet of paper and attach it to the form. If you are unable to respond to these questions within the 30-day period for accepting or denying the assertions set forth in Section B above (*i.e.* within 30 days of receipt of the Notice of Claim), you should return this form in compliance with the 30-day time limitation and provide the information requested in this section within 90 days of your receipt of the Notice of Claim.

1. The miner was employed by the named potentially liable operator (list <u>all</u> periods of employment):

From: _____     To: _____

_____     _____

_____     _____

| Miner's Job Classification(s)/ Type(s) of Work Performed | Time Performed (Beginning and Ending Dates) | Name and Location of Mine or Facility (County and State) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

2. This named potentially liable operator is insured for its obligations under the Black Lung Benefits Act ☐ as an approved self-insurer or  ☐ by a policy or contract of insurance as follows:

| Insurance Carrier(s) | Policy Number | Dates of Coverage |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

3. Is the named potentially liable operator affiliated in any way with any of the other firms identified in the Notice of Claim as potentially liable operators?  ☐ Yes  ☐ No   If yes, please explain the nature of the relationship.

_____
_____
_____

4. Has the named potentially responsible operator transferred or sold its mine, mines, or coal mining business, or substantially all of the assets thereof, to another person or business organization?  ☐ Yes  ☐ No   If yes, please explain the details of the transaction(s), including the name(s) of the person(s) or organization(s) acquiring the property.

_____
_____
_____

5. Please set forth any additional facts regarding potential liability you would like to have considered.

_____
_____
_____

| Name and Address of Firm Completing Form | Name of Person Completing Form |
|---|---|
| | Title |
| | Signature | Date |




**CHAFIN LAW OFFICE, P.S.C.**

290 E. COURT STREET
P.O. BOX 700
PRESTONSBURG, KENTUCKY 41653-0700
TELEPHONE 606-886-9511
FAX 606-886-9644

JOHN T. CHAFIN
jtchafin@bellsouth.net

July 17, 2009

Mr. Ron Shourds
U. S. Department of Labor
ESA/OWCP/DCMWC
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267

RE:  Turl Mullins vs. R B & F Coal Inc. & Deblin Coal Company
     JO #XXX-XX-0508

Dear Mr. Shourds:

Enclosed herewith please find an Operator's Response And
Controversion which are to be filed on behalf of the Defendant-
Employer, R B & F Coal Inc. and Deblin Coal Company, in regard to
the above styled claim. Please make these controversions a part
of Mr. Mullins' federal file.

Thank you for your time and cooperation in regard to this matter.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

John T. Chafin

John T. Chafin

JTC/jab

Enclosure

cc:  Mr. Ron Carson
     Office of the Solicitor
     Ms. Christine M. Terrill 1109866 & 1109867

Director's Exh. No. 22
Consisting of 6 pages.

J.A. 93

U.S. DEPARTMENT OF LABOR
FOR THE UNITED STATES DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION
1 TECH PARK DRIVE, SUITE 250
JOHNSTOWN, PA 15901-1267

IN THE MATTER OF:

TURL MULLINS,                           )
                                        )
                        Claimant,)
                                        )
        VS                              )
                                        )
R B & F COAL INC., &                    )
DEBLIN COAL COMPANY                     )
                                        )        OWCP NO: XXX-XX-0508
        Alleged Responsible Operator,)
                                        )
        AND                             )
                                        )
OLD REPUBLIC INSURANCE COMPANY,         )
                                        )
                Insurance Carrier,)
                                        )
        AND                             )
                                        )
DIRECTOR, OFFICE OF WORKERS'            )
COMPENSATION PROGRAMS,                  )
                                        )
                Party in Interest. )

OPERATOR'S RESPONSE AND CONTROVERSION

        R B & F COAL INC., and DEBLIN COAL COMPANY, alleged
responsible operator (hereinafter "operator"), and OLD REPUBLIC
INSURANCE COMPANY, its insurance carrier (hereinafter "carrier"),
have been notified that they may be responsible for the payment of
compensation and other benefits in this claim for benefits under
Title IV of the Federal Coal Mine Health and Safety Act of 1969, as
amended (the Act). On their behalf, the operator and carrier deny
any liability in connection with this claim for the reasons which
follow:

Controversion A - Affirmative Defenses

        1. This claim was not filed within three years of a medical
determination of total disability due to pneumoconiosis and is,
therefore, untimely.

J.A. 94



2. The claimant is not or was not employed as a coal miner as that term is defined in the Act and may not, therefore, claim benefits under the Act.

3. If this claimant has been previously determined to be ineligible for benefits under the Act, and this determination has become final by operation of law, the instant claim is barred by the doctrines of res judicata and/or collateral estoppel.

4. The operator and carrier reserve the right to challenge the legal or constitutional validity of any rule, regulation, procedure or statutory provision which may result in an award of benefits in this case or otherwise impose any liability on the operator and/or the carrier and further object to the application to this claim of any such rule, regulation or procedure to become effective on or after January 19, 2001.

5. The operator and the carrier object to any and all evidence which may be included in the record in this claim pending the transmittal of such evidence to the operator and the carrier in accordance with applicable rules, the receipt of same, and the implementation of procedures which guarantee the operator and the carrier the right to a full and fair hearing. In this connection, the operator and carrier seek to exercise their right to have the claimant examined by one or more physicians which they select, and to respond to or otherwise challenge the credibility, relevance and veracity of any evidence submitted or to be submitted by or on behalf of the claimant, the Director, OWCP, or any other party to the claim.

### Controversion B - Liability

The operator and carrier deny liability for the payment of benefits in this claim for the following reasons:

1. The evidence fails to prove that the operator most recently employed the claimant for a cumulative period of one year.

2. The evidence fails to prove that the claimant was employed in any mine when it was owned or operated by the operator.

3. The evidence fails to prove that the claimant suffers from or is disabled by any medically identifiable condition which arose in whole or in part out of the claimant's employment with the operator.

4. The operator and carrier allege that the liability for the payment of benefits to this claimant, if there is any, is the sole responsibility of the Black Lung Disability Trust Fund.

 

## Controversion C - Claimant Eligibility

The operator and carrier deny that the claimant is eligible for benefits under the Act for the reasons that:

1. The claimant does not suffer from pneumoconiosis or any dust disease of the lung arising out of coal mine employment.

2. Any medically identifiable abnormality suffered by the claimant is not directly or indirectly caused by, significantly related to, or a sequelae of a dust disease of the lung arising out of the claimant's coal mine employment.

3. The claimant is not medically disabled for his or her regular coal mine work or comparable work as a consequence of pneumoconiosis, as that term is defined in the Act. To the extent that a resolution of this claim will depend in any part upon a determination that the claimant is unable to perform his or her regular coal mine work or other available work which is comparable and gainful, the operator and carrier allege that the claimant has failed to prove an inability to perform any such work on account of pneumoconiosis.

4. The operator and carrier deny that any element of this claimant's eligibility may be presumed factual on the basis of the evidence presented, and allege further that any fact which may be presumed in this claim is rebutted by the weight of the relevant evidence.

5. The operator and carrier deny that the claimant was employed as a coal miner for the period or periods of time alleged, and further deny that the claimant was exposed to harmful levels of coal dust in the course of such alleged employment.

6. The operator and carrier deny that the medical evidence submitted by the claimant or the District Director meets applicable standards or is sufficiently reasoned and documented to credibly support claimant's alleged entitlement to benefits.

## Controversion D - Benefits Payable

1. The operator and carrier deny that the benefits paid or payable in this claim, if any, may be augmented under the Act on account of one or more dependents for the reason that the evidence presented fails to establish any entitlement to such augmented benefits.

2. The operator and carrier deny all liability for the payment of any interest, fees, expenses, penalties, or other loss incurred in connection with this claim on the grounds that the imposition of any such interest, penalties, fees or costs

 

is inconsistent with the law and unsupported by sufficient evidence.

3. The operator and carrier deny any liability for the payment of medical care, treatment, services (including unnecessary or repetitive diagnostic services obtained by the claimant), appliances, surgery, medication, or vocational or physical rehabilitation. Should the operator and its carrier be finally determined liable for the payment of monthly benefits to the claimant under the Act, the operator and carrier hereby deny all liability for the payment of any medical costs or charges (including medical costs or charges incurred prior to a final adjudication of the claimant's entitlement) which were not approved by the operator and carrier in advance of the time at which such costs are incurred, and further deny all liability for unnecessary medical attention or any medical attention not required as a direct and specific consequence of the claimant's coal mine employment generated pneumoconiosis.

4. Should the operator and its carrier be found liable for the payment of cash benefits to the claimant under the Act, the operator and carrier deny liability for the amount of such cash benefits subject to offset under the Act on account of benefits received for total, partial or scheduled disability due to pneumoconiosis under a State or Federal Workers' Compensation Law. The operator and carrier allege that all such State or Federal Workers' Compensation benefits received by the claimant must be deducted on a monthly or other appropriate basis from any cash benefits payable under the Act regardless of the date on which such State or Federal Workers' Compensation benefits are paid or payable or the time periods for which such benefits are paid or payable.

5. Should the operator and carrier be found liable for the payment of cash benefits to the claimant under the Act, the operator and carrier deny liability for any amount of such cash benefits subject to offset under the Act on account of the excess earnings of the claimant. The operator and carrier further demand strict proof to be supplied by the claimant that any benefits awarded are not subject to a 100% reduction on account of such excess earnings, and allege that 100% reduction in the amount otherwise payable under the Act is required pending the receipt by the operator and carrier of proof to the contrary.

6. The operator and carrier deny that any benefits are payable to the claimant from any date prior to the date on which the relevant credible medical evidence establishes that the claimant is totally disabled due to pneumoconiosis arising out of coal mine employment, and further deny all liability for the payment of any benefits (including medical benefits, fees, penalties, or interest) attributable to a period during which the claimant is employed in or around the coal mine or in any other

 

and gainful employment.

### Controversion E - Miscellaneous

1.   The operator and carrier further deny each and every allegation of fact not hereinbefore denied.

2.   Should the claimant die prior to a final adjudication of this claim, the operator and carrier deny liability under the Act to any survivor of this claimant and further deny any liability to the estate of the claimant, or the claimant's heirs, survivors, executors, administrators, or assigns.

### Controversion F - New Regulations and Amendments

1.   The operator and carrier further challenge the constitutionality of the new regulations and amendments.

WHEREFORE, the operator and carrier move that this claim be dismissed.

R B & F COAL INC. AND DEBLIN COAL COMPANY AND OLD REPUBLIC INSURANCE COMPANY

By _John T. Chafin_
   Counsel

CHAFIN LAW OFFICE, P.S.C.
290 East Court Street
P. O. Box 700
Prestonsburg, Kentucky 41653
Telephone Number: 606-886-9511
Fax Number: 606-886-9644

By _John T. Chafin_

### CERTIFICATE OF SERVICE

I hereby certify that on the _17th_ day of July, 2009, caused a true copy of the foregoing OPERATOR'S RESPONSE AND CONTROVERSION to be forwarded by first class mail, postage pre-paid, to: Mr. Ron Carson, Stone Mountain Health Services, P. O. Drawer S, St. Charles, VA 24282.



# CHAFIN LAW OFFICE, P.S.C.

290 E. COURT STREET
P.O. BOX 700
PRESTONSBURG, KENTUCKY 41653-0700
TELEPHONE 606-886-9511
FAX 606-886-9644

JOHN T. CHAFIN
jtchafin@bellsouth.net

August 13, 2009

Mr. Evan Shourds
U.S. Department of Labor
ESA/OWCP/DCMWC
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267

Re:  Turl Mullins vs. R B & F Coal Inc. and Deblin Coal Company
     OWCP # ▮▮▮▮0508

Dear Mr. Shourds:

We are requesting that Deblin Coal and R B & F Coal, Inc., be dismissed as parties to this matter. A review of the social security itemized statement of earnings indicate that Mr. Mullins had employment at Wilder Coal Company in 1980, 1986, 1987, and 1988. He appears to have earned over $57,000.00 during this time frame. His earnings would appear to be consistent with three (3) years of employment.

Since the claimant's employment at Wilder Coal was subsequent to that at Deblin and R B & F, then Wilder should be designated as the responsible operator and Deblin and R B & F dismissed.

Please review this file at your earliest convenience and issue an appropriate order.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

*John T. Chaf*

John T. Chafin

JTC/mch

cc:  Mr. Ron Carson
     Ms. Chris Terrill 1109866 & 110967

Director's Exh. No: 23
Consisting of ____ pages.

J.A. 99

**U.S. DEPARTMENT OF L** 

**Employment Standards Administration**
**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Greater Johnstown Tech Park**
**1 Tech Park Drive, Suite 250**
**Johnstown, PA 15901-1267**



**August 17, 2009**

**Phone:    (814) 619-7777 or 1-800-347-3754**
**Telefax:  (814) 619-7790**

Miner: Turl Mullins
Claim Number: XXX-XX-0508

John T. Chafin, Esq.
290 E. Court Street
PO Box 700
Prestonsburg, KY   41653-0700

Dear Mr. Chafin:

We have received your letter dated August 13, 2009. Wilder Coal Corporation is out of business and no longer a viable operator. For the miner's last date of employment with Wilder Coal Corporation, (i.e. 1988); Wilder Coal Corporation was insured by Rockwood Insurance Company. Due to Rockwood's bankruptcy, the Department cannot name Wilder Coal Corporation as the responsible operator for this claim.

If you have any questions, please feel free to contact our office.

Sincerely,

Evan Shourds
Claims Examiner

Cc: Turl Mullins
    Ron Carson
    R B & F Coal, Inc.
    Old Republic Insurance Company
    Deblin Coal Company

Director's Exh. No. 24
Consisting of _____ pages.

J.A. 100





**CHAFIN LAW OFFICE, P.S.C.**

290 E. COURT STREET
P.O. BOX 700
PRESTONSBURG, KENTUCKY 41653-0700
TELEPHONE 606-886-9511
FAX 606-886-9644

JOHN T. CHAFIN
jtchafin@bellsouth.net

August 25, 2009

Mr. Evan Shourds
U.S. Department of Labor
ESA/OWCP/DCMWC
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267

Re:    Turl Mullins vs. Deblin Coal Company and R B & F Coal Company
       OWCP # ███-0508

Dear Mr. Shourds:

This will acknowledge receipt of your correspondence of August 17, 2009, wherein you declined to designate Wilder Coal Company as the responsible operator. It was noted that due to Rockwood's bankruptcy the DOL did not name Wilder Coal as the responsible operator. Please provide the factual and legal basis for this position. Certainly, one would believe that the Guaranty Fund would be designated as a party in this situation.

We believe that the Department has an affirmative duty to name Wilder Coal and/or Rockwood or the Guaranty Fund as a party to this matter. We further believe that the Officers and Directors of Wilder Coal should also be named. The fact that these entities failed to take care of their responsibility and obtain insurance coverage from a more reputable entity does not permit the Department from naming other entities that took their responsibility more seriously. In the event that the Department refuses to designate Wilder Coal, its Guaranty Fund or Rockwood or the officers and directors, then we are requesting that any and all liability be transferred to the Black Lund Disability Trust Fund.

Please review this matter and issue an appropriate order.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

John T. Chafin

JTC/mch

cc:    Mr. Ron Carson
       Ms. Chris Terrill 1109866 & 1109867

Director's Exh. No. 35
Consisting of ___ pgria.





## CHAFIN LAW OFFICE, P.S.C.

290 E. COURT STREET
P.O. BOX 700
PRESTONSBURG, KENTUCKY 41653-0700
TELEPHONE 606-886-9511
FAX 606-886-9644

JOHN T. CHAFIN
jtchafin@bellsouth.net

October 5, 2009

Mr. Evan Shourds
U. S. Department of Labor
ESA/OWCP/DCMWC
1 Tech Park Drive
Suite 250
Johnstown, PA 15901-1267

RE:   Turl Mullins vs. R B & F Coal Inc. & Deblin Coal Company
      JO# XXX-XX-0508

Dear Mr. Shourds:

Enclosed herewith please find the deposition of Turl Mullins taken on September 17, 2009 in reference to the above-captioned matter. Mr. Mullins testified that the last employer of over one full year was Wilder Coal. Please dismiss R B & F Coal Inc. as well as Deblin Coal Company as parties to this matter.

Please issue an appropriate order at your earliest convenience.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

John T. Chafin

JTC/jab

Enclosure

cc:  Mr. Jerry Murphree
     Ms. Christine M. Terrill 1109866

DEPARTMENT OF LABOR
ESA OWCP-DCM WC
JOHNSTOWN, PA 15901

OCT   8 2009

Director's Exh No. 2 6
Consisting of  16  pages.

J.A. 102

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

U. S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINER WORKERS' COMPENSATION

IN THE MATTER OF THE CLAIM FOR COMPENSATION )
UNDER THE FEDERAL BLACK LUNG BENEFITS REFORM)
ACT OF 1977, (30 U.S.C., 901, et. seq.)     )
                                             )
                                             )
TURL MULLINS,                                )
                          CLAIMANT )    CASE NO.
                                   )    XXX-XX-0508
R B & F COAL, INC.,                )
DEBLIN COAL COMPANY,               )
                          EMPLOYER )
                                   )
OLD REPUBLIC INSURANCE COMPANY,    CARRIER )
                                   )
DIRECTOR, OFFICE OF WORKERS'       PARTY IN )
COMPENSATION PROGRAMS              INTEREST )

          *   *   *   *   *   *   *   *   *   *

        The deposition of <u>TURL MULLINS</u>, was taken before

Denise M. Gauze, Notary Public in and for the State of

Kentucky at Large, on Thursday, September 17, 2009, at the

approximate hour of 2:30 p.m., via speaker phone from

Chafin Law Office, P.S.C., 290 East Court Street,

Prestonsburg, Kentucky.

        Said deposition was taken pursuant to Notice,

attached hereto and filed herewith, to be used as evidence

on behalf of the Defendant-Employer in the above-styled

action now pending for compensation under Federal Black

Lung Benefits Reform Act of 1977 (30 U.S.C., 901, et.

seq.).

                                                        -1-

1  APPEARANCES:

2                    Hon. John T. Chafin
                     CHAFIN LAW OFFICE, P.S.C.
3                    290 East Court Street
                     Prestonsburg, Kentucky 41653
4                    ATTORNEY FOR DEFENDANT-EMPLOYER

5

6                    Hon. Jerry Murphee
                     STONE MOUNTAIN HEALTH SERVICES
7                    P. O. Drawer S
                     St. Charles, Virginia 24282
8

9

10                   *  *  *  *  *  *  *  *  *  *

11

12                          INDEX

13  Witness, TURL MULLINS:
                                                     Page
14  DIRECT EXAMINATION by Mr. Chafin . . . . . . . .   3 - 12

15

16  REPORTER'S CERTIFICATION . . . . . . . . . . .
17                                                      13

18

19

20

21

22

23

24

25

                                                        2

1    The witness, TURL MULLINS, after first being duly

2    sworn by the Court Reporter/Notary Public, was questioned

3    and testified as follows:

4                    DIRECT EXAMINATION

5    QUESTIONS BY MR. CHAFIN:

6    Q.    Mr. Mullins, have you ever given a deposition

7    before?

8    A.    No.

9    Q.    Well, I'm going to ask you some questions about your

10   coal mine work and your medical condition.  If there's

11   anything I ask you that you don't hear or don't understand,

12   you tell me.  Okay?

13   A.    Okay.

14   Q.    If I ask you a question you don't know the answer or

15   don't remember, just say, "I don't know," or "I don't

16   remember."  Okay?

17   A.    Okay.

18   Q.    Would you state your name, sir?

19   A.    Turl Mullins.

20   Q.    And where do you live?

21   A.    Pound, Virginia.

22   Q.    Are you married?

23   A.    Yes, I am.

24   Q.    What's your wife's name?

25   A.    Deloris Doris Mullins.

3

1   Q.      Do you and Deloris have any children at home that

2   are dependent upon you for support?

3   A.      No.

4   Q.      Are you working anywhere right now, sir?

5   A.      No.

6   Q.      I have you last working in 1990.  Does that sound

7   correct?

8   A.      That's correct.

9   Q.      It looks like you were working for a company called

10  Kimstand?

11  A.      Right.  That's right.

12  Q.      Was that coal mine work?

13  A.      No, it was not.

14  Q.      That was not coal mine work?

15  A.      No.

16  Q.      What kind of work was that?

17  A.      It was landfill.

18  Q.      Landfill?

19  A.      Yes.  It was owned by my brother.

20  Q.      Did you work for J & R Contractors?

21  A.      Yes, I did.

22  Q.      Was that coal mine work?

23  A.      Coal mine work, yes.

24  Q.      What did you do for J & R?

25  A.      I run a dozer, open-cab dozer.

1   Q.    Now your Social Security records list

2   self-employment --

3   A.    That's right.

4   Q.    (Continuing) -- 1989, 1986, 1984, 1983, 1982.  What

5   kind of work was that?

6   A.    That was strip job.

7   Q.    Were you self-employed, or how did that work?

8   A.    Well, I run a dozer.

9   Q.    Did you have your own dozer?

10  A.    That's right.

11  Q.    Did you have your own company?

12  A.    Yes, I did.

13  Q.    What was the name of your company?

14  A.    Oh, boy.  Crystal Coal Company was one, and Deblin

15  Coal Company.

16  Q.    You owned Deblin?

17  A.    That's right.

18  Q.    Now at Deblin, looks look, you had earnings there in

19  1977, '78 and '79.

20  A.    That's right.

21  Q.    What did you do for Deblin?

22  A.    I ran the dozer.

23  Q.    Did you have other employees there?

24  A.    Yes, I did.

25  Q.    And you ran the dozer?

5

1    A.    I run the dozer.

2    Q.    Now it looks like you had earnings for Wilder,

3    W-I-L-D-E-R, Coal Company, 1980, '86, '87 and '88.

4    A.    That's right.

5    Q.    What did you do for Wilder?

6    A.    I run open-cab dozer for them.

7    Q.    Did you work over a year at Wilder?

8    A.    Yes, I did.

9    Q.    Did you have any ownership interest in Wilder?

10    A.    (NO AUDIBLE RESPONSE.)

11              MR. MURPHEE:   Can I repeat it for him,

12    John?

13    Q.    Did you have any ownership interest in Wilder?

14    A.    No, I did not.

15    Q.    It looks like you worked at RB & F, 1985 and 1986.

16    A.    That's right.

17    Q.    What did you do for RB & F?

18    A.    Open-cab dozer.

19    Q.    Did you own RB & F?

20    A.    No, I did not.

21    Q.    Were these owned by a fellow called Chelsea Mullins?

22    A.    That's right.

23    Q.    He owned Wilder and RB & F?

24    A.    Yes, he did.

25    Q.    Did you work over a year at RB & F?

6

1   A.    Yes, I did.

2   Q.    Did you work a year at J & R?

3   A.    I don't remember.

4   Q.    How many years all together have you worked in and

5   around the coal mines?

6   A.    Close to 30 years.

7   Q.    Close to 30?

8   A.    Right.

9   Q.    And how much of that was underground?

10   A.    I believe seven years.

11   Q.    Seven under; the other 23 was above ground?

12   A.    To the best of my knowledge, yes.

13   Q.    And it looks like most of your work was a dozer

14   operator; is that correct?

15   A.    That's correct.

16   Q.    Would you have to do any lifting when you did the

17   dozer operation?

18   A.    No, I did not.

19   Q.    And why did you quit work in 1989?

20   A.    Well, I was unable to work any more.

21   Q.    Were you injured, or what kind of problems were you

22   having, sir?

23   A.    Well, I had cancer, one thing, and I was overweight.

24   Q.    At the time that you stopped work in 1989, were you

25   treated by any doctor for a breathing condition?

7

1    A.    Well, I'd been given inhalers and things like that

2    by doctors.

3    Q.    What doctor was treating you, sir?

4    A.    Dr. Bulliock (sic) in Pound, Virginia.

5    Q.    Are you treated right now?

6    A.    Yes, I am.

7    Q.    Who treats you right now?

8    A.    No, not that doctor.

9    Q.    Is there another doctor?

10   A.    Dr. Sergeant.

11   Q.    Sergeant?

12   A.    Sergeant, yes.

13   Q.    Is it a he?

14   A.    It's a he.

15   Q.    What does he do for you?

16   A.    Well, he's put me on oxygen and different kind of

17   inhalers.

18   Q.    How long have you been on oxygen?

19   A.    About three months.

20   Q.    Are you on 24/7 or just as needed?

21   A.    24/7.

22   Q.    Now you said you had lung cancer?

23   A.    No, I didn't have lung cancer.

24   Q.    Okay.  I misunderstood you.

25   A.    No.

J.A. 110

```
1    Q.    You said you had cancer?

2    A.    Had cancer in my head, melanoma cancer.

3    Q.    Was this skin cancer?

4    A.    That's right.

5    Q.    You had skin cancer?

6    A.    Right.

7    Q.    I guess you were treated for that?

8    A.    I was operated on it four times.

9    Q.    Have you had any, I guess, flare-ups of that since?

10   A.    Ever four or five years it comes back.

11   Q.    You're still treated then?

12   A.    Still treating.

13   Q.    Did the Department of Labor send you to a doctor?

14   A.    No, they didn't.

15   Q.    You've not seen one yet?

16   A.    Yes, he did.

17   Q.    Do you remember who you saw?

18   A.    Dr. Forehand.

19   Q.    Do you remember about when you saw him?

20   A.    It's been about three and a half months ago.

21   Q.    Has any doctor told you that you have black lung?

22   A.    Yes, they have.

23   Q.    Do you remember who told you?

24   A.    Yeah.  Dr. Forehand told me.

25   Q.    Was that three and a half months ago?
```

9

1   A.    That's right.  And Dr. Josey told me that.

2   Q.    Dr. Josey?

3   A.    Dr. Sergeant.

4   Q.    Okay.

5   A.    And Dr. Smitty.

6   Q.    Was that back in 1989?

7   A.    No.  This was -- Dr. Smitty told me last week.

8   Q.    Last week?

9   A.    Two weeks ago.

10  Q.    How about Dr. Sergeant?

11  A.    About seven months ago, I think, the best of my

12  knowledge.

13  Q.    And you said a Dr. Josey?

14  A.    That's right.

15  Q.    Do you remember when he told you?

16  A.    When?

17  Q.    Yes, sir.

18  A.    Two months ago.

19  Q.    So I guess the last seven months these doctors have

20  told you?

21  A.    That's right.

22  Q.    Any other doctors tell you?

23  A.    Well, I was told in '82 that I had it, but I never

24  followed up on it.

25  Q.    Who told you in '82?

—10—

1    A.     I can't remember the doctor.

2    Q.     Has any doctor ever told you that you're totally

3    disabled because of black lung?

4    A.     Yeah.  Well, they put me on oxygen 24 hours a day.

5    Q.     That was three months ago?

6    A.     Well, about seven months ago I was told I had black

7    lung.

8    Q.     Do you smoke, sir?

9    A.     No, I don't.

10   Q.     Have you ever smoked?

11   A.     Yes, I have.

12   Q.     When did you quit?

13   A.     It's been about 12, 14 year ago.

14   Q.     How long?

15   A.     Thirteen years.  Thirteen years, to be exact.

16   Q.     How long did you smoke before you quit?

17   A.     I don't remember the year.  I'd smoke a while and

18   quit a while.  So I can't -- I can't tell you a number.

19   Q.     Did you smoke as much as a pack per day?

20   A.     Sometimes.

21   Q.     Did you smoke more than a pack?

22   A.     No, I did not.

23   Q.     Do you take any medication for a heart condition or

24   blood pressure?

25   A.     Yes, I do, for a heart condition.

11

J.A. 113

1    Q.    Who treats you for your heart?

2    A.    Dr. Josey.

3    Q.    Do you take any medication for diabetes?

4    A.    No, I don't.

5    Q.    Did you file a Social Security Disability claim?

6    A.    Yes, I did.

7    Q.    And what's the nature of the disability?

8    A.    Well, I got that in 1990.

9    Q.    Is that the cancer?

10   A.    That's right.

11   Q.    Did you file a workers' comp claim on account of

12   your lungs?

13   A.    No, I did not.

14          MR. CHAFIN:  Mr. Mullins, I believe that's

15   all the questions I have for you.

16       Jerry, do you have any?

17          MR. MURPHEE:  No, I sure don't.

18          MR. CHAFIN:  Well, I certainly thank you

19   all for taking the time and answering these questions.

20          (DEPOSITION CONCLUDED.)

21

22

23

24

25

-12-

<u>CERTIFICATION OF REPORTER</u>

STATE OF KENTUCKY)
                 )
COUNTY OF MARTIN )

        I, DENISE M. GAUZE, the undersigned Notary
Public in and for the State of Kentucky at Large, certify
that the facts stated in the caption hereto are true; that
at the time and place stated in said caption, the witness
named in the caption hereto, after being by me duly sworn,
was examined by Counsel for the Defendant; that said
testimony was taken down in stenotype by me and later
reduced to a computer-aided transcription under my
supervision; and that the foregoing is a true and complete
record of the testimony given by said witness; and that the
witness has not read or signed the deposition because such
was waived in accordance with the Federal Rules of Civil
Procedure.

        My commission expires:  November 17, 2010.

        IN TESTIMONY WHEREOF, I have hereunto set my hand on
the 29th day of September, 2009.

                        _Denise M. Gauze_
                        DENISE M. GAUZE
                        NOTARY PUBLIC

---13---

J.A. 115

U. S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINER WORKERS' COMPENSATION

IN THE MATTER OF THE CLAIMANT FOR COMPENSATION)
UNDER THE FEDERAL BLACK LUNG BENEFITS REFORM  )
ACT OF 1977, (30 U.S.C., 901, et. seq.)        )
                                                )
                                                )
TURL MULLINS,                                   )
                              CLAIMANT)
                                                )
R B & F COAL INC. &                             )    OWCP NO.
DEBLIN COAL COMPANY,                            )    XXX-XX-0508
                              EMPLOYER)
                                                )
OLD REPUBLIC INSURANCE COMPANY,                 )
                              CARRIER )
                                                )
DIRECTOR, OFFICE OF WORKERS'                    PARTY IN)
COMPENSATION PROGRAMS                           INTEREST)

<u>NOTICE TO TAKE DEPOSITION</u>

NOTICE is hereby given that the Defendant-Employer will take the deposition herein, <u>BY SPEAKERPHONE</u>, as follows:

NAME OF WITNESS:      <u>Turl Mullins</u>

ADDRESS OF TAKING:    <u>CHAFIN LAW OFFICE, P.S.C.</u>
                      <u>290 East Court Street</u>
                      <u>Prestonsburg, Kentucky</u>

DATE OF TAKING:       <u>September 17, 2009</u>

TIME OF TAKING:       <u>2:30 p.m.</u>

Said deposition is to be used as evidence on behalf of the Defendant-Employer in the above styled action now pending for compensation under Federal Black Lung Benefits Reform Act of 1977 (30 U.S.C., 901, et seq).

J.A. 116

Respectfully submitted,

CHAFIN LAW OFFICE, P.S.C.
290 East Court Street
P. O. Box 700
Prestonsburg, Kentucky  41653
(606) 886-9511

John T. Chafin, Attorney

## CERTIFICATE OF SERVICE

This is to certify that true and correct copies of the foregoing Notice were mailed, postage prepaid, on this the 10th day of August, 2009, to Mr. Ron Carson, Stone Mountain Health Services, P. O. Drawer S, St. Charles, VA 24282; to Office of the Solicitor, U. S. Department of Labor, 618 Church Street, Suite 230, Nashville, TN 37219 and to Ms. Denise M. Gauze, Court Reporter, HC 88 Box 96, Inez, Kentucky  41224.

John T. Chafin, Attorney

**U.S. DEPARTMENT OF LABOR** 

**Employment Standards Administration**
**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Greater Johnstown Tech Park**
**1 Tech Park Drive, Suite 250**
**Johnstown, PA 15901-1267**
  **Phone: (814) 619-7777 or 1-800-347-3754**
  **FAX: (814) 619-7790**



| | |
|---|---|
| Miner's Name<br><br>Turl Mullins | Designated Responsible Operator<br><br>R B & F Coal Inc<br>P.O. Box 1439<br>Wise, VA 24293 |
| Claimant's Name<br><br>Turl Mullins | |
| Claimant's Address<br><br>10313 Robinson Road<br>Pound, VA 24279 | Insurer<br><br>Old Republic Insurance Company<br>PO Box 2200<br>Greensburg, PA 15601-2200 |
| DOL Claim Number<br><br>XXX-XX-0508 LM C | Date Issued<br><br>October 14, 2009 |

## SCHEDULE FOR THE SUBMISSION OF ADDITIONAL EVIDENCE

Turl Mullins filed an application for benefits under the Black Lung Benefits Act on 05/14/2009. We have reviewed the medical evidence developed under 20 C.F.R. § 725.405, and the evidence relevant to coal mine operator liability received under 20 C.F.R. § 725.408. A copy of our "Summary of Medical and Employment Evidence" is attached.

Based on a review of that evidence, we have made the following preliminary conclusions:

1.  The claimant would be entitled to benefits if we issued a decision at this time; and
2.  The coal mine operator named above is the responsible operator liable for the payment of benefits.

**Entitlement**

We have reviewed the evidence developed thus far. Our preliminary analysis is that the claimant would be entitled to benefits if we issued a decision at this time. Our analysis of the evidence and the reasons for our conclusions are set forth in the attached Summary. In addition, a "Guide for Submitting Additional Evidence" is attached, explaining the limitations on the quantity of evidence that each party may submit and the types of medical evidence sufficient to establish each element of entitlement.

The responsible operator may respond to this schedule by November 13, 2009, in the manner prescribed in 20 CFR 725.412(b) and either accept or reject the claimant's entitlement to benefits. If the responsible operator does not respond, it will be considered to have contested the claimant's entitlement, and will be liable for the cost of obtaining additional medical and other necessary evidence in the event that the claimant is ultimately found entitled to benefits. The Black Lung Disability Trust Fund will be liable for those costs if the claimant is ultimately found entitled to benefits and this office has not designated a responsible operator.

Director's Exh. No. 2
Consisting of ___ pages.

The claimant and the designated responsible operator listed above may now submit to this office additional medical evidence as to the claimant's entitlement. 20 C.F.R. § 725.414(a). After that evidence is submitted, and we complete any additional processing that we believe may be necessary (which may include an informal conference if all parties are represented and the other requirements of 20 C.F.R. § 725.416 are met), we will issue a proposed decision and order awarding or denying benefits. Any party dissatisfied with that decision and order may request a hearing before the Office of Administrative Law Judges at that time.

The regulations implementing the Black Lung Benefits Act do not require that parties submit any additional medical evidence on entitlement at this point. Instead, parties may wait until the case is referred to the Office of Administrative Law Judges following a request for a hearing. 20 C.F.R. § 725.456(b)(2). If no party submits additional medical evidence on entitlement to our office, we will base our proposed decision and order on the preliminary conclusions stated above.

Any party that wishes to submit medical evidence at this time should mail that evidence to this office, and a copy to the other parties to the claim, in accordance with the following schedule:

**December 13, 2009:**  Evidence that supports each party's position

**January 12, 2010:**  Evidence that responds to evidence submitted by another party

Either party may request that these time periods be extended by showing good cause. A request for extension must be filed before the dates listed above.

**Parties should take note that the amount of medical evidence that parties may submit is limited. 20 C.F.R. § 725.414. These limitations are explained in detail in the attached Guide. We encourage you to get advice from an attorney or other qualified representative before submitting any additional evidence. A claimant whose application is finally approved and who uses the services of an attorney in establishing entitlement may be entitled to a reasonable attorney's fee. If the designated responsible operator or the Trust Fund challenge the claimant's entitlement, and is ultimately determined to be liable, the responsible operator or the fund will also be liable for the claimant's attorney's fee. A claimant will not be liable for any attorney's fee if his or her claim is denied. However, a claimant may be liable for a fee if he or she is represented by a person other than an attorney. If a party is represented by a person other than an attorney, the party and the representative should complete and sign the enclosed authorization form (CM-1078), and return it to this office.**

The designated responsible operator has the right to require the miner to submit to a complete pulmonary evaluation. 20 C.F.R. § 725.414(a)(3)(i). This evaluation must take place within 100 miles of the miner's residence or at a location no farther from the claimant's residence than the distance that the miner traveled in order to obtain the complete pulmonary evaluation provided by the Department under 20 C.F.R. § 725.406, whichever is greater. A responsible operator may ask this office to approve a trip of greater distance.

<u>Liability</u>

Based on the evidence developed thus far, we have made a preliminary designation of R B & F Coal Inc as the responsible operator liable for the payment of benefits. Our analysis of that evidence and the reasons for our conclusions are set forth in the attached Summary.

The designated responsible operator may respond to this schedule by November 13, 2009, and accept or reject its designation. If the responsible operator does not respond, it will be deemed to accept its designation and to waive its right to contest its liability in any further proceedings.

The designated responsible operator listed above may now submit to this office additional documentary evidence relevant to liability, and may identify witnesses relevant to liability that the designated responsible operator intends to call if the case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.414(b), (c). Absent a showing of extraordinary circumstances, no documentary evidence relevant to liability, or testimony of a witness not identified at this stage of the proceedings, may be admitted into the record once a case is referred to the Office of Administrative Law Judges. 20 C.F.R. § 725.456(b)(1). In addition, the designated responsible operator may no longer submit evidence relevant to its status as a potentially liable operator; operators notified of their potential liability were

required to submit all such ____ence within 90 days after receiving notifi____on. 20 C.F.R. § 725.408(b)(2). Accordingly, the designated responsible operator may now submit only that evidence relevant to whether another potentially liable operator should have been designated the responsible operator. Other potentially liable operators may also submit evidence relevant to liability.

Any party that wishes to submit liability evidence or identify liability witnesses, must mail that evidence or identification to this office, and a copy to the other parties to the claim, in accordance with the following schedule:

**December 13, 2009:** Evidence that supports each party's position

**January 12, 2010:** Evidence that responds to evidence submitted by another party

Any party may request that these time periods be extended by showing good cause. A request for extension must be filed before the dates listed above.

After any additional evidence is submitted, we may undertake additional processing, including the notification of additional potentially liable operators and the designation of another responsible operator. After we conclude our processing, we will issue a proposed decision and order awarding or denying benefits. Any party dissatisfied with that decision and order may request a hearing before the Office of Administrative Law Judge.

Please contact our office if you need assistance or have questions about the "Schedule for the Submission of Additional Evidence" or any of the other documents we have enclosed.

Sincerely,

Evan Shourds
Evan Shourds
Claims Examiner

Enclosures:     Summary of Medical and Employment Evidence
                Copy of evidence
                Guide for Submitting Additional Evidence
                CM-2970
                Table of Coal Mine Industry Average Earnings

Service (by certified mail): Turl Mullins; Ron Carson; R B & F Coal Inc; Old Republic Insurance Company; John T Chafin, Esq.; Deblin Coal Company;


NOTE TO CLAIMANT: PLEASE SUBMIT AN ORIGINAL,(WHICH WE WILL COPY AND RETURN), OR A CERTIFIED COPY,(WITH THE RAISED SEAL OF THE ISSUING AGENCY) OF DUPREE'S BIRTH CERTIFICATE.



## SUMMARY OF MEDICAL AND EMPLOYMENT EVIDENCE
### (MINER'S CLAIM)

| Date Issued:  October 14, 2009 | DOL Claim No.:  XXX-XX-0508 LM C |
|---|---|
| Miner's Name:  Turl Mullins | Claimant's Name:  Turl Mullins |
| Coal Mine Company:  R B & F Coal Inc | Insurance Carrier:  Old Republic Insurance Company |

The claimant named above has filed an application under the Black Lung Benefits Act, 30 USC 901 et seq. We have received the medical and employment evidence summarized below. Based on a preliminary review of this evidence, we have concluded that <u>R B & F Coal Inc</u> is the responsible operator liable for the payment of any benefits in this claim. We have also concluded that the claimant would be entitled to benefits if we made a decision at this time. A summary of the medical and employment evidence and an analysis of the evidence are set forth below. Copies of all the evidence are attached to this document.

In order to qualify for black lung benefits, the claimant must prove the following facts:

- The claimant worked as a coal miner;
- The claimant has pneumoconiosis (black lung disease);
- The claimant's pneumoconiosis was caused at least in part by exposure to coal mine dust;
- The claimant has a totally disabling respiratory or pulmonary impairment; and
- The claimant's totally disabling impairment is caused at least in part by pneumoconiosis.

The evidence which we have received so far would support the following findings:

- (X)  The claimant worked as a coal miner for 20.23 years;
- (X)  The claimant has pneumoconiosis;
- (X)  The claimant's pneumoconiosis was caused at least in part by exposure to coal mine dust;
- (X)  The claimant has a totally disabling respiratory or pulmonary impairment; and
- (X)  The claimant's totally disabling impairment was caused at least in part by pneumoconiosis.

However, the evidence also indicates that:

- ( )  The claimant did not work as a coal miner;
- ( )  The claimant does not have pneumoconiosis;
- ( )  The claimant's pneumoconiosis was not caused by exposure to coal mine dust;
- ( )  The claimant does not have a totally disabling respiratory or pulmonary impairment; and
- ( )  The claimant's totally disabling impairment was not caused at least in part by pneumoconiosis.

# ENTITLEMENT ANALY

Based on the preliminary analysis of the medical evidence received to date, we have determined the following:

RELATIONSHIP/DEPENDENCY:

The claimant claims 2 dependents within the meaning of the Act.

The file includes a marriage certificate indicating that the miner married Deloris on October 24, 2008. Therefore, the requirements of 20 CFR 725.204(a)(1) and 725.205(a) and 725.205 (e) which relate to relationship and dependency are met.

A copy of Dubree's birth certificate was submitted. However, an acceptable original or a certified copy of Dubree's birth certificate was not submitted. Therefore, the requirements of 20 CFR 725.204, 725.205, 725.208 and 725.209 which relate to relationship and dependency are not met
Note: Acceptable proof of Dubree's disability has been submitted

PRESENCE OF PNEUMOCONIOSIS (BLACK LUNG DISEASE):

The medical evidence in the claim establishes the presence of pneumoconiosis. The presence of the disease is established by X-ray reading and corroborated by evidence of the disease based upon physical examination and a review of the objective testing. The requirements of 20 CFR 718.202 are met and, therefore, presence of the disease has been established.

20 CFR 718.202(a)(1) - established by x-ray

RELATIONSHIP OF BLACK LUNG DISEASE TO COAL MINE EMPLOYMENT:

The miner's pneumoconiosis was caused by his coal mine employment based upon the presumption in the regulations, 20 CFR 718.203(b) which states: If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment. The miner has established at least ten years of coal mine employment. A reasoned medical opinion also supports a finding that the disease arose at least in part out of coal mine employment. The presumption has not been rebutted.

20 CFR 718.203(b) - established by presumption

DISABILITY AND RELATIONSHIP OF DISABILITY TO BLACK LUNG DISEASE:

The results of breathing tests do not meet the regulatory standards to establish total disability. The results of the Arterial Blood Gas Studies do meet the disability standards as set forth in the regulations. For these studies to establish the presence of total disability under the regulations, that total disability must be DUE TO PNEUMOCONIOSIS. Since the presence of pneumoconiosis has been established, the claimant is considered to be disabled due to pneumoconiosis. The requirements of 20 CFR 718.204 are met and, therefore, total disability due to pneumoconiosis has been established.

20 CFR 718.204(b)(2)(ii) - established by ABG

20 CFR 718.204(b)(2)(iv) - established by reasoned opinion

Based upon the above, the claimant would be entitled to benefits.

**EMPLOYMENT EVIDENCE:**

The miner's Social Security Earnings Record establishes 20.23 years of coal mine employment for the period from April 1960 through December 31, 1990.

**LIABILITY ANALYSIS:**

R B & F Coal Inc has been named as the designated responsible operator based upon the following:

1. The designated responsible operator was an operator after 06/30/73 and employed the miner as a miner for not less than one year based upon Social Security Earnings Record.

2. The miner's employment with this operator included at least one working day after 12/31/69 based upon Social Security Earnings Record.

3. There is a rebuttable presumption that coal mine workers were exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility. The presumption has not been successfully rebutted.

4. This operator or its insurer is financially capable of assuming liability for the payment of benefits in accordance with 20 CFR 725.494(e).

5. This operator is not the operator that most recently employed the miner, but is the designated responsible operator because the miner worked for R B & F Coal Company in 1985 and 1986. The miner's Social Security Earnings Record establishes more than a year of coal mine employment with R B & F Coal Company. After leaving R B & F Coal Company, he worked for the following companies: 1. Wilder Coal Company in 1986, 1987 and 1988. Wilder Coal Company is out of business and not a viable operator. They were insured by Rockwood Insurance Company for the miner's dates of employment. However, due to Rockwood's bankruptcy and the fact that Wilder Coal Company is not a viable operator, the Department of Labor cannot name Wilder Coal Company as the responsible operator for this claim. 2. J & R Contractors, Inc. in 1988 and 1989. This company cannot be named as the responsible operator as the miner's Social Security Earnings Record establishes less than a full year of employment with this company. 3. A G M Coal Company, Inc. in 1989. This company cannot be named as the miner's Social Security Earnings Record establishes less than a full year of employment with this company. 4. Kim-Stan, Inc. in 1989 and 1990. Kim-Stan, Inc. was not insured for the miner's dates of employment and is no longer in business. Therefore, Kim-Stan, Inc. is not a viable operator. R B & F Coal Company is the last viable operator which employed the miner for a full year and has therefore, correctly identified as the responsible operator for this claim.  .

A Notice of Claim was received by the potentially liable operator/carrier, R B & F Coal, Inc on July 8, 2009, as evidenced by the signed return receipt from the post office. The potentially liable operator/carrier has failed to timely submit evidence to support its position or to timely request an extension of the period of time for submission of such evidence. Therefore, in accordance with 20 CFR 725.408(b), no documentary evidence relevant to the grounds set forth in the Operator Assertions - 20 CFR 725.408(a)(2) - may be admitted in any further proceeding.



# MEDICAL EVIDENCE

(The first letter of the letter codes with the test dates represent the submitting party for the evidence: "D" stands for Director (the Department of Labor), "R" for designated responsible operator, the employer, and "C" for claimant. The second letter of each code indicates if the evidence is Evidence of record or New evidence developed for this claim.)

**MINER:** Turl Mullins
**CLAIM NO.:** XXX-XX-0508 LM C

## X-ray Evidence

| X-RAY Film Date | Reread Date | Name of Reader | X-RAY Reader Qualifications | Film Quality | X-RAY Interpretation |
|---|---|---|---|---|---|
| 07/07/2009 | 07/07/2009 D-N | J R Forehand | B-reader | 1 | 2/2 |
| 07/07/2009 | 07/23/2009 D-N | S Navani | B-reader; Board-certified | 2 | |

## Pulmonary Function Study (PFS) Evidence

| Date | Physician | Age/ Height | FEV1 | MVV | FVC | FEV1 FVC | DISABILITY STANDARDS FEV1 | MVV | FVC | Valid? |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/07/2009 D-N | J. R. Forehand | 74/66.0 | 2.00 | | 2.93 | 68% | 1.57 | 063 | 2.04 | |

## Arterial Blood-gas (ABG) Evidence

| Date | Physician | Resting/ Exercise? | PCO2 | PO2 | PO2 Disability Standards | Altitude | Valid? |
|---|---|---|---|---|---|---|---|
| 07/07/2009 D-N | J. R. Forehand | Resting | 40.9 | 62.2 | 60.0 | 0-2999 | |
| | | Exercise | 40.5 | 43.1 | 60.0 | 0-2999 | Yes |

## Physical Examination/ Other Evidence

| Exam Date | Examining Physician/Qualifications | Findings |
|---|---|---|
| 07/07/2009 D-N | J. R. Forehand - Board-certified in Pediatrics; Subspecialty in Allergy & Immunology | Physical Exam - Coal Workers' Pneumoconiosis Cigarette smoker's lung disease Impairment – A significant respiratory impairment is present. Insufficient residual ventilatory capacity remains to return to last coal mining job. Unable to work. Totally and permanently disabled. Note: Principal cause of disability is coal workers' pneumoconiosis. Etiology - Coal Workers' Pneumoconiosis- Coal mine dust exposure Cigarette smoker's lung disease- cigarette smoking |

## Length of Coal Mine Employment

The claimant has proven **20.23** years of coal mine employment.

## GUIDE ⟶ R SUBMITTING ADDITIONAL MEDICAL EVIDENCE
### (MINER'S CLAIM)

In order to receive Black Lung benefits, you must prove four medical "facts":

- You have pneumoconiosis (black lung disease);
- Your pneumoconiosis was caused at least in part by exposure to coal mine dust;
- You have a totally disabling respiratory or pulmonary impairment; and
- Your totally disabling impairment was caused at least in part by your pneumoconiosis.

"Pneumoconiosis" is a chronic lung disease caused by inhaling coal mine dust. X-ray, biopsy, and (in the case of a deceased miner) autopsy evidence may show the presence of certain types of pneumoconiosis in the lungs. Pneumoconiosis may also be diagnosed by a physician who finds a lung disease present which is caused by inhaling coal mine dust. "Totally disabled" means you are unable to perform the type of work you did as a coal miner because of a breathing impairment. Pneumoconiosis "causes" your total disability if the disease has a "material adverse effect" on your respiratory or pulmonary condition, or "materially worsens" a totally disabling impairment which is caused by another disease.

**NOTE: The Black Lung benefits program has limitations on the amount of medical evidence which the parties can submit. You are encouraged to get advice from an attorney or other qualified representative before submitting any additional evidence.**

The Black Lung benefits program regulations contain important limitations on the amount of medical evidence parties to a claim may submit. The following guidelines explain the quantity and types of evidence which you and the responsible operator (or the Department of Labor) may submit. You may submit the following types of evidence to prove you are entitled to benefits.

- No more than two chest X-ray interpretations. You may submit two x-ray readings of one film, or one reading each of two different films. NOTE: The professional training of the doctor who interprets the X-ray is important. If the doctor is trained as a "B"-reader and/or board-certified radiologist, his or her interpretation may be given more weight than an interpretation by a doctor who is not specially trained;
- No more than one report of each biopsy;
- No more than one report of an autopsy (if a survivor is pursuing a claim filed by a miner who is now deceased);
- The results of no more than two pulmonary function studies and two arterial blood gas studies; and
- No more than two medical reports containing a physician's assessment of the miner's respiratory or pulmonary condition.

**NOTE:** When you filed your application, you selected a physician to conduct a complete pulmonary examination, and the Department of Labor paid the costs of that examination. At your request, we will send the results of the objective testing to the physician of your choice. If your physician provides a medical report for our consideration, that report will count as one of the two reports which you may submit.

You may also submit the following types of evidence:

- No more than one physician's interpretation of each chest X-ray, pulmonary function study, arterial blood gas study, autopsy report, or biopsy report submitted by the responsible operator or the Department of Labor;
- No more than one physician's assessment apiece of any other test or procedure submitted by the responsible operator or the Department of Labor;
- No more than one statement from any physician who originally interpreted the chest X-ray or performed a biopsy or autopsy for you if the responsible operator or the Department of Labor submits rebuttal evidence involving that evidence;
- No more than one additional statement from a physician who prepared a medical report submitted by you if the responsible operator's or Department's rebuttal evidence tends to undermine your physician's conclusions.
- You may also submit treatment records from a hospital, clinic, or physician if your treatment involved a lung condition. There is no limit on the number of treatment records which you may submit.

- In order to assist you, the "Guide" describes each medical fact which you must prove and the evidence which may prove the fact. When we consider the evidence you submit, we must also consider any other properly submitted evidence as well.

**DISEASE:** You must prove you have pneumoconiosis. You may submit any or all of the following types of evidence:

- A chest X-ray interpreted by a doctor as showing simple or complicated pneumoconiosis.

- A biopsy report of your lung tissue.

- (For a claim filed by a miner who is now deceased), an autopsy of the deceased miner which includes a review of his or her lungs.

- A doctor's report which is based on an accurate knowledge of your work and medical history, symptoms, and medical testing. The doctor's report should not be based only on chest X-rays. The doctor must explain why he or she believes your lung condition is caused by working as a coal miner.

Each X-ray, biopsy report, autopsy report, and/or medical report which you submit must also meet our requirements for the proper performance and reporting of these procedures and reports.

**CAUSALITY:** You must prove your pneumoconiosis was caused at least in part by exposure to coal mine dust.

- If you submit X-ray, biopsy and/or autopsy evidence indicating you have pneumoconiosis AND the employment evidence indicates you worked at least ten years as a coal miner you are entitled to a presumption that your Black Lung was caused by your exposure to coal mine dust. You are not required to submit any medical evidence. The Department of Labor or the responsible operator may submit evidence showing your Black Lung was not caused by exposure to coal mine dust. You may not exceed the limits on the amount of evidence required by the "Guide."

- If you submit X-ray, biopsy and/or autopsy evidence indicating you have pneumoconiosis AND the employment evidence indicates you worked fewer than ten years as a coal miner you must submit evidence that your exposure to coal mine dust caused your Black Lung. An X-ray which shows you have Black Lung is not enough to prove that coal mine dust exposure caused the disease. A doctor's opinion that your Black Lung was caused by coal mining may be enough proof if the doctor has an accurate understanding of your employment background. If you were exposed to dust, fumes or gasses in any work besides coal mining, the doctor must consider that exposure in his or her opinion. You may not exceed the limits on the amount of evidence required by the "Guide."

- If you submit a medical report from a physician who has diagnosed the presence of a lung disease you must submit evidence that your exposure to coal mine dust caused the lung disease at least in part. A doctor's opinion that your lung disease was caused by coal mining may be enough proof if the doctor has an accurate understanding of your employment background. If you were exposed to dust, fumes or gasses in any work besides coal mining, the doctor must consider that exposure in his or her opinion. You may not exceed the limits on the amount of evidence required by the "Guide."

**TOTAL DISABILITY:** You must prove that you have a totally disabling respiratory or pulmonary impairment. You may submit any or all of the following types of evidence:

- A chest X-ray, biopsy, or autopsy interpreted by a doctor as showing complicated pneumoconiosis.

- The results of no more than two pulmonary function studies. In order to show you are totally disabled, the test results must meet or fall below the table values contained in our regulations for your gender, height, and age on the day you take the test.

- The results of no more than two arterial blood gas studies. In order to show you are totally disabled, the test results must meet or fall below the table values contained in our regulations.

- A doctor's report which     ised on an accurate knowledge of your wo... and medical histories, symptoms, and medical testing. The doctor must explain why he or she believes your lung condition causes a totally disabling respiratory or pulmonary impairment which prevents you from performing your former work as a coal miner.

- Each X-ray, pulmonary function study, arterial blood gas study, and/or medical report which you submit must also meet our requirements for the proper performance and reporting of these studies and reports. The limitations on the amount of evidence which you may submit must be strictly observed.

**DISABILITY CAUSATION:** You must prove that your Black Lung is a "substantially contributing cause" of your totally disabling respiratory or pulmonary impairment. Proving that you are totally disabled is not enough to prove that Black Lung is one of the causes of your disability. A doctor's opinion may be sufficient to prove your Black Lung is the cause, or one of the causes, of your disability. The doctor should base his or her opinion on an accurate knowledge of your work and medical histories, symptoms, and medical testing. The doctor must explain why he or she believes your Black Lung causes, or contributes to, a totally disabling respiratory or pulmonary impairment which prevents you from performing your former work as a coal miner.

## OPERATOR RESPONSE SCHEDULE FOR SUBMISSION OF ADDITIONAL EVIDENCE

**U.S. DEPARTMENT OF LABOR**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| Miner's Name: | Claimant's Name: | Claim Number: | |
|---|---|---|---|
| **Turl Mullins** | **Turl Mullins** | **XXX-XX-0508 LM C** | OMB No.: 1215-0058 Expires: 12/31/2010 |
| Responsible Operator's Name: | Insurer's Name: | Policy No. | |
| **R B & F Coal Inc** | **Old Republic Insurance Company** | | **BC-58940** |

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.) (20 CFR 725.410). Please check appropriate boxes below. While you are not required to respond, if you fail to do so within 30 days after the District Director's issuance of the schedule for the submission of additional evidence naming you as the responsible operator, you shall be deemed to have accepted liability for this claim (that is, that you will be responsible for payment of any benefits to which the claimant is finally determined to be entitled) and to have waived your right to contest your liability in any further proceeding conducted with respect to this claim. You also will be deemed to have contested the claimant's entitlement to benefits.

### A. Liability

The named responsible operator:

☐ Agrees it is the responsible operator within the meaning of the Black Lung Benefits Act, liable for any benefits to which the claimant is finally determined to be entitled.

☐ Disagrees with its designation as the responsible operator liable for the claim.

If you disagree, the schedule for the submission of additional evidence advises you of the time period within which you may submit evidence relevant to your liability, subject to the limitations imposed by 20 C.F.R. 725.408(b)(2). Absent extraordinary circumstances, **no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to this claim unless it is submitted to the District Director in compliance with a schedule for the submission of additional evidence.**

### B. Claimant's Entitlement

The named responsible operator:

☐ Accepts the claimant's entitlement to benefits.

☐ Contests the claimant's entitlement to benefits.

If you do not accept the claimant's entitlement to benefits, the schedule for the submission of additional evidence will advise you of the time period within which you may submit evidence relevant to the claimant's entitlement. If you enter no response in this section, you will be deemed to have contested the claimant's entitlement to benefits.

| Name and Address of Firm Completing Form | Name of Person Completing Form |
|---|---|
| | Title |
| | Signature | Date |

### Public Burden Statement

We estimate that it will take an average of 20 minutes to complete this collection of information, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210. Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

**DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.**

Form CM-2970
Rev Jan. 2001

J.A. 128

## Table of Coal Mine Industry Average Earnings

| ANTHRACITE | | BITUMINOUS | | | |
|---|---|---|---|---|---|
| YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD | YEAR | YEARLY EARNINGS STANDARD |
| 1937 | 693.75 | 1937 | 585 00 | 1973 | 5898.75 |
| 1938 | 657.50 | 1938 | 525 00 | 1974 | 6080.00 |
| 1939 | 705.00 | 1939 | 598.75 | 1975 | 7405.00 |
| 1940 | 648.75 | 1940 | 617.50 | 1976 | 8008.75 |
| 1941 | 657.50 | 1941 | 750 00 | 1977 | 8987.50 |
| 1942 | 705.00 | 1942 | 857.50 | 1978 | 10038.75 |
| 1943 | 648.75 | 1943 | 1057.50 | 1979 | 10878.75 |
| 1944 | 733.75 | 1944 | 1267.50 | 1980 | 10927.50 |
| 1945 | 876.25 | 1945 | 1315.00 | 1981 | 12100 00 |
| 1946 | 1,060.00 | 1946 | 1362.50 | 1982 | 12698.75 |
| 1947 | 1,262.50 | 1947 | 1606.25 | 1983 | 13720 00 |
| 1948 | 1,342.50 | 1948 | 1691.25 | 1984 | 14800 00 |
| 1949 | 1,447.50 | 1949 | 1465 00 | 1985 | 15250 00 |
| 1950 | 1,553.75 | 1950 | 1633.75 | 1986 | 15390 00 |
| 1951 | 1,692.50 | 1951 | 1915 00 | 1987 | 15750 00 |
| 1952 | 1,750.00 | 1952 | 1880 00 | 1988 | 15940 00 |
| 1953 | 1,695.00 | 1953 | 2097.50 | 1989 | 16250 00 |
| 1954 | 1,775.00 | 1954 | 2022.50 | 1990 | 16710 00 |
| 1955 | 1,935.00 | 1955 | 2275.00 | 1991 | 17080 00 |
| 1956 | 2,083.75 | 1956 | 2472.50 | 1992 | 17200 00 |
| 1957 | 2,172.50 | 1957 | 2581.25 | 1993 | 17260 00 |
| 1958 | 2,130.00 | 1958 | 2415 00 | 1994 | 17760 00 |
| 1959 | 2,183.75 | 1959 | 2661.25 | 1995 | 18440 00 |
| 1960 | 2,266.35 | 1960 | 2687.50 | 1996 | 18740.00 |
| | ** | 1961 | 2645.00 | 1997 | 19010.00 |
| | ** | 1962 | 2717.50 | 1998 | 19160.00 |
| | ** | 1963 | 2835 00 | 1999 | 19340.00 |
| | ** | 1964 | 3031.25 | 2000 | 19090.00 |
| | ** | 1965 | 3222.50 | 2001 | 19040.00 |
| | ** | 1966 | 3438.50 | 2002 | 19640.00 |
| | ** | 1967 | 3662.50 | 2003 | 19900.00 |
| | ** | 1968 | 3801.25 | 2004 | 21570.00 |
| | ** | 1969 | 4261.25 | 2005 | 22060.00 |
| | | 1970 | 4777.50 | 2006 | 22080.00 |
| | | 1971 | 5008.75 | 2007 | 21960.00 |
| | | 1972 | 5576.25 | 2008 | 23270.00 |

* Figures for 1937-1970 were published by the Bureau of Census. Those for 1971 to present were published by the Bureau of Labor Statistics. All figures are based on annual industry wage survey. After 1990, the Bureau of Labor Statistics stopped keeping records on an annual basis. Standards from that year on are based on multiplying the average hourly rate by 1000 hours. A "year" as defined here is 125 working days.

** After 1960, average wage standards are the same for anthracite and bituminous mines.



# CHAFIN LAW OFFICE, P.S.C.

290 E. COURT STREET
P.O. BOX 700
PRESTONSBURG, KENTUCKY 41653-0700
TELEPHONE 606-886-9511
FAX 606-886-9644

JOHN T. CHAFIN
jtchafin@bellsouth.net

October 19, 2009

Mr. Evan Shourds
U.S. Department of Labor
ESA/OWCP/DCMWC
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267

Re:     **Turl Mullins vs. R B & F Coal Company**
        OWCP # ████0508

Dear Mr. Shourds:

This will acknowledge receipt of the schedule for the submission of additional evidence issued on October 14, 2009, and provide you with a response of the Employer.

The Employer disagrees that R B & Coal is the correct responsible operator. It is undisputed that the claimant's last year of accumulative employment of not less than one year was with Wilder Coal Company. The District Director has failed to name the owners, officers and directors of Wilder Coal as required by <u>Donovan</u> v. <u>McGee</u>.

The Employer disagrees with the finding that the claimant suffers from pneumoconiosis which was caused at least in part due to coal dust exposure. The Employer disagrees with the finding that the claimant is totally disabled due to pneumoconiosis. The opinion of Forehand is simply not credible nor well reasoned.

In addition to the controversion form previously filed in this matter, the Employer attaches its additional objects to the evidence under the new regulations.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

John T. Chafin

John T. Chafin

JTC/mch

cc:     Mr. Ron Carson
        Ms. Chris Terrill 1109866

Director's Exh. No. 29
Consisting of 5

J.A. 130

**OPERATOR RESPONSE**
**SCHEDULE FOR SUBMISSION OF**
**ADDITIONAL EVIDENCE**

**U.S. DEPARTMENT OF LABOR**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



| Miner's Name: | Claimant's Name: | Claim Number: | |
|---|---|---|---|
| **Turl Mullins** | **Turl Mullins** | **XXX-XX-0508 LM C** | OMB No.: 1215-0058<br>Expires: 12/31/2010 |
| Responsible Operator's Name: | Insurer's Name: | Policy No. | |
| **R B & F Coal Inc** | **Old Republic Insurance Company** | **BC-58940** | |

This report is authorized by the Black Lung Benefits Act, as amended (30 U.S.C. 901 et seq.) (20 CFR 725.410). Please check appropriate boxes below. While you are not required to respond, if you fail to do so within 30 days after the District Director's issuance of the schedule for the submission of additional evidence naming you as the responsible operator, you shall be deemed to have accepted liability for this claim (that is, that you will be responsible for payment of any benefits to which the claimant is finally determined to be entitled) and to have waived your right to contest your liability in any further proceeding conducted with respect to this claim. You also will be deemed to have contested the claimant's entitlement to benefits.

## A.  Liability

The named responsible operator:

☐  Agrees it is the responsible operator within the meaning of the Black Lung Benefits Act, liable for any benefits to which the claimant is finally determined to be entitled.

☒  Disagrees with its designation as the responsible operator liable for the claim.

If you disagree, the schedule for the submission of additional evidence advises you of the time period within which you may submit evidence relevant to your liability, subject to the limitations imposed by 20 C.F.R. 725.408(b)(2). Absent extraordinary circumstances, **no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to this claim unless it is submitted to the District Director in compliance with a schedule for the submission of additional evidence.**

## B.  Claimant's Entitlement

The named responsible operator:

☐  Accepts the claimant's entitlement to benefits.

☒  Contests the claimant's entitlement to benefits.

If you do not accept the claimant's entitlement to benefits, the schedule for the submission of additional evidence will advise you of the time period within which you may submit evidence relevant to the claimant's entitlement. If you enter no response in this section, you will be deemed to have contested the claimant's entitlement to benefits.

| Name and Address of Firm Completing Form | Name of Person Completing Form |
|---|---|
| *CHAFIN LAW OFFICE*<br>*P.O. BOX 700*<br>*Prestonsburg, Ky 41653* | *JOHN T. CHAFIN*<br>Title<br>*ATTORNEY*<br>Signature *John T. Chafin* — Date *10/15/09* |

### Public Burden Statement

We estimate that it will take an average of 20 minutes to complete this collection of information, including time for reviewing instructions, searching existing data resources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect to this collection of information, including suggestions for reducing this burden, send them to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210. Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

**DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.**

Form CM-2970
Rev Jan. 2001

## EMPLOYER & CARRIER'S OBJECTION
## TO THE DEPARTMENT OF LABOR'S SCHEDULE OF SUBMISSION
## OF ADDITIONAL EVIDENCE

Comes the Employer and Carrier, R F B Coal Company and Old Republic Insurance Company and files its objection to the schedule for submission of additional evidence as follows:

1) **Objections to the Schedule for the Submission of Additional Evidence**

   A. The "preliminary conclusions" set forth in the schedule result in the denial of employer and carrier's due process right to a fair hearing by pre-judging what the evidence would show prior to the submission of responsive proof.

   B. The schedule does not set forth the proper standard for disability or disability causation or liability under the Act or applicable regulations.

   C. The limitations on evidence referenced in the schedule and imposed by the regulations violate the Administrative Procedure Act, are arbitrary capricious, an abuse of discretion and are otherwise inconsistent with law. The imposition of those limitations has no factual basis or support, especially where, as here, the limitations are imposed before any evidence is submitted. The limitations further deprive employer and carrier of their right to present a defense that is best suited to this particular claim.

   D. The Guide for submitting additional medical evidence is confusing in that it initially does not identify the proper standard for pneumoconiosis, disability or disability causation and even in parts of the explanatory section does not identify the proper standard for establishing pneumoconiosis by medical opinions.

   E. The Guide's description of causality is confusing in describing the Department of Labor or Responsible Operator's obligations.



(2)  Objections to the Regulations Governing the Designation as Responsible Operator

    A.   The requirement that the employer and carrier bear the burden of proving that they are not responsible for the payment of benefits, if any, impermissibly shifts the burden of proof in violation of <u>Director, OWCP v. Greenwich Collieries,</u> 512 U.S. 267 (1994) and the Administrative Procedure Act.

    B.   The requirement that employer and carrier prove that they are not responsible for the payment of benefits is unfair, where the named employer and carrier have no access to the financial information or insurance information needed to defend against their designation and have no access to the names of potential witnesses that may have information on this issue. The Department has the obligation to conduct a proper investigation to determine the identity of the correct responsible party or parties to this claim. Department of Labor's attempt to shift this responsibility to employer is illegal and unfair and the burden cannot reasonably be carried in the brief time period allowed.

3)  Objections to the Department's Evidence

    A.   Employer and Carrier object to the Department of Labor's failure to have the film read by a doctor who is either a board-certified or board-eligible radiologist or B-reader that under 30 U.S.C. § 923(b).

4)  Objections to the New Regulations

    A.   Even if a "new" claim, i.e., a claim filed after January 19, 2001, we object to the application of the new regulations for each of the following reasons, as applicable:

    B.   The new regulations are neither authorized by nor comply with the Black Lung Benefits Act or Longshore Act and are therefore invalid.

    C.   The new regulations impermissibly shift the burdens of proof specified in the Administrative Procedure Act and therefore violate <u>Director, OWCP v. Greenwich Collieries,</u> 512 U.S. 267 (1994).

D.  The new regulations violate employer and carrier's right to a full and fair hearing before an administrative law judge, by precluding the consideration or relevant evidence, limiting the parties' right to submit relevant and probative evidence, limiting the parties' right to cross-examine adverse evidence in light of a complete record and imposing formal and technical rules or evidence and procedure.

E.  The new eligibility criteria are arbitrary and capricious and an abuse of discretion.

F.  The imposition of civil penalties not authorized by Congress and not supported by any proper justification or benefit is arbitrary and capricious and an abuse of discretion.

G.  The new regulations relating to evidence and procedure treat claimants and claims defendants unequally and thus violate the Administrative Procedure Act, 5 U.S.C. § 559.

H.  The new regulations were not promulgated in keeping with the intent of 5 U.S.C. § 553, §§ 603-604.

I.  The new regulations deprive employer and carrier of property or rights without due process of law in violation of the Fifth Amendment to the U.S. Constitution by precluding ordinary notions of finality, by increasing the benefits or other costs owed without valid reason, by denying the right to a full and fair adjudication of claims, by impinging upon the rights of employers and carriers to enter into lawful contracts without a valid reason, by imposing civil penalties for actions that do not warrant punishment and by impairing rights under contacts lawfully entered into by the parties.



# CHAFIN LAW OFFICE, P.S.C.

290 E. COURT STREET
P.O. BOX 700
PRESTONSBURG, KENTUCKY 41653-0700
TELEPHONE 606-886-9511
FAX 606-886-9644

JOHN T. CHAFIN
jtchafin@bellsouth.net

October 21, 2009

Mr. Evan Shourds
U.S. Department of Labor
ESA/OWCP/DCMWC
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267

Re:    Turl Mullins vs. R B & F Coal Company and Deblin Coal Company
       OWCP #█████0508

Dear Mr. Shourds:

The purpose of this correspondence is to address several concerns resulting from communication between Chris Terrill of Old Republic Insurance Company and yourself.

First of all, Ms. Terrill indicates that you have advised that Deblin Coal is still being considered as the responsible operator in this matter. The schedule which was issued on October 14, 2009, only designated RB & F Coal. It would appear that if Deblin is to be considered as party then it must be placed upon notice and designated as such in an appropriate pleading. We believe that it would be prudent that Deblin would be issued a separate schedule which designates them as a responsible operator and allow sufficient opportunity to respond.

We would also direct your attention to our correspondence of August 25, 2009, a copy of which is again enclosed for your record. We requested that you provide us with the factual and legal basis for your determination that due to Rockwood's bankruptcy the BUL cannot name Wilder Coal as the responsible operator. We also noted our belief that the Guaranty Fund should be designated as a party. There has been no response from the District Director considering this request. We ask that you immediately address the same and designate Rockwood and the Guaranty Fund as parties to this matter.

The third issue concerns an alleged adult disabled child, namely, Dubree Mullins, whose date of birth appears to be ████████. In reviewing the documentation provided from your office it indicates that there was an entitlement onset date of February 1987 with a disability onset of January 1, 1986. It is our understanding that Turl Mullins continued working until 1990. Since the social security number is different from that of Mr. Mullins, it would appear that the disability benefits maybe on the child's mother rather than the claimant.

Director's Exh. No. 30
Consisting of 2 pages

Mr. Evan Shourds
Page 2
October 21, 2009

We specifically asked Mr. Mullins during the course of his deposition whether he had any dependent children. He responded no. We propounded interrogatories which set forth the following:

> "Please state the names, social security number and dates of birth of all persons dependent upon you for support. If you are claiming a disabled child as a dependent, please provide a copy of the Social Security Departments Findings."

> Response: Wife, Deloris, DOB ███████"

There was no mention of Dubree as a dependent. It is not known how Dubree can be considered as an adult dependent child without the claimant requesting the same.

In any event, if Dubree is being considered as an adult dependent child, then the Employer is entitled to know the nature of the disability and to schedule him for an examination concerning his disability. We will need additional time in order to do so.

Please address these issues with appropriate rulings.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

John T. Chafin

JTC/mch

cc:    Hon. Ron Carson
       Ms. Chris Terrill 1109866 & 1109867

**U.S. DEPARTMENT OF LABOR**

**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Greater Johnstown Tech Park**
**1 Tech Park Drive, Suite 250**
**Johnstown, PA 15901-1267**



May 24, 2010

**Phone:   (814) 619-7777 or 1-800-347-3754**
**Telefax:  (814) 619-7790**

MINER: Turl Mullins
CLAIM NO.: XXX-XX-0508 LM C

R B & F Coal Inc
P.o.box 1439
Wise, VA 24293

Dear Sir/Madam:

If you agree with the Proposed Decision and Order awarding benefits, you should have an authorized officer of you organization sign and return to this Office the Agreement to Pay Benefits (Form CM-941). Payment of benefits, in accordance with the rates shown in the Proposed Decision and Order, should begin by the 15th of the month following the month for which the benefits are payable and should include any accrued benefit amount, in accordance with the rates shown in the Proposed Decision and Order.

Benefits shall be considered due after the issuance of an effective order requiring the payment of benefits by the District Director. The Proposed Decision and Order becomes effective on the thirtieth (30th) day after issuance if no party timely requests revision or a hearing.

If you wish to contest the Proposed Decision and Order, you must file a written request for revision or request a hearing within 30 days after the date of issuance of the Proposed Decision and Order. You must specify the findings and conclusions with which you disagree. The record will remain open for thirty (30) days unless extended for good cause by the District Director.

If you fail to respond within 30 days, the Proposed Decision and Order will become a final Decision and Order. All rights to further proceedings with respect to the claim shall be considered waived, except as provided in 20 CFR 725.310.

Sincerely,

Mary N. Kuzilla

Mary T. Kuzilla
Claims Examiner

cc: Turl Mullins; Ron Carson; R B & F Coal Inc; Old Republic Insurance Company; John T Chafin, Esq.

Enclosures:     CM-906, Notice of First Payment of Benefits
CM-941, Agreement to Pay Benefits
CM-971d, Benefit Rate Table

Director's Exh. No. _36_
Consisting of _14_ pages.

**U.S. DEPARTMENT OF LABOR**    Office of Workers' Compensation
Division of Coal Mine Workers' Compensation
Greater Johnstown Tech Park
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267
Phone: (814) 619-7777 or 1-800-347-3754
FAX: (814) 619-7790



In the Matter of the Claim for Benefits Under the
Black Lung Act

Turl Mullins
Claimant

v.

R B & F Coal Inc
Responsible Operator

and

Director, Office of Workers' Compensation Programs

**PROPOSED DECISION AND ORDER**
**Award of Benefits-Responsible Operator**

MINER: Turl Mullins
CLAIM NO.: XXX-XX-0508 LM C

Such development, examination, investigation, and review as is deemed necessary pursuant to the Black Lung Benefits Act having been completed and duly considered, the District Director makes the following:

## FINDINGS OF FACT AND CONCLUSION OF LAW

1. That Turl Mullins, born ████████ hereinafter referred to as the miner, was employed as a coal miner in the Nation's coal mines for 20 years, from January 1, 1960 to December 31, 1990;

2. That notice of disability and written claim for benefits was timely filed on May 14, 2009;

3. That as a result of the conditions of his coal mine employment, the miner contracted pneumoconiosis, as that term is defined in the Act and the Regulations;

4. That such disease has caused a breathing impairment of sufficient degree to establish total disability, within the meaning of the Act and the Regulations;

5. That R B & F Coal Inc is the coal mine operator designated as responsible for payment of benefits due the claimant;

J.A. 138

 

PROPOSED DECISION AND ORDER AWARDING BENEFITS
Miner: Turl Mullins
Claim No.: XXX-XX-0508 LM C
Page: 2

6.  That the following previously named operators are dismissed as parties to this claim: Deblin Coal
    Company

7.  That the claimant is entitled to receive benefits on his/her own behalf and augmented on behalf of the
    following dependent(s).

| Dependent Name | Date of Birth | Relationship | Entitlement | |
| --- | --- | --- | --- | --- |
| | | | Start | End |
| Deloris | ███████ | Wife | 05/2009 | continuing |

at the following rates:

| From | To | No. of Mos. | Monthly Rate | Total |
| --- | --- | --- | --- | --- |
| 05/2009 | 12/2009 | 8 | $924.50 | $7,396.00 |
| 01/2010 | 04/2010 | 4 | $938.30 | $3,753.20 |

|  | Total | $11,149.20 |
| --- | --- | --- |

And continuing at the monthly rate of $938.30, to be paid on the fifteenth day of the month following the month for
which the benefits are due.

Based upon the foregoing Findings of Fact and Conclusions of law, the District Director makes the following:

### AWARD

That R B & F Coal Inc shall pay to the claimant in the amount of $11,149.20 representing all benefits due up to and
including April 2010, and shall thereafter continue to pay benefits to the claimant at the rate of $938.30 per month,
subject to the limitations of the Act.

The designated responsible operator is also liable for the payment of all fees, charges, and other reasonable expenses
incurred by the miner/claimant in developing the claim and for such medical examination, treatment, service,
medicine and apparatus required due to the miner's disability.

Within 30 days after the date of issuance of this Proposed Decision and Order, any party may file a written request for
revision or request a formal hearing before the Office of Administrative Law Judges. The party must specify the
findings and conclusions with which they disagree, and shall serve the written request on the District Director and all
other parties.

Signed in the office of the District Director on May 24, 2010

*Mary T. Kuzilla*

Mary T Kuzilla
Claims Examiner

## PROOF OF SERVICE

Claimant: Turl Mullins

Claim No.: XXX-XX-0508 LM C

### CERTIFICATION

I hereby certify that on May 24, 2010, the Decision and Order was filed in the office of the District Director and a certified copy mailed to the parties and their representatives at the addresses listed below.

This Order becomes final and effective thirty (30) days from the date printed on this Proof of Service, unless a party to the claim submits a timely request for revision or hearing before an Administrative Law Judge. If payment is not made within thirty (30) days following the date that this Order becomes final and effective, the responsible operator becomes liable for interest, as provided in the regulations at 20 C.F.R. 725.608. In addition, if payment is not made within ten (10) days after the 15th day of the month following the month for which benefits are payable, a penalty in the amount of 20% of the total compensation award will be due the claimant, in accordance with Section 14(f) of the Longshore and Harbor Workers' Compensation Act (LHWCA), as incorporated by Section 422(a) of the Black Lung Benefits Act, and 20 C.F.R. 725.607.

**NOTICE TO CLAIMANT**

Once a final award has been issued (an award becomes final if no party files a timely request for revision or appeal) the claimant may apply for enforcement of any interest and/or penalty due from the operator, if the operator failed to make timely payment of compensation, as specified above. The 20 percent additional compensation is payable by the operator even if the effective award is overturned on appeal.

To apply for enforcement of interest and/or penalty, the beneficiary must file suit in the Federal District Court for the district in which the injury occurred (typically, the district in which the miner's last coal mine employment took place).

Mary T Kuzilla
Claims Examiner

See the following page for a list of parties served this notice.

J.A. 140

**CERTIFIED MAIL**

Turl Mullins
P O Box 1124
Pound, VA  24279

Ron Carson
Stone Mountain Health Services
PO Drawer S
St Charles, VA  24282

R B & F Coal Inc
P.o.box 1439
Wise, VA 24293

Old Republic Insurance Company
PO Box 2200
Greensburg, PA 15601-2200

John T Chafin
290 E Court Street
PO Box 700
Prestonsburg, KY 41653-0700

**CERTIFICATE OF FIRST PAYMENT OF BENEFITS**

**U.S. DEPARTMENT OF LABOR**
OFFICE OF WORKERS' COMPENSATION PROGRAMS

NOTE: Within ten days after the first payment is made, file the original of this certificate with the initiating office. Send a copy to the person receiving benefits. The Black Lung Benefits Act (30 U.S.C. 901 et.seq) requires this report. Failure to report can result in a civil penalty of not more than $500 for each failure or refusal.

| 1. Name of Disabled or Deceased Coal Miner | 2. Miner's Claim Number |
|---|---|
| Turl Mullins | XXX-XX-0508 LM C |

3. Name and Address of Person to Whom the Check is Made Payable (The Payee)
Turl Mullins
P O Box 1124
Pound, VA  24279

4. Name and Address of Coal Mine Operator
R B & F Coal Inc
P.o.box 1439
Wise, VA 24293

Name and Address of Insurance Carrier
Old Republic Insurance Company
PO Box 2200
Greensburg, PA 15601-2200

6. Name(s) of Dependent(s) of Disabled or Deceased Coal Miner

Deloris

7. a. Last date DOL will issue a benefit check _____ / / _____
(month/day/year)

b. Responsible Operator to reimburse the Trust Fund (Interim Benefits)  for _____ (dates)

c. Responsible Operator to begin payment for    $ _____ (amount)
May 2010 (month/year)

d. Responsible Operator to pay lump sum to claimant    $ _____ $938.30 _____ (amount)
05/2009 - 04/2010 (dates)

e. Responsible Operator to reimburse the Trust Fund for:    $ _____ $11,149.20 _____ (amount)

medical costs  $ _____ (amount)

interest  $ _____ (amount)

☒  You will be notified of medical costs and interest at a future date.

☐  I hereby certify that I AGREE with the information contained in Item 7 of this form and that payments have been  initiated as indicated above.

☐  I hereby certify that I DISAGREE with the information contained in ITEM 7 of this form but have initiated benefits.

_____
Signature of Person Authorized to Sign for Coal Mine Operator or Insurance Carrier

_____
Date

_____
Print Name and Title

_____
Address

_____
Phone Number

CM-906
Rev. 10/83

J.A. 142

**U.S. DEPARTMENT OF LABOR**

**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Greater Johnstown Tech Park**
**1 Tech Park Drive, Suite 250**
**Johnstown, PA 15901-1267**
**Phone: (814) 619-7777 or 1-800-347-3754**
**FAX: (814) 619-7790**



In the matter of the claim for benefits
under the Black Lung Benefits Act

AGREEMENT TO PAY BENEFITS

Claim Number: XXX-XX-0508 LM C

Turl Mullins
            Claimant

R B & F Coal Inc
            Coal Mine Operator

Old Republic Insurance Company
Insurance Carrier

The above-named Coal Mine Operator and/or Insurance Carrier agrees to pay
benefits and other costs and expenses pursuant to the Black Lung Benefits Act
(30 U.S.C., 931 et seq.), based upon the finding by the Department of Labor of
the claimant's eligibility to be paid benefits on his or her own behalf and on
behalf of the following dependents:  Deloris

A Proposed Decision and Order issued by a District Director becomes effective
on the 30th day after issuance of the Proposed Decision and Order if no party
timely requests revision or a hearing. (20 C.F.R. 725.505(a)(2)) At that time
benefits become due.

The Responsible Coal Mine Operator agrees to begin to pay benefits by the 15th
day of the month following the month that such benefit payments become due and
to reimburse the Black Lung Disability Trust Fund for any benefit payments made
and any medical development expenses incurred. (20 C.F.R. 725.502(b)(1))
The first payment will include benefits which have accrued from May 1, 2009,
with subsequent payment of benefits to be made on the fifteenth (15th) day of
each month thereafter.

The Responsible Coal Mine Operator understands and agrees that this document
may be the basis for the issuance of an Award of Benefits and Order to Pay
benefits in this claim.  Notice of First Payment of Benefits (CM-906) should
follow this statement.

Signature of Authorized Officer          Date

Name and Title

CM-941
Rev. Nov 2001

J.A. 143

## TABLE OF MONTHLY BLACK LUNG BENEFIT RATES

| | PRIMARY | +1 | +2 | +3 |
|---|---|---|---|---|
| 07/01/73 – 09/30/73 | $ 169.80 | $ 254.70 | $ 297.10 | $ 339.50 |
| 10/01/73 – 09/30/74 | 177.60 | 266.40 | 310.80 | 355.20 |
| 10/01/74 – 09/30/75 | 187.40 | 281.10 | 328.00 | 374.80 |
| 10/01/75 – 09/30/76 | 196.80 | 295.20 | 344.40 | 393.50 |
| 10/01/76 – 09/30/77 | 205.40 | 308.10 | 359.50 | 410.80 |
| 10/01/77 – 09/30/78 | 219.90 | 329.80 | 384.80 | 439.70 |
| 10/01/78 – 09/30/79 | 232.00 | 348.00 | 405.90 | 463.90 |
| 10/01/79 – 09/30/80 | 254.00 | 381.00 | 444.50 | 508.00 |
| 10/01/80 – 09/30/81 | 279.80 | 419.60 | 489.60 | 559.50 |
| 10/01/81 – 09/30/82 | 293.20 | 439.80 | 513.10 | 586.40 |
| 10/01/82 – 12/31/83 | 304.90 | 457.40 | 533.60 | 609.80 |
| 01/01/84 – 12/31/84* | 317.10 | 475.60 | 554.90 | 634.20 |
| 01/01/85 – 12/31/86 | 328.20 | 492.30 | 574.30 | 656.40 |
| 01/01/87 – 12/31/87 | 338.00 | 507.00 | 591.50 | 676.00 |
| 01/01/88 – 12/31/88 | 344.80 | 517.20 | 603.40 | 689.50 |
| 01/01/89 – 12/31/89 | 358.90 | 538.40 | 628.10 | 717.80 |
| 01/01/90 – 12/31/90 | 371.80 | 557.70 | 650.70 | 743.60 |
| 01/01/91 – 12/31/91 | 387.10 | 580.60 | 677.40 | 774.10 |
| 01/01/92 – 12/31/92 | 403.30 | 605.00 | 705.80 | 806.60 |
| 01/01/93 – 12/31/93 | 418.20 | 627.30 | 731.90 | 836.40 |
| 01/01/94 – 12/31/95 | 427.40 | 641.10 | 748.00 | 854.80 |
| 01/01/96 – 12/31/96 | 435.10 | 652.70 | 761.50 | 870.20 |
| 01/01/97 – 12/31/97 | 445.10 | 667.70 | 779.00 | 890.20 |
| 01/01/98 – 12/31/98 | 455.40 | 683.10 | 796.90 | 910.70 |
| 01/01/99 – 12/31/99 | 469.50 | 704.30 | 821.60 | 939.00 |
| 01/01/00 – 12/31/00 | 487.40 | 731.00 | 852.80 | 974.70 |
| 01/01/01 – 12/31/01 | 500.50 | 750.80 | 875.90 | 1001.00 |
| 01/01/02 – 12/31/02 | 518.50 | 777.80 | 907.40 | 1037.00 |
| 01/01/03 – 12/31/03 | 534.60 | 801.90 | 935.50 | 1069.20 |
| 01/01/04 – 12/31/04 | 549.00 | 823.50 | 960.80 | 1098.00 |
| 01/01/05 – 12/31/05 | 562.80 | 844.10 | 984.80 | 1125.50 |
| 01/01/06 – 12/31/06 | 574.60 | 861.80 | 1005.50 | 1149.10 |
| 01/01/07 – 12/31/07 | 584.40 | 876.50 | 1022.60 | 1168.70 |
| 01/01/08 – 12/31/08 | 599.00 | 898.40 | 1048.10 | 1197.90 |
| 01/01/09 – 12/31/09 | 616.30 | 924.50 | 1078.50 | 1232.60 |
| 01/01/10 – | 625.60 | 938.30 | 1094.70 | 1251.10 |

*These benefit rates include the additional one-half percent increase that was granted retroactive to January 1, 1984.  The following rates were in effect prior to the retroactive payments:

| 01/01/84 - 06/30/84 | $315.60 | $473.30 | $552.20 | $631.10 |
|---|---|---|---|---|

Form CM-971d
Rev. January 2009



## SUMMARY OF MEDICAL AND EMPLOYMENT EVIDENCE
## PROPOSED DECISION AND ORDER

Date Issued: May 24, 2010
Miner's Name: Turl Mullins
Responsible Operator: R B & F Coal Inc

DOL Claim No.: XXX-XX-0508 LM C
Claimant's Name: Turl Mullins
Insurance Carrier: Old Republic Insurance
Company

The claimant named above has filed an application under the Black Lung Benefits Act, 30 USC 901 et seq. We have received the medical and employment evidence summarized below. Based on a review of this evidence, we have concluded that R B & F Coal Inc is the responsible operator liable for the payment of any benefits in this claim. We have also concluded that the claimant would be entitled to benefits. A summary of the medical and employment evidence and an analysis of the evidence are set forth below. Copies of any evidence received following the issuance of the Schedule for the Submission of Additional Evidence are attached to this document.

## ENTITLEMENT ANALYSIS:

Based on the analysis of the medical evidence received to date, we have determined the following:

## RELATIONSHIP/DEPENDENCY:

The claimant claims two dependents within the meaning of the Act.

The file includes a marriage certificate indicating that the miner married Deloris on October 24, 2008. Therefore, the requirements of 20 CFR 725.204(a)(1) and 725.205(a) and 725.205 (e) which relate to relationship and dependency are met.

A copy of the miner's son, Dubree's, birth certificate was submitted. However, Dubree is married, over 18 years of age, and not dependent on the miner. Therefore, the requirements of 20 CFR 725.208 and 725.209 which relate to relationship and dependency are not met

## PRESENCE OF PNEUMOCONIOSIS (BLACK LUNG DISEASE):

The medical evidence in the claim establishes the presence of pneumoconiosis. Dr. J. R. Forehand, a B-reader, read the Director's 07/07/2009 x-ray as positive (2/2) for the presence of pneumoconiosis. The x-ray film was determined to be of acceptable quality by Dr. S. Navani, a Board-certified B-reader. The claimant submitted a reading of the 07/07/2009 x-ray by Dr. T. E. Miller, a Board-certified B-reader. Dr. Miller read the x-ray film as positive (2/2) for simple pneumoconiosis. The claimant also submitted a chest x-ray dated 04/24/2009 read by Dr. T. E. Miller as positive (2/1) for simple pneumoconiosis. The responsible operator submitted an x-ray reading dated 11/19/2009 by Dr. T. M. Jarboe. Dr. Jarboe, a B-reader, read the film as negative for pneumoconiosis. The claimant also submitted an x-ray reading of the 11/19/2009 x-ray read by Dr. M. Alexander, a Board-certified B-reader, as positive (3/2) for simple pneumoconiosis.

Dr. Forehand, a physician who is Board-certified in Pediatrics with a Subspecialty in Allergy and Immunology, examined the miner for the Director on 07/07/2009. Dr. Forehand diagnosed coal workers' pneumoconiosis due to coal mine dust exposure and cigarette smoker's lung disease due to cigarette smoking.

After the issuance of the Schedule for the Submission of Additional Evidence, the responsible operator submitted the physical examination dated 11/19/2009 performed by Dr. T. M. Jarboe. Dr. Jarboe stated in his findings: "IMPRESSION: 1. The chest x-ray is abnormal, but the findings are not those of coal workers' pneumoconiosis, I feel they have been caused by interstitial lung disease, likely idiopathic fibrosis. The ILO classification is 0/0. 2. Cardiomegaly. Based on my history and physical examination, review of the pulmonary function studies, arterial blood gases, chest radiograph and the medical records, I have arrived at the following cardiopulmonary diagnosis: 1)

A diagnosis of legal or clinical pneumoconiosis cannot be made in Mr. Mullins. 2) Interstitial lung disease, likely due to idiopathic pulmonary fibrosis. 3) Obesity 4) Angina pectoris  Based on all the available information, within reasoned medical certainty I do not believe that a diagnosis of clinical or legal pneumoconiosis can be made in Mr. Turl Mullins. He has an abnormal chest x-ray but the overall clinical findings are those of interstitial lung disease, likely idiopathic pulmonary fibrosis and not coal workers' pneumoconiosis. Since the changes in his chest x-ray are due to a disease process other than coal workers' pneumoconiosis. I do not believe the diagnosis of clinical pneumoconiosis can be made. I do not feel that Mr. Mullins has legal pneumoconiosis. I base this on at least 2 observations. First, Mr. Mullins has intense basilar rales or crackles in his chest. Dr. Forehand also described crackles over the lung fields although he did not state where they were located in the chest. Crackles are not a feature of coal workers' pneumoconiosis. They are commonly found as a manifestation of idiopathic pulmonary fibrosis. Dr. Seaton, writing in the text Occupational Lung Disease, Morgan and Seaton, Third Edition, page 384, states that inspiratory crackles are not a feature of the disease (meaning coal workers' pneumoconiosis) and if they are present, other explanations should be sought. The "other explanation" in my reasoned opinion is the presence of idiopathic pulmonary fibrosis. Another finding not characteristic of simple coal workers' pneumoconiosis is the presence of a severely reduced diffusion capacity. Dr. Forehand did not measure diffusion capacity but on my examination it was 37% of predicted. Such a severely reduced diffusion capacity is not characteristic of coal dust-induced lung disease. It is my reasoned medical opinion that the degree of reduction of the diffusing capacity seen in this case is not indicative of coal workers' pneumoconiosis. Rather, when one considers all the findings including the appearance of the chest radiograph, the crackles over the lung fields and the reduction in diffusion, the most likely cause is idiopathic pulmonary fibrosis. Mr. Mullins has a severe pulmonary impairment. He does not have significant restriction on spirometric testing but lung volume studies do show that he has a moderate restrictive ventilatory defect. He also has a significant impairment of gas exchange as indicated by the severely reduced diffusing capacity and the drop in oxygen tension demonstrated by Dr. Forehand. I feel the cause of this restrictive defect and the impairment of gas exchange is idiopathic fibrosis and not the inhalation of coal mine dust or the presence of coal workers' pneumoconiosis. I base this observation on the rationale outlined above. "

Based on the preponderance of positive radiographic interpretations of chest x-ray films, the requirements of 20 CFR 718.202 are met and, therefore, presence of the disease has been established.

The requirements of 20 CFR 718.202 are met and, therefore, presence of the disease has been established.

## 20 CFR 718.202(a)(1) - established by x-ray

# RELATIONSHIP OF BLACK LUNG DISEASE TO COAL MINE EMPLOYMENT:

The miner's pneumoconiosis was caused by his coal mine employment based upon the presumption in the regulations, 20 CFR 718.203(b) which states: If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment. The miner has established at least ten years of coal mine employment. A reasoned medical opinion also supports a finding that the disease arose at least in part out of coal mine employment. The presumption has not been rebutted.

## 20 CFR 718.203(b) - established by presumption

# DISABILITY AND RELATIONSHIP OF DISABILITY TO BLACK LUNG DISEASE:

Although the Director's 07/07/2009 pulmonary function study was non-qualifying, the 07/07/2009 Exercise Arterial Blood Gas Studies was qualifying. The Studies were validated by Dr. John A. Michos, a physician board-certified in Internal and Pulmonary Medicine, on 08/07/2009.

The results of the pulmonary function study and arterial blood gas studies of 11/19/2009 do not meet the regulatory standards to establish total disability.

J.A. 146

Dr. Forehand stated in his rationale: "A significant respiratory impairment is present. Insufficient residual ventilatory capacity remains to return to last coal mining job. Unable to work. Totally and permanently disabled. Note: Principal cause of disability is coal workers' pneumoconiosis."

Dr. Jarboe reported in his findings: "Mr. Mullins is totally and permanently disabled from a pulmonary standpoint. He no longer retains the functional respiratory capacity to do his last coal mining job or one of similar physical demand in a dust-free environment. I feel the cause of this disabling pulmonary impairment is idiopathic pulmonary fibrosis which has caused a significant impairment of diffusion resulting in exercise-induced hypoxemia. I do not feel the inhalation of coal mine dust or the presence of coal workers' pneumoconiosis has caused his disabling pulmonary impairment."

Although the Director's 07/07/2009 qualifying exercise arterial blood gas study appears to support a determination of total disability pursuant to 20 CFR 718.204(b)(2)(II), the key issue is whether the miner has established disability causation at Section 20 CFR 718.204(c). Mr. Mullins must prove that his pneumoconiosis is a contributing cause to his total respiratory disability. Unlike the presumption of causality set forth at 20 CFR 718.203(b), disability causation requires affirmative evidence in support of the claim.

In assessing the probative value of the opinions of record, I have accounted for the qualifications of the respective physicians, the explanation of their medical opinions, the documentation underlying their medical judgments, and the sophistication and bases of their opinions. Dr. Jarboe's opinion is based on the assumption that Mr. Mullins does not suffer from pneumoconiosis. This premise was undermined by the preponderance of positive x-ray readings in the record. **Thus, after consideration of all the relevant evidence, I find that the requirements of 20 CFR 718.204 ( c) are met, as the evidence supports that Mr. Mullin's pneumoconiosis is a substantially contributing cause of his total disability.**

**20 CFR 718.204(b)(2)(ii) - established by ABG**
**20 CFR 718.204(b)(2)(iv) - established by reasoned opinion**

Based upon the above, the claimant would be entitled to benefits.

## EMPLOYMENT EVIDENCE:

The miner's Social Security Earnings Record establishes 20.23 years of coal mine employment for the period from April 1960 through December 31, 1990. The Social Security Earnings Record also reflects self-employment earnings in 1974, 1982-1984, 1986 and 1989. In order for us to develop self-employment, the miner must specifically describe all of the job duties performed, the dates of employment and the locations. To help make his allegations credible, he must also support his allegations with documentation from one or more sources (business licenses and/or permits, federal income tax records, copies of contracts, state mining records, etc). In Mr. Mullins' claim, sufficient information and supporting documentation have not been supplied. Thus, no credit is given for the self-employment earnings in the calculation of his total coal mine employment.

## LIABILITY ANALYSIS:

R B & F Coal Inc has been named as the designated responsible operator based upon the following:

1. The designated responsible operator was an operator after 06/30/73 and employed the miner as a miner for not less than one year based upon Social Security Earnings Record.
2. The miner's employment with this operator included at least one working day after 12/31/69 based upon Social Security Earnings Record.
3. There is a rebuttable presumption that coal mine workers were exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility. The presumption has not been successfully rebutted.
4. This operator or its insurer is financially capable of assuming liability for the payment of benefits in accordance with 20 CFR 725.494(e).

J.A. 147

5. This operator is not the operator that most recently employed the miner, but is the designated responsible operator because the miner worked for R B & F Coal Company in 1985 and 1986. The miner's Social Security Earnings Record establish more than a year of coal mine employment with R B & F Coal Company. Prior to working for R B & F Coal Company, Mr. Mullins was employed by Deblin Coal Company from 1977 to 1979. However, because of his subsequent employment of more than a year of coal mine employment with R B & F Coal Company, Deblin Coal Company does not meet the criteria for designating a responsible operator. After leaving R B & F Coal Company, he worked for the following companies: 1. Wilder Coal Company in 1986, 1987 and 1988. Wilder Coal Company is out of business and not a viable operator. They were insured by Rockwood Insurance Company for the miner's dates of employment. However, due to Rockwood's bankruptcy and the fact that this claim is a first filing, therefore, was filed after the bar date of August 26, 1992, and no state claim was ever filed in this claim, Wilder Coal Company is not a viable operator and the Department of Labor cannot name Wilder Coal Company as the responsible operator for this claim. 2. J & R Contractors, Inc. in 1988 and 1989. This company cannot be named as the responsible operator as the miner's Social Security Earnings Record establishes less than a full year of employment with this company. 3. A G M Coal Company, Inc. in 1989. This company cannot be named as the miner's Social Security Earnings Record establishes less than a full year of employment with this company. 4. Kim-Stan, Inc. in 1989 and 1990. Kim-Stan, Inc. was not insured for the miner's dates of employment and is no longer in business. Therefore, Kim-Stan, Inc. is not a viable operator. R B & F Coal Company is the last viable operator which employed the miner for a full year and has therefore, correctly identified as the responsible operator for this claim.

A Notice of Claim was received by the potentially liable operator/carrier, R B & F Coal Inc, on July 8, 2009, as evidenced by the signed return receipt from the post office. The potentially liable operator/carrier has failed to timely submit evidence to support its position or to timely request an extension of the period of time for submission of such evidence. Therefore, in accordance with 20 CFR 725.408(b), no documentary evidence relevant to the grounds set forth in the Operator Assertions - 20 CFR 725.408(a)(2) - may be admitted in any further proceeding.



# MEDICAL EVIDENCE

(The first letter of the letter codes with the test dates represent the submitting party for the evidence: "D" stands for Director (the Department of Labor), "R" for designated responsible operator, the employer, and "C" for claimant. The second letter of each code indicates if the evidence is Evidence of record or New evidence developed for this claim.)

**MINER:** Turl Mullins
**CLAIM NO.:** XXX-XX-0508 LM C

## X-ray Evidence

| X-RAY Film Date | Reread Date | Name of Reader | X-RAY Reader Qualifications | Film Quality | X-RAY Interpretation |
|---|---|---|---|---|---|
| 07/07/2009 | 07/07/2009 D-N | J R Forehand | B-reader | 1 | 2/2 |
| 07/07/2009 | 07/23/2009 D-N | S Navani | B-reader; Board-certified | 2 | Quality Only |
| 04/24/2009 | 05/09/2009 C-E | T E Miller | B-reader; Board-certified | 1 | 2/1 |
| 11/19/2009 | 02/02/2010 C-N | M Alexander | B-reader; Board-certified | 1 | 3/2 |
| 07/07/2009 | 01/24/2010 C-N | T E Miller | B-reader; Board-certified | 2 | 2/2 |
| 11/19/2009 | 12/13/2009 R-N | T M Jarboe | B-reader | 1 | Negative |

## Pulmonary Function Study (PFS) Evidence

| Date | Physician | Age/ Height | FEV1 | MVV | FVC | FEV1 FVC | DISABILITY STANDARDS FEV1 | MVV | FVC | Valid? |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/07/2009 D-N | J. R. Forehand | 74/66.0 | 2.00 | | 2.93 | 68% | 1.57 | 063 | 2.04 | Exceeds |
| 11/19/2009 R-N | T M Jarboe | 74/66.0 | 1.80 | | 2.69 | 67% | 1.57 | 063 | 2.04 | Exceeds |

## Arterial Blood-gas (ABG) Evidence

| Date | Physician | Resting/ Exercise? | PCO2 | PO2 | PO2 Disability Standards | Altitude | Valid? |
|---|---|---|---|---|---|---|---|
| 07/07/2009 D-N | J. R. Forehand | Resting | 40.9 | 62.2 | 60.0 | 0-2999 | Exceeds |
| | | Exercise | 40.5 | 43.1 | 60.0 | 0-2999 | Yes* |
| 11/19/2009 R-N | T M Jarboe | Resting | 39.3 | 68.8 | 60.0 | 0-2999 | Exceeds |

*Vaidated by Dr. J Michos on 08/07/2009

## Physical Examination/ Other Evidence

| Exam Date | Examining Physician/Qualifications | Findings |
|---|---|---|
| 07/07/2009 D-N | J. R. Forehand – Board-certified in Pediatrics; Subspecialty in Allergy & Immunology | **Physical Exam** - Coal Workers' Pneumoconiosis Cigarette smoker's lung disease **Impairment** - A significant respiratory impairment is present. Insufficient residual ventilatory capacity remains to return to last coal mining job. Unable to work. Totally and permanently disabled. Note: Principal cause of disability is coal workers' pneumoconiosis. **Etiology** - Coal Workers' Pneumoconiosis- Coal mine dust exposure Cigarette smoker's lung disease- cigarette smoking |
| 11/19/2009 R-N | T M Jarboe – Board-certified in Internal Medicine; Subspecialty in Pulmonary Disease | **Physical Exam** - IMPRESSION: 1. The chest x-ray is abnormal, but the findings are not those of coal workers' pneumoconiosis, I feel they have been caused by interstitial lung disease, likely idiopathic fibrosis. The ILO classification is 0/0. 2. Cardiomegaly. Based on my history and physical examination, review of the pulmonary function studies, arterial blood gases, chest radiograph and the medical records, I have arrived |

J.A. 149

at the following cardiopulmonary diagnosis: 1) A diagnosis of legal or clinical pneumoconiosis cannot be made in Mr. Mullins. 2) Interstitial lung disease, likely due to idiopathic pulmonary fibrosis. 3) Obesity 4) Angina pectoris  Based on all the available information, within reasoned medical certainty I do not believe that a diagnosis of clinical or legal pneumoconiosis can be made in Mr. Turl Mullins. He has an abnormal chest x-ray but the overall clinical findings are those of interstitial lung disease, likely idiopathic pulmonary fibrosis and not coal workers' pneumoconiosis. Since the changes in his chest x-ray are due to a disease process other than coal workers' pneumoconiosis I do not believe the diagnosis of clinical pneumoconiosis can be made. I do not feel that Mr. Mullins has legal pneumoconiosis. I base this on at least 2 observations. First, Mr. Mullins has intense basilar rales or crackles in his chest. Dr. Forehand also described crackles over the lung fields although he did not state where they were located in the chest. Crackles are not a feature of coal workers' pneumoconiosis. They are commonly found as a manifestation of idiopathic pulmonary fibrosis. Dr. Seaton, writing in the text Occupational Lung Disease, Morgan and Seaton, Third Edition, page 384, states that inspiratory crackles are not a feature of the disease (meaning coal workers' pneumoconiosis) and if they are present, other explanations should be sought. The "other explanation" in my reasoned opinion is the presence of idiopathic pulmonary fibrosis.  Another finding not characteristic of simple coal workers' pneumoconiosis is the presence of a severely reduced diffusion capacity. Dr. Forehand did not measure diffusion capacity but on my examination it was 37% of predicted. Such a severely reduced diffusion capacity is not characteristic of coal dust-induced lung disease. It is my reasoned medical opinion that the degree of reduction of the diffusing capacity seen in this case is not indicative of coal workers' pneumoconiosis. Rather, when one considers all the findings including the appearance of the chest radiograph, the crackles over the lung fields and the reduction in diffusion, the most likely cause is idiopathic pulmonary fibrosis. Mr. Mullins has a severe pulmonary impairment. He does not have significant restriction on spirometric testing but lung volume studies do show that he has a moderate restrictive ventilatory defect. He also has a significant impairment of gas exchange as indicated by the severely reduced diffusing capacity and the drop in oxygen tension demonstrated by Dr. Forehand. I feel the cause of this restrictive defect and the impairment of gas exchange is idiopathic fibrosis and not the inhalation of coal mine dust or the presence of coal workers' pneumoconiosis. I base this observation on the rationale outlined above.

**Impairment** - Mr. Mullins is totally and permanently disabled from a pulmonary standpoint. He no longer retains the functional respiratory capacity to do his last coal mining job or one of similar physical demand in a dust-free environment.

**Etiology** - I feel the cause of this disabling pulmonary impairment is idiopathic pulmonary fibrosis which has caused a significant impairment of diffusion resulting in exercise-induced hypoxemia. I do not feel the inhalation of coal mine dust or the presence of coal workers' pneumoconiosis has caused his disabling pulmonary impairment.

## Length of Coal Mine Employment

The claimant has proven **20** years of coal mine employment.





**CHAFIN LAW OFFICE, P.S.C.**
290 E. COURT STREET
P.O. BOX 700
PRESTONSBURG, KENTUCKY 41653-0700
TELEPHONE 606-886-9511
FAX 606-886-9644

JOHN T. CHAFIN
jtchafin@bellsouth.net

June 24, 2010

VIA FACSIMILE

Ms. Mary T. Kuzilla
U.S. Department of Labor
ESA/OWCP/DCMWC
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267

Re:   Turl Mullins vs. R B & F Coal Company
      OWCP # XXX-XX-0508

Dear Ms. Kuzulla:

This will acknowledge receipt of a proposed decision and order awarding benefits which was received in my office on or about May 28, 2010. This will provide you with a response on behalf of the Employer.

The Employer disagrees with the finding that Mr. Mullins worked as a coal miner for twenty (20) years. The Employer disagrees with the finding that this claim was timely filed.

The Employer further disagrees with the finding that Mr. Mullins suffers from pneumoconiosis and a totally disabling respiratory or pulmonary impairment.

The Employer disagrees with the finding that R B & F Coal Company is the correct responsible operator.

We are requesting that this claim be forwarded to the Office of Administrative Law Judges for appropriate disposition.

Thank you in advance for anticipated time and cooperation.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

John T. Chafin

John T. Chafin

JTC/mch

cc:   Hon. Ron Carson
      Ms. Chris Terrill 1109866

Director's Exh. No. 38
Consisting of ___ pages.

J.A. 151



Survivor's Form For Benefits Under
The Black Lung Benefits Act
**CONVERSION**

U. S. Department Of Labor
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



RECEIVED
JUN 17 2011
JOHNSTOWN, PA
DCMWC

If you are a survivor of a person who was receiving Federal black lung benefits from a claim filed before 1982, this form is a Survivor's Notification of the Beneficiary's Death. Otherwise, this is a claim for survivor's benefits. This form is authorized by the Black Lung Benefits Act (30 U.S.C. 901, et seq.) and by 20 C.F.R. 410.221 and 20 C.F.R.725.304. This information will be used to determine possible eligibility for and the amount of benefits payable under the Act. Benefits may be payable to you, your children and all children of the deceased miner. The information on this form is required to obtain a benefit. However, disclosure of your or the deceased miner's Social Security Number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled.

OMB No: 1215-0069
Expires Dec 31 2004
(For Agency Use Only)

1. Deceased Coal Miner's Name: **Turl Mullins**

2. Deceased Coal Miner's Social Security Number: █████-0508 C

3. COAL MINER'S BIRTH AND DEATH DATES (ATTACH DEATH CERTIFICATE IF AVAILABLE)

Date of Birth: ████  Date of Death: 05/12/2011  Autopsy? Yes (No)

4. Your Name: First *Deloris* Middle *Joan* Last *Mullins*

5. Your Social Security Number: ████ 0145

6. Your Date of Birth: ████

7. SHOW YOUR RELATIONSHIP TO THE MINER
( ) Surviving Spouse (wife or husband)   ( ) Dependent Child
( ) Surviving Divorced Spouse   ( ) Dependent Parent, Brother or Sister

8. Have you or the miner ever filed a State or Federal workers' compensation claim for death or disability due to coal workers' pneumoconiosis (Black Lung) or any other lung conditions? (Yes) No

9. Have you or any dependent of the miner ever received Federal Black Lung Benefits under another miner's Social Security number? Yes (No)

*** IF YOU ARE FILING AS A CHILD, PARENT, BROTHER OR SISTER, GO TO QUESTION 12 ***

10. Do you or the miner have any dependent children under age 18; age 18 to age 23 and attending school; age 18 or older and disabled? Yes (No)

11. Were you or the miner ever married to anyone else at any time? (Yes) No

12. Do you authorize any physician, hospital, agency or other organization (including the Social Security Administration) to disclose to the U.S. Department of Labor any medical records or other information important to your claim? (Yes) No

13. he following events may affect your entitlement to Federal Black Lung Benefits. Do you agree to notify the U.S. Department of Labor promptly if any of the events listed below occur? (Yes) No

* You become entitled to receive any workers' compensation or occupational disease payments because of the miner's disability or death due to pneumoconiosis (Black Lung Disease).

* A person receiving benefits marries, dies, or is adopted by someone else, becomes disabled or the existing disability ceases, or if divorced, receives support payments from previous spouse.

* A child (age 18-23) stops attending school, or in the case of a disabled child (age 18 or over), the disabling condition improves.

**(PLEASE COMPLETE THE OTHER SIDE OF THIS FORM)**

Director's Exh. No. 49
Consisting of 2 pages.

Form CM - 912
Rev. Oct. 1998

J.A. 152

 

## PRIVACY ACT NOTICE

In accordance with the Privacy Act of 1974 (5 U.S.C. 552a), as amended, you are hereby notified that: (1) the Black Lung Benefits Act (BLBA) (30 U.S.C. 901 et seq.), as amended, is administered by the Office of Workers' Compensation Programs (OWCP) of the U.S. Department of Labor, which receives and maintains personal information, relative to this application, on claimants and their immediate families; (2) information obtained by OWCP will be used to determine eligibility for benefits payable under the BLBA; (3) information may be given to coal mine operators potentially liable for payment of the claim or to the insurance carrier or other entity which secured the operator's compensation liability; (4) information may be given to physicians or other medical service providers for use in providing treatment, making evaluations and for other purposes relating to the medical management of the claim; (5) information may be given to the Department of Labor's Office of Administrative Law Judges, or other person, board or organization, which is authorized or required to render decisions with respect to the claim or other matters arising in connection with the claim; (6) information may be given to Federal, state or local agencies for law enforcement purposes, to obtain information relevant to a decision under the BLBA, to determine whether benefits are being or have been paid properly, and where appropriate, to pursue administrative offset and/or debt collection actions required or permitted by law; (7) disclosure of the claimant's or deceased miner's Social Security Number (SSN) or tax identifying number (TIN) on this form is voluntary, and the SSN and/or TIN and other information maintained by the OWCP may be used for identification and for other purposes authorized by law; (8) failure to disclose all requested information, other than the SSN or TIN, may delay the processing of this claim or the payment of benefits, or may result in an unfavorable decision or reduced level of benefits.

COMPUTER MATCHING PROGRAM. The Department of Labor conducts computer matches with the Social Security Administration. Any information provided by applicants or and recipients of financial assistance or payments under Federal benefit programs may be subject to verification through computer matches which the Department of Labor conducts with the Social Security Administration

RECEIVED
JUN 17 2011
JOHNSTOWN, PA
DCMWC

### SIGNATURE OF APPLICANT

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000.00, or by imprisonment for not more than one year, or both.

| Signature in ink (First, Middle, Last)<br>_Delores Joan Mullins_ | Date<br>06-10-2011 |
|---|---|
| Mailing Address (Number, Street, Apt.No., PO Box)<br>P.O. Box 1124 | County you live in<br>Wise |
| City, State, Zip Code<br>Pound, Va. 24279 | Area Code and Telephone Number<br>276-796-6001 |

Witnesses are required only if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address.

| Signature of Witness | Signature of Witness |
|---|---|
| Address of Witness | Address of Witness |
| City, Sate, Zip Code | City, State, Zip Code |

Public reporting for this collection of information is estimated to average 8 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, 200 Constitution Avenue, NW, Room C-3520, Washington, DC 20210. **DO NOT SEND THE COMPLETED FORM TO THIS OFFICE.**

Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

**U.S. DEPARTMENT OF LA**          **Office of Workers' Compensa**
                                   **Division of Coal Mine Workers' Compensation**
                                   **Greater Johnstown Tech Park**
                                   **1 Tech Park Drive, Suite 250**
                                   **Johnstown, PA 15901-1267**



July 19, 2011                      **Phone:  (814) 619-7777 or 1-800-347-3754**
                                   **Telefax: (814) 619-7790**

                                   MINER: Turl Mullins
                                   CLAIMANT: Deloris J Mullins
                                   CLAIM NO.: XXX-XX-0508 LW C

R B & F Coal Inc
P.o.box 1439
Wise, VA 24293

Dear Sir/Madam:

If you agree with the Proposed Decision and Order awarding benefits, you should have an authorized officer of your organization sign and return to this Office the Agreement to Pay Benefits (Form CM-941). Payment of benefits, in accordance with the rates shown in the Proposed Decision and Order, should begin by the 15th of the month following the month for which the benefits are payable and should include any accrued benefit amount, in accordance with the rates shown in the Proposed Decision and Order.

Benefits shall be considered due after the issuance of an effective order requiring the payment of benefits by the District Director. The Proposed Decision and Order becomes effective on the thirtieth (30th) day after issuance if no party timely requests revision or a hearing.

If you wish to contest the Proposed Decision and Order, you must file a written request for revision or request a hearing within 30 days after the date of issuance of the Proposed Decision and Order. You must specify the findings and conclusions with which you disagree. The record will remain open for thirty (30) days unless extended for good cause by the District Director.

If you fail to respond within 30 days, the Proposed Decision and Order will become a final Decision and Order. All rights to further proceedings with respect to the claim shall be considered waived, except as provided in 20 CFR 725.310.

Sincerely,

KATHY VERHOVSEK
Workers' Compensation Assistant

cc: Deloris J Mullins
    Old Republic Insurance Company

Enclosures:  CM-906, Notice of First Payment of Benefits
             CM-941, Agreement to Pay Benefits
             CM-971d, Benefit Rate Table

Director's Exh. No. 51
Consisting of 7 pages.

J.A. 154



**U.S. DEPARTMENT OF LABOR**

**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Greater Johnstown Tech Park**
**1 Tech Park Drive, Suite 250**
**Johnstown, PA 15901-1267**
**Phone: (814) 619-7777 or 1-800-347-3754**
**FAX: (814) 619-7790**



In the Matter of the Claim for Benefits Under the
Black Lung Act

Deloris J Mullins
Claimant

v.

R B & F Coal Inc
Responsible Operator

and

Director, Office of Workers' Compensation Programs

**PROPOSED DECISION AND ORDER**
**Survivor's Award of Benefits-Responsible Operator**

MINER: Turl Mullins
CLAIM NO.: XXX-XX-0508 LW C

Such development, examination, investigation and review as is deemed necessary pursuant to the Black Lung Benefits Act having been completed and duly considered, the District Director, pursuant to the authority given at 20 CFR 725.418(a)(2) to expedite adjudication of the claim, makes the following:

### FINDINGS OF FACT AND CONCLUSION OF LAW

1.  That Turl Mullins, born ▇▇▇▇▇▇ hereinafter referred to as the miner, was receiving black lung benefits at the time of his death pursuant to a final and effective Award of Benefits entered October 14, 2009;

2.  That a written claim for survivor's benefits was timely filed on June 17, 2011;

3.  That Deloris J Mullins, hereinafter referred to as the claimant, is the surviving spouse of Turl Mullins;

4.  That the miner died on May 12, 2011;

5.  That this claim is subject to Section 1556-Equity for Certain Eligible Survivors of the Patient Protection and Affordable Care Act of 2010, which applies to claims filed after January 1, 2005 that are pending on or after the PPACA's March 23, 2010 enactment date. Subsection (b) of Section 1556, entitled Continuation of Benefits, amends 30 USC 932(1) of the Black Lung Benefits Act. That section, as amended, states that "{i}n no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under the subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner." Consequently, under amended 30 USC 932(l), an eligible survivor of a miner who was awarded benefits is entitled to benefits without having to prove that the miner's death was due to pneumoconiosis.

 

PROPOSED DECISION AND ORDER AWARDING BENEFITS
Miner: Turl Mullins
Claimant: Deloris J Mullins
Claim No.: XXX-XX-0508 LW C
Page: 2

6.   That R B & F Coal Inc has been determined to be the liable party based on its designation and the supporting evidence in the miner's claim and on any additional evidence developed by the District Director (enclosed), and that it is responsible for payment of benefits to the claimant as provided by the Act;

7.   That the claimant is entitled to receive benefits on his/her own behalf and augmented on behalf of the following dependent(s).

| Dependent Name | Date of Birth | Relationship | Entitlement | |
|---|---|---|---|---|
| | | | Start | End |
| N/A | | | | |

at the following rates:

| From | To | No. of Mos. | Monthly Rate | Offset | Net Amt | Total |
|---|---|---|---|---|---|---|
| 05/2011 | 06/2011 | 2 | $625.60 | $0.00 | $625.60 | $1,251.20 |
| | | | | | Total | $1,251.20 |

including the following offsets:

| Type | Amount | Claim Number | From | To |
|---|---|---|---|---|
| None | | | | |

And continuing at the monthly rate of $625.60, to be paid on the fifteenth day of the month following the month for which the benefits are due.

Based upon the foregoing Findings of Fact and Conclusions of law, the District Director makes the following:

### AWARD

That R B & F Coal Inc shall pay to the claimant in the amount of $1,251.20 representing all benefits due up to and including June 2011, and shall thereafter continue to pay benefits to the claimant at the rate of $625.60 per month, subject to the limitations of the Act.

The designated responsible operator is liable for the benefits detailed above. The responsible operator is also liable for the payment of all fees, charges, and other reasonable expenses incurred by the miner/claimant in developing the claim.

Within 30 days after the date of issuance of this Proposed Decision and Order, any party may file a written request for revision or request a formal hearing before the Office of Administrative Law Judges. The party must specify the findings and conclusions with which they disagree, and shall serve the written request on the District Director and all other parties.

Signed in the office of the District Director on July 19, 2011

Kathleen Verhovsek
Workers' Comp. Assistant

J.A. 156

 

## PROOF OF SERVICE

Claimant:  Deloris J Mullins

Claim No.:  XXX-XX-0508 LW C

### CERTIFICATION

I hereby certify that on July 19, 2011, the Decision and Order was filed in the office of the District Director and a certified copy mailed to the parties and their representatives at the addresses listed below.

This Order becomes final and effective thirty (30) days from the date printed on this Proof of Service, unless a party to the claim submits a timely request for revision or hearing before an Administrative Law Judge.  If payment is not made within thirty (30) days following the date that this Order becomes final and effective, the responsible operator becomes liable for interest, as provided in the regulations at 20 C.F.R. 725.608.  In addition, if payment is not made within ten (10) days after the 15th day of the month following the month for which benefits are payable, a penalty in the amount of 20% of the total compensation award will be due the claimant, in accordance with Section 14(f) of the Longshore and Harbor Workers' Compensation Act (LHWCA), as incorporated by Section 422(a) of the Black Lung Benefits Act, and 20 C.F.R. 725.607.

**NOTICE TO CLAIMANT**

**Once a final award has been issued (an award becomes final if no party files a timely request for revision or appeal) the claimant may apply for enforcement of any interest and/or additional compensation due from the operator, if the operator failed to make timely payment of compensation, as specified above.**

**To apply for enforcement of interest and/or additional compensation, the beneficiary must file suit in the Federal District Court for the district in which the injury occurred (typically, the district in which the miner's last coal mine employment took place).**

Kathleen Verhovsek
Workers' Comp. Assistant

**CERTIFIED MAIL**

Deloris J Mullins
PO Box 1124
Pound, VA  24279

Old Republic Insurance Company
PO Box 2200
Greensburg, PA 15601-2200

R B & F Coal Inc
P.o.box 1439
Wise, VA 24293

J.A. 157

 

## TABLE OF MONTHLY BLACK LUNG BENEFIT RATES

|  | PRIMARY | +1 | +2 | +3 |
|---|---|---|---|---|
| 07/01/73 - 09/30/73 | $ 169.80 | $ 254.70 | $ 297.10 | $ 339.50 |
| 10/01/73 - 09/30/74 | 177.60 | 266.40 | 310.80 | 355.20 |
| 10/01/74 - 09/30/75 | 187.40 | 281.10 | 328.00 | 374.80 |
| 10/01/75 - 09/30/76 | 196.80 | 295.20 | 344.40 | 393.50 |
| 10/01/76 - 09/30/77 | 205.40 | 308.10 | 359.50 | 410.80 |
| 10/01/77 - 09/30/78 | 219.90 | 329.80 | 384.80 | 439.70 |
| 10/01/78 - 09/30/79 | 232.00 | 348.00 | 405.90 | 463.90 |
| 10/01/79 - 09/30/80 | 254.00 | 381.00 | 444.50 | 508.00 |
| 10/01/80 - 09/30/81 | 279.80 | 419.60 | 489.60 | 559.50 |
| 10/01/81 - 09/30/82 | 293.20 | 439.80 | 513.10 | 586.40 |
| 10/01/82 - 12/31/83 | 304.90 | 457.40 | 533.60 | 609.80 |
| 01/01/84 - 12/31/84* | 317.10 | 475.60 | 554.90 | 634.20 |
| 01/01/85 - 12/31/86 | 328.20 | 492.30 | 574.30 | 656.40 |
| 01/01/87 - 12/31/87 | 338.00 | 507.00 | 591.50 | 676.00 |
| 01/01/88 - 12/31/88 | 344.80 | 517.20 | 603.40 | 689.50 |
| 01/01/89 - 12/31/89 | 358.90 | 538.40 | 628.10 | 717.80 |
| 01/01/90 - 12/31/90 | 371.80 | 557.70 | 650.70 | 743.60 |
| 01/01/91 - 12/31/91 | 387.10 | 580.60 | 677.40 | 774.10 |
| 01/01/92 - 12/31/92 | 403.30 | 605.00 | 705.80 | 806.60 |
| 01/01/93 - 12/31/93 | 418.20 | 627.30 | 731.90 | 836.40 |
| 01/01/94 - 12/31/95 | 427.40 | 641.10 | 748.00 | 854.80 |
| 01/01/96 - 12/31/96 | 435.10 | 652.70 | 761.50 | 870.20 |
| 01/01/97 - 12/31/97 | 445.10 | 667.70 | 779.00 | 890.20 |
| 01/01/98 - 12/31/98 | 455.40 | 683.10 | 796.90 | 910.70 |
| 01/01/99 - 02/31/99 | 469.50 | 704.30 | 821.60 | 939.00 |
| 01/01/00 - 12/31/00 | 487.40 | 731.00 | 852.80 | 974.70 |
| 01/01/01 - 12/31/01 | 500.50 | 750.80 | 875.90 | 1001.00 |
| 01/01/02 - 12/31/02 | 518.50 | 777.80 | 907.40 | 1037.00 |
| 01/01/03 - 12/31/03 | 534.60 | 801.90 | 935.50 | 1069.20 |
| 01/01/04 - 12/31/04 | 549.00 | 823.50 | 960.80 | 1098.00 |
| 01/01/05 - 12/31/05 | 562.80 | 844.10 | 984.80 | 1125.50 |
| 01/01/06 - 12/31/06 | 574.60 | 861.80 | 1005.50 | 1149.10 |
| 01/01/07 - 12/31/07 | 584.40 | 876.50 | 1022.60 | 1168.70 |
| 01/01/08 - 12/31/08 | 599.00 | 898.40 | 1048.10 | 1197.90 |
| 01/01/09 - 12/31/09 | 616.30 | 924.50 | 1078.50 | 1232.60 |
| 01/01/10 - | 625.60 | 938.30 | 1094.70 | 1251.10 |

*These benefit rates include the additional one-half percent increase that was granted retroactive to January 1, 1984. The following rates were in effect prior to the retroactive payments:

| 01/01/84 - 06/30/84 | $ 315.60 | $ 473.30 | $ 552.20 | $ 631.10 |
|---|---|---|---|---|

Form CM-971d
Rev. January 2010

J.A. 158

  

**U.S. DEPARTMENT OF LABOR**      **Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Greater Johnstown Tech Park**
**1 Tech Park Drive, Suite 250**
**Johnstown, PA 15901-1267**
   **Phone: (814) 619-7777 or 1-800-347-3754**
   **FAX: (814) 619-7790**

In the matter of the claim for bene-
fits under the Black Lung Benefits Act

Deloris J Mullins                          AGREEMENT TO PAY BENEFITS
      Claimant
                                           SSN: XXX-XX-0508 LW C
R B & F Coal Inc
      Coal Mine Operator

Old Republic Insurance Company
      Insurance Carrier

The above-named Coal Mine Operator and/or Insurance Carrier agrees to pay
benefits and other costs and expenses pursuant to the Black Lung Benefits Act
(30 U.S.C., 931 et seq.), based upon the finding by the Department of Labor of
the claimant's eligibility to be paid benefits on his or her own behalf and on
behalf of the following dependents:


The Coal Mine Operator further agrees to begin to pay benefits within fourteen
(14) days from the date of this agreement, the first payment to include
benefits which have accrued from May 1, 2011, with subsequent payment of
benefits to be made regularly each month thereafter and to reimburse the Black
Lung disability Trust Fund for any benefit payments made and any medical
development expenses incurred.

The Coal Mine Operator understands and agrees that this document may be the
basis for the issuance of an Award of Benefits and Order to Pay benefits in
this claim.  Notice of First Payment of Payments (CM-906) should follow this
agreement.

_____
Signature of Authorized Officer          Date

_____
Name and Title

                                          CM-941
                                          Rev. Oct. 1978

 

## CERTIFICATE OF FIRST PAYMENT OF BENEFITS

**U.S DEPARTMENT OF LABOR**
OFFICE OF WORKERS' COMPENSATION PROGRAMS

**NOTE:** Within ten days after the first payment is made, file the original of this certificate with the initiating office. Send a copy to the person receiving benefits. The Black Lung Benefits Act (30 U.S.C. 901 et. seq.) requires this report. Failure to report can result in a civil penalty of not more than $500 for each failure or refusal.

| 1. Name of Disabled or Deceased Coal Miner | 2. Miner's Claim Number |
|---|---|
| Turl Mullins | XXX-XX-0508 LW C |

3. Name and Address of Person to Whom the Check is Made Payable (The Payee)

Deloris J Mullins

| 4. Name and Address of Coal Mine Operator | 5. Name and Address of Insurance Carrier |
|---|---|
| R B & F Coal Inc<br>P.o.box 1439<br>Wise, VA 24293 | Old Republic Insurance Company<br>PO Box 2200<br>Greensburg, PA 15601-2200 |

6. Name(s) of Dependent(s) of Disabled or Deceased Coal Miner


7. a. Last date DOL will issue a benefit check

    (month/day/year)

b. Responsible Operator to reimburse the Trust Fund (Interim Benefits)  for     _____ (dates)

     $ \_\_\_\_\_0.00\_\_\_\_\_ (amount)

c. Responsible Operator to begin payment for     _____ (month/year)

     $ \_\_\_\_\_625.60\_\_\_\_\_ (amount)

d. Responsible Operator to pay lump sum to claimant     \_\_\_05/2011 -\_\_\_ (dates)

e. Responsible Operator to reimburse the Trust Fund for:      $ \_\_\_$1,251.20\_\_\_ (amount)

    medical costs  $ \_\_\_\_\_0.00\_\_\_\_\_ (amount)

    interest  $ \_\_\_\_\_0.00\_\_\_\_\_ (amount)

☐ You will be notified of medical costs and interest at a future date.

☐ I hereby certify that I **AGREE** with the information contained in Item 7 of this form and that payments have been initiated as indicated above.

☐ I hereby certify that I **DISAGREE** with the information contained in ITEM 7 of this form but have initiated benefits.


Signature of Person Authorized to Sign for Coal Mine Operator or Insurance Carrier     Date


Print Name and Title


Address            Phone Number

CM-906
Rev. 10/83




# CHAFIN LAW OFFICE P.S.C.

290 E. COURT STREET
P.O. BOX 700
PRESTONSBURG, KENTUCKY 41653-0700
TELEPHONE 606-886-9511
FAX 606-886-9644

JOHN T. CHAF
jtchafin@bellsouti.

August 8, 2011

VIA FACSIMILE
814-619-7777

Mr. Evan Shourds
U.S. Department of Labor
ESA/OWCP/DCMWC
1 Tech Park Drive, Suite 250
Johnstown, PA 15901-1267

Re:     Deloris Mullins, Surviving Spouse of Turl Mullins vs. R B & F Coal Company
        OWCP # XXX-XX-0508

Dear Mr. Shourds:

This will acknowledge receipt of a proposed decision and order issued on July 19, 2011, and received in my office on August 8, 2011. This will provide you with a response on behalf of the Employer.

The Employer disagrees with the finding that Turl Mullins was receiving benefits at the time of his death pursuant to a final and effective award of benefits entered October 14, 2009. The Employer requested a formal hearing and the miner's claim is currently pending before the Office of Administrative Law Judges. It is not a final award.

The Employer denies that this claim was timely filed on June 17, 2011. The Employer further disagrees with the finding that this claim is affected by PPACA, section 1556 equity for certain eligible survivors of the Patient Protection and Affordable Care Act of 2010. The Employer takes the position that this law is unconstitutional and will likely be overturned.

The Employer disagrees with the finding that RB & F is the correct responsible operator. The evidence in this matter is uncontroverted that Wilder Coal should have been designated as the responsible operator. The District Director has failed in its affirmative duty to investigate the officers and directors of Wilder Coal and name the same as parties. The Trust Fund is the proper responsible party in this case.

The Employer respectfully requests that this claim be forwarded to the Office of Administrative Law Judges where it can be consolidated with the miner's claim and properly reviewed. Thank you in advance for your anticipated time and cooperation with this request.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

John T. Chaf

John T. Chafin

JTC/mch
cc:     Mr. Ron Carson
        Ms. Chris Terrill 1109866

Director's Exh. No. 55
Consisting of 1 pages.

J.A. 161





# CHAFIN LAW OFFICE, P.S.C.
### 290 E. COURT STREET
### P.O. BOX 700
### PRESTONSBURG, KENTUCKY 41653-0700
### TELEPHONE 606-886-9511
### FAX 606-886-9644

JOHN T. CHAFIN
jtchafin@bellsouth.net

March 1, 2013

Judge Linda S. Chapman
Office of Administrative Law Judges
U. S. Department of Labor
800 K Street, NW, Suite 400
Washington, D.C. 20001-8000

RE:  Deloris Mullins, Surviving Spouse of Turl Mullins vs.  R B & F Coal Company
     BLA Case No.: 2012-BLA-5277
     Claim No. XXX-XX-0508 LM C

Dear Judge Chapman:

Enclosed herewith please find a copy of the Employer and Carrier's Renewed Motion to
Dismiss R B & F Coal Company, Inc. and Transfer Liability to the Black Lung Disability
Trust Fund and Reply to Director's Response to R B & F Coal Company's Motion to
Dismiss.  Please review the same and issue an appropriate order.  Thank you in advance for
your anticipated time and cooperation.

Very truly yours,

CHAFIN LAW OFFICE, P.S.C.

John T. Chafin

JTC/mch

cc:  Mr. Ron Carson
     Office of the Solicitor
     Ms. Janet Schuchman 1109866
     Ms. Chris Terrill 1109866

OFFICE OF ADMINISTRATIVE LAW JUDGES
U. S. DEPARTMENT OF LABOR
800 K STREET N W SUITE 400-N
WASHINGTON, DC 20001-8002

IN THE MATTER OF:

| | |
|---|---|
| DELORIS MULLINS, SURVIVING SPOUSE OF TURL MULLINS, | * |
| | * |
| Claimant, | * |
| | * |
| vs. | * |
| | * |
| R B & F COAL COMPANY, | * |
| | * |
| Employer, | * |
| and | * |
| | * |
| OLD REPUBLIC INSURANCE COMPANY, | * |
| | * |
| Carrier, | * |
| and | * |
| DIRECTOR, OWCP, | * |
| | * |
| Party-In-Interest. | * |

BLA NO. 2012-BLA-5277
CLAIM NO. XXX-XX-0508 LM C

**EMPLOYER'S RENEWED MOTION TO DISMISS R B & F COAL COMPANY, INC. AND TRANSFER LIABILITY TO THE BLACK LUNG DISABILITY TRUST FUND**

Pursuant to 29 CFR § 18.6 and 20 CFR § 725.360, 725.465, R B & F Coal and Old Republic Insurance Company respectfully request

J.A. 163

that these entities be dismissed as parties to this claim and in support thereof states as follows:

1) That the miner, Turl Mullins, filed what appears to be an initial claim for benefits on May 14, 2009. (D-X-3). Mr. Mullins testified in a deposition that he ceased coal mine work in 1989 as a result of contracting cancer and being overweight. (D-X-26 at page 7).

2) That the record appears to be undisputed that Turl Mullins was employed at Wilder Coal during three (3) different time frames. He was employed at Wilder from 1969 to 1977; during 1980; and from 1986 to 1988. (D-X-5 at page 4 & 6).

3) That the claimant was employed at R B & F Coal from 1984 to 1985. (D-X-5 at page 6).

4) That it is undisputed that the last employer with whom the claimant worked a full year was Wilder Coal from 1986 to 1988. The District Director never designated Wilder Coal as a party to this matter. The initial notice of claim designated Deblin Coal and R B & F Coal Company. (D-X-17). Deblin was eventually dismissed on May 20, 2010. (Ibid.).

5) That the undesigned counsel requested that both Deblin and R B & F be dismissed as parties on August 13, 2009. (D-X-23).

6) That the District Director notified the undersigned counsel by correspondence dated August 17, 2009, that it would

-2-

not designate Wilder Coal because they were insured by Rockwood which was bankrupt. (D-X-24).

7) That the undersigned noted that the District Director had an affirmative duty to designate the guaranty fund, namely, Virginia Property & Casualty Insurance Guaranty Association (VPCIGA) as a party to this matter. (D-x-25). The District Director ignored the Employer's request.

8) That the District Director issued a schedule for the submission of additional evidence on October 14, 2009, and designated R B & F as the responsible operator. (E-X-27). A proposed decision and order designating R B & F as the responsible operator was issued on May 24, 2010. (D-X-36). The undersigned responded, and again requested that Wilder Coal, Rockwood and/or the Guaranty Fund be designated as parties. (D-X-29, 30 and 38). The District Director refused to take any action on these requests. In fact, there was never any response by the District Director.

9) That the District Director had an affirmative duty to notify Virginia Property & Casualty Insurance Guaranty Association of this claim and allow them an opportunity to file a response. It is undisputed that the District Director never provided any notice of claim to either Wilder nor the Virginia Property & Casualty Insurance Guaranty Association.

-3-

10) That the District Director also had a duty to notify the officers and directors of Wilder and make a determination as to whether they possessed sufficient assets to pay this claim. Donovan v. McKee, 845 F.2d 70,72 (4th Cir., 1988).

11) That R B & F Coal and Old Republic should be dismissed and any and all liability transferred to the Trust Fund. There is no dispute that Wilder Coal employed Turl Mullins for more than a year after he worked at R B & F. (D-x-5 and D-X-26 at page 6). There is no dispute that the District Director neglected to designated Wilder or the Virginia Property & Casualty Insurance Guaranty Association as parties to this matter.

12) That it is respectfully submitted that all operators must obtain coverage by either purchasing a commercial policy or meeting the DOL's self insurance requirements. See 30 U.S.C. §933; 20 CFR §726.1, 726.4. The Black Lung Benefits Act (BLBA) makes it illegal for any operator to fail to obtain insurance. 30 USC §923(j)(providing penalties against operators and their officers, who fail to obtain adequate coverage). The DOL does not have the power to excuse Wilder Coal from its obligations under the BLBA.

13) That the Department of Labor has an affirmative duty to notify VPCIGA of their potential liability.

14) That it is respectfully submitted that the Virginia

-4-

J.A. 166

Property & Casualty Insurance Guaranty Association must raise its own coverage defenses and not the Department of Labor sua sponte. There is no statutory provision in the BLBA or DOL's regulations that permit state guaranty associations to limit liability for bankrupting insurers in federal black lung claims. The Black Lung Benefits Act, DOL's regulations and case law all explicitly require an insurer or a reinsurer to cover a policyholder's entire liability. 30 U.S.C. §933, 20 CFR §725.203, 726.215; Lovilia Coal Company v. Williams, 143 F.3d 317(7th Cir. 1998).

In Williams, at the Director's urging, the Seventh held:

> The BLBA and its regulations require that every co-operators contract of insurance contained provisions agreeing to cover fully all of the co-operators liabilities under the BLBA ..... §933 if the BLBA requires coal operators to insure payments of benefits. Each operator shall be liable for and secure the payment of benefits, as provided in this section and section 933 of these title." 30 U.S.C. §932(b). According to §933, each operator of a coal mine... shall secure the payment of benefits for which he is liable under §932 of this title by (1) qualifying as a self insurer... or (2) insuring and keeping insured the payment of such benefits... "id. @ 933(a)." Insurance providers implicitly agree to pay all benefits required under the BLBA; that is benefits must be paid to eligible miners under survivors. See Ibid. at §933(b)(1), 922(a).

Williams, 143 F.3d at 322.

15) That the Williams Court reviewed the applicable regulations, and concluded "Insurers are held to be as responsible as coal mine operators in assuring that black lung benefits policies conform to federal law."

-5-

See Ibid.; 726.207

Every carrier seeking to write insurance under the provision under the BLBA shall be deemed to have agreed that the acceptance by the office by a report of the issuance or renewal of the policy of insurance, as provided for by §726.208 shall bind the carrier to full liability for the obligations under this act of the operator named in said report.  It shall be no defense to this agreement that the carrier failed or delayed to issue, cancel or renew the policy to the operator covered by the report.

Several Courts have interpreted the meaning of the language of §726.210 and have held such language obligates insurers to assume a coal mine operator's entire liability; insurers are not permitted to provide partial liability, even at the request of the coal mine operator. Williams, 143 F.3d at 322-23, Tazco, Inc. vs. Director, OWCP, 895 F.2d, 949., 951(4th Cir. 1990) (recognizing that the insurer steps into the shoes of the Employer and is fully liable for the Employer's obligations); National Mines Corporation vs. Carroll, 64 F.3d. 135, 140 (3rd Cir. 1995).

16) That the District Director's decision to excuse both Wilder Coal and VPCIGA does not comply with the DOL's regulations in another way.  Under the DOL's regulations, the carrier responsible for a claim is the company that insured the coal

- 6 -

operator at the time of the miner's last date of exposure.
20 CFR §726.203(a). There is no dispute that Turl Mullins worked
at Wilder Coal for three (3) years after he left employment at R
B & F. By excusing this company from liability, the DOL in
effect makes Old Republic the insurer for Wilder even though they
did not buy insurance from Old Republic. The DOL's willingness
to excuse other companies from liability for not following the
rules creates a perverse incentive for companies not to properly
insure. When companies fail to follow the rules and adequately
insure, the Trust Fund must cover the claims.

17) That it is for these reasons, the Employer respectfully
submits that the Office of Administrative Law Judge must dismiss
R B & F and Old Republic from this case. Benefits, if any,
should be the responsibility of the Trust Fund.

Respectfully submitted,

CHAFIN LAW OFFICE, P.S.C.
290 East Court Street
P. O. Box 700
Prestonsburg, Kentucky 41653
Telephone: (606) 886-9511
Facsimile: (606) 886-9644

John T. Chafin, Attorney

-7-

**U.S. Department of Labor**     Office of the Solicitor
1100 Wilson Boulevard
22nd Floor West
Arlington, Virginia  22209-2247
(202)693-9393   Telecopier (202)693-9392

Writer's Direct Number: (202) 693-9372

March 8th , 2013

The Honorable Linda S. Chapman
Administrative Law Judge
Office of Administrative Law Judges
U.S. Dept of Labor
800 K Street, N.W., Suite 400-N
Washington, DC 20001-8002

Re:    *Deloris Mullins, Surviving Spouse of Turl Mullins vs. R B & F Coal Company
       and Director, OWCP*
       Case No.: 2012-BLA-05277; OWCP No.: xxx-xx-0508

Dear Judge Chapman:

Please permit this correspondence to serve as the Director's response to R B &F Coal Company
renewed Motion to Dismiss Responsible Operator in the above-captioned case, currently scheduled
for hearing on May 9, 2013, in Wise, VA.  The Director hereby incorporates its previous Response to
R B & F Coal Company's Motion to Dismiss, submitted to the court on August 15, 2012 (a copy of
which is attached herewith).

Thank you for your attention to this matter.

Sincerely,

Douglas N. White
Associate Regional Solicitor

Benjamin D. Chaykin
Attorney

Enclosure

cc:    Ron Carson, Esq.
       John T. Chafin, Esq.

**U.S. Department of Labor**

Office of the Solicitor
1100 Wilson Boulevard
22nd Floor West
Arlington, Virginia  22209-2247
(202)693-9393   Telecopier (202)693-9392

Writer's Direct Number: (202) 693-9372

August 15, 2012

Chief Administrative Law Judge
Office of Administrative Law Judges
U.S. Department of Labor
800 K Street NW, Suite 400
Washington, DC 20001-8000

Re:   *Deloris Mullins, Surviving Spouse of Turl Mullins vs. R B & F Coal Company,*
      *et al.*
      CASE No.: Not Assigned
      OWCP No.: xxx-xx-0508

Dear Judge Harris:

I have enclosed for filing the Director's Response to R B & F Coal Company's Motion to
Dismiss in this case.

Thank you for your attention to this matter.

Sincerely,

Douglas N. White
Associate Regional Solicitor

Benjamin D. Chaykin
Attorney

cc w/encl: Ron Carson
           John T. Chafin, Esq.

COPY

J.A. 171

UNITED STATES DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES
WASHINGTON, DC

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| DELORIS MULLINS, SURVIVING | ) |
| SPOUSE OF TURL MULLINS, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | )  Case No.:  Not Assigned |
| | )  OWCP No. XXX-XX-0508 |
| R B & F COAL CO., | ) |
| | ) |
| Employer, | ) |
| | ) |
| and | ) |
| | ) |
| OLD REPUBLIC INSURANCE CO., | ) |
| | ) |
| Carrier, | ) |
| | ) |
| and | ) |
| | ) |
| DIRECTOR, OFFICE OF WORKERS' | ) |
| COMPENSATION PROGRAMS, United | ) |
| States Department of Labor, | ) |
| | ) |
| Party-in-Interest. | ) |

## DIRECTOR'S RESPONSE TO R B & F COAL COMPANY'S
## MOTION TO DISMISS

Comes now, the Director of the Office of Workers' Compensation Programs ("the

Director"), by the undersigned, and opposes R B & F Coal Company's ("RBF") Motion to

Dismiss.  In support thereof, the Director states as follows:

1.       According to the social security earnings statement generated in this case,

Claimant's most recent coal mine employment of at least one year was with Wilder Coal

Company ("Wilder"), in 1986, 1987 and 1988. (DX 5, 16).  However, according to the district

director's records, Wilder is not financially capable of paying benefits for Claimant's claim and could not be designated as the responsible operator. (DX 16, 24). Therefore, the district director issued a Notice of Claim to RBF as the next most recent operator that employed Claimant as a miner for at least one year. (DX 18)

2.     In the instant Motion to Dismiss, RBF asserts that the district director was required to designate Wilder as the responsible operator and designate VPCIGA as a party to this case and to investigate the financial assets of Wilder's corporate officers of ability to pay benefits. *See Motion*, ¶¶ 7, 9-10. This assertion is without merit.

3.     Where (as in this case) the designated responsible operator is not the operator that most recently employed the miner for a period of at least one year, the district director must explain the reasons for its designation. *See* 20 C.F.R. §725.495(d). In this case, the district director stated that RBF was designated as the responsible operator because Wilder is no longer in business and its insurer is bankrupt, with no assets available for payment of this claim. (DX 16, 24) This statement is consistent with the requirements of Section 725.495(d). Therefore, the district director established by *prima facie* evidence that Wilder could not be designated as the responsible operator in this case because it did not meet the requirements of 20 C.F.R. §725.494(e). *See* 20 C.F.R. §725.495(d).

4.     Per 20 C.F.R. §725.495(c)(2), RBF then had the burden to demonstrate that Wilder should have been designated as the responsible operator. Specifically, RBF had the burden to submit evidence to the district director regarding the ability of Wilder or any corporate officer to pay benefits. *See also,* 20 C.F.R. § 725.606(b)(1). To the extent that RBF contends that the assets of VPCIGA should be applied to this claim, RBF had the burden of demonstrating this application. RBF failed to do so. Therefore, the district director correctly designated RBF as the

J.A. 173

responsible operator.[1]

     5.     In the alternative, RBF cannot be dismissed from this case because the Director does not agree. 20 C.F.R. § 725.465(b).

     WHEREFORE, the Director requests that RBF's Motion to Dismiss be denied.

Mailing Address:

Douglas N. White
Associate Regional Solicitor
U.S. Department of Labor
1100 Wilson Blvd.
22nd Floor West
Arlington, VA 22209-2247
202-693-9393

Respectfully submitted,

M. Patricia Smith
Solicitor of Labor

Catherine Oliver Murphy
Regional Solicitor

Douglas N. White
Associate Regional Solicitor

Elizabeth Lopes Beason
Regional Counsel

Benjamin D. Chaykin
Attorney
U.S. DEPARTMENT OF LABOR
Attorneys for Director, OWCP

---

[1] In 1999, the Board agreed that the Director does not have to consider whether corporate officers can be responsible operators. *Lester v. Mack Coal Co.*, 21 BLR 1-126 (1999). Accordingly, the new regulations state that "an officer of a corporation shall not be considered an 'operator' for purposes of this part." 29 C.F.R. § 725.491(b). As explained in the preamble to the new regs, "The regulation also implements the Department's view that the officers of an uninsured corporate coal mine operator should not be considered coal mine operators in their own right." 65 Fed. Reg. 80006 (December 20, 2000).

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August 2012, a copy of the foregoing was served by mail, postage prepaid, on the following: John T. Chafin, Chafin Law Office, P.S.C., 290 East Court Street, P.O. Box 700, Prestonburg, KY 41653, and Ron Carson, Stone Mountain Health Services, St. Charles Community Health Clinic, Drawer S, St. Charles, VA 24282-0269.

Benjamin D. Chaykin
Attorney
U.S. Department of Labor

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2015, copies of the foregoing Joint Appendix were served on the following parties electronically through the CM/ECF notification system:

Mr. Sean Gregory Bajkowski
blls-sol@dol.gov, bajkowski.sean@dol.gov

Ms. Emily J. Kraft
BLLS-SOL@dol.gov, kraft.emily.j@dol.gov

Mr. Joseph E. Wolfe,
usdcadminbl@wwrrlawfirm.com, jwolfe@wwrrlawfirm.com,
wwrrattorneys@gmail.com, rbarnhill@wwrrlawfirm.com,
mturner@wwrrlawfirm.com

s/Laura Metcoff Klaus
Laura Metcoff Klaus